Robert Tauler, Esq. (SBN 241964)
robert@taulersmith.com
Matthew J. Smith, Esq. (SBN 240353)
matthew@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Courtney Mitchener*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY MITCHENER, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>TALKSPACE NETWORK LLC, a New York limited liability company; DOES 1 through 25, inclusive<br><br>Defendant. | Case No.: 2:24-cv-07067-JAK-BFM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**VIOLATIONS OF CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)** |

FIRST AMENDED COMPLAINT

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen of a different State or subject of a foreign state.

2. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has purposefully directed its activities to the Central District of California by regularly tracking individuals in California through its website. Defendant's illegal conduct is directed at and harms California residents, including Plaintiff, and if not for Defendant's contact with the forum, Plaintiff would not have suffered harm.

3. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; (2) does substantial business within this District; (3) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## PARTIES

4. Plaintiff Courtney Mitchener ("Plaintiff") is, and at all times relevant to the complaint has been, a citizen of California residing and located within the Central District of California.

5. Defendant Talkspace Network LLC is a New York limited liability company ("Defendant") is a New York limited liability company that owns, operates, and/or controls www.talkspace.com.

6. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the

FIRST AMENDED COMPLAINT
1

Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## FACTUAL ALLEGATIONS

8. Defendant is a health care provider offering therapy services. Defendant operates https://www.talkspace.com (the "Website"). Defendant has installed on its Website software created by TikTok in order to identify website visitors (the "TikTok Software"). Plaintiff visited Defendant's website after the TikTok software was installed and within the limitations period established by statutes.

9. The TikTok Software acts via a process known as "fingerprinting." Put simply, the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans.

10. The TikTok Software gathers device and browser information, geographic information, referral tracking, and url tracking by running code or "scripts" on the Website to send user details to TikTok.

11.     The TikTok Software begins to collect information the moment a user lands on the Website.  Thus, even though the Website has a "cookie banner" the information has already been sent to TikTok regarding the user's visit.

12.     An image of the code can be seen here:



13.     The Talkspace website instantly sends communications to TikTok whenever a user lands on the Website and every time a user clicks on a page.  In the example below, the right side of the image shows the various TikTok scripts being run by Defendant, and the electronic impulses being sent to TikTok to add to their collection of user behavior.   When the website asks for information, such as name, date of birth, and address, as it does above, the information is sent simultaneously to TikTok, so that TikTok can isolate with certainty the individual to be targeted.

14.     According to a leading data security firm, the TikTok Software "immediately link[s] to data harvesting platforms that pick off usernames and passwords, credit card and banking information and details about users' personal health." The pixel also collects "names, passwords and authentication codes" and

"transfer the data to locations around the globe, including China and Russia", and does so "before users have a chance to accept cookies or otherwise grant consent."[1]

15. Worse yet, as can be seen below, TalkSpace encourages website visitors, including those seeking "Teen Therapy" to enter information that is simultaneously sent to TikTok. As such, TikTok obtains medical information related to minors through TalkSpace.



16. Talkspace also uses its website in conjunction with the TikTok Software to persuade teens to use Talkspace, urging them that online therapy is "just as important as grades, accomplishments, or college admissions." Talkspace offers its services to teenagers as a cure to common ailments caused by social media, including "managing anxiety or depression," and argues through its targeted campaigns with TikTok that using TalkSpace is "a sign of courage and strength."[2]

---

[1] See Aaron Katersky, TikTok Has Your Data Even If You've Never Used The App: Report, ABC News (last accessed October 2024). https://abcnews.go.com/Business/tiktok-data-app-report/story?id=97913249.

[2] https://www.talkspace.com/online-therapy/teens

17. Arguably, TalkSpace is just a platform to sell powerful psychiatric drugs to young people. Although psychiatric drugs should be prescribed by a qualified physician with knowledge of the patient, TalkSpace explains that obtaining psychiatric drugs on their website is as easy as "1-2-3." Defendant's "psychiatry" page details lists of drugs available from a TalkSpace "prescriber" including the following "commonly prescribed medications"

    a. Abilify (Aripiprazole)

    b. Buspar (Buspirone)

    c. Celexa (Citalopram)

    d. Cymbalta (Desvenlafaxine)

    e. Depakote (VSodium 4. Valproate)

    f. Guanfacine (Intuniv ER)

    g. Lamictal (Lamotrigine)

    h. Latuda (Lurasidone)

    i. Lexapro (Escitalopram)

    j. Lithium

    k. Paxil (Paroxetine)

    l. Propranolol (Hemangeol)

    m. Prozac (Fluoxetine)

    n. Remeron (Mirtazapine)

    o. Seroquel (Quetiapine)

    p. Strattera (Atomoxetine)

    q. Topamax (Topiramate)

    r. Trazodone (Desyrel)

    s. Vistaril (Hydroxyzine Pamoate)

    t. Zoloft (Sertraline)

   u. Zyprexa (Olanzapine)

https://www.talkspace.com/psychiatry

18. TalkSpace also offers various medical tests on their website, including a "depression test," all including TikTok Software on every page to track the user's navigation.[3]

19. Through their installation of the TikTok Software, TalkSpace is able to identify the source of all of these communications so that they can de-anonymize any user, in the process sharing with TikTok intimate details of website user's personal lives which is particularly troubling given recent concerns that TikTok's data collection practices are a threat the United States.[4]

20. California Penal Code § 638.50(c). California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

21. The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the website is collaborating with the Chinese government to obtain their phone number and other identifying information.

22. The TikTok Software is "reasonably likely" to identify the source of incoming electronic impulses. In fact, it is designed solely to meet this objective.

---

[3] https://www.talkspace.com/assessments/depression-test
[4] https://www.defense.gov/News/News-Stories/Article/Article/3354874/leaders-say-tiktok-is-potential-cybersecurity-risk-to-us/

FIRST AMENDED COMPLAINT
6

23. Defendant did not obtain Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

24. The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et. seq.*, imposes civil liability and provides for statutory damages for the installation of trap and trace software without a court order. *Id.* §§ 637.2, 638.51; *see Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) (holding that TikTok Software was properly alleged to be a trap and trace device because it communicates over the internet and the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication" and is not limited to telephone lines).

25. Defendant did not obtain Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

## CLASS ALLEGATIONS

26. Plaintiff brings this action individually and on behalf of all others similarly situated in a class (the "Class") defined as follows:

> **All persons within California whose identifying information was sent to TikTok as a result of visiting the Website within the limitations period.**

27. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be well into the thousands. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

28. COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual

members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

   a. Whether Defendant installed the TikTok Software on the Website;
   b. Whether the TikTok Software is a trap and trace process as defined by law;
   c. Whether Plaintiff and Class Members are entitled to statutory damages;
   d. Whether Class Members are entitled to injunctive relief.
   e. Whether Class Members are entitled to disgorgement of data obtained unlawfully.

29. <u>TYPICALITY</u>: As a person who visited Defendant's Website and whose personal information was fingerprinted and de-anonymized by TikTok, Plaintiff is asserting claims that are typical of the Class.

30. <u>ADEQUACY</u>: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

31. <u>SUPERIORITY</u>: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

# FIRST CAUSE OF ACTION

## Violations of California Trap and Trace Law

## Cal. Penal Code § 638.51 (the "California Trap and Trace Law")

32. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

33. The California Trap and Trace Law provides that "a person may not install or use…a trap and trace device without first obtaining a court order…." California Penal Code § 638.51

34. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

35. Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is designed precisely to identify the source of the incoming electronic and wire communications to the Website. Defendant did not obtain consent from Plaintiff or any of the class members before using trap and trace technology to identify users of its Website, and has violated Section 638.51.

36. CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. Cal. Penal Code § 637.2; *see also C2 Educ. Sys. Inc.*, 2024 WL 3561367.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

2. An order declaring Defendant's conduct violates CIPA;

3. An order of judgment in favor of Plaintiff and the Class against Defendant on the cause of action asserted herein;

4. An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

5. Statutory damages pursuant to CIPA;

6. Prejudgment interest;

7. Reasonable attorneys' fees and costs; and

8. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: November 25, 2024                              TAULER SMITH LLP

                                        By:   */s/ Robert Tauler*
                                              Robert Tauler, Esq.
                                              *Attorneys for Plaintiff*
                                              *Courtney Mitchener*

## **DEMAND FOR JURY TRIAL**

Plaintiff Courtney Mitchener hereby demands a trial by jury.

DATED: November 25, 2024                    TAULER SMITH LLP


                                  By:   */s/ Robert Tauler*
                                        Robert Tauler, Esq.
                                        *Attorneys for Plaintiff*
                                        *Courtney Mitchener*

FIRST AMENDED COMPLAINT
11

**CERTIFICATE OF SERVICE**

I hereby certified that I served the foregoing document on all parties of record by CM/ECF.

DATED: November 25, 2024  TAULER SMITH LLP

By: */s/ Robert Tauler*
Robert Tauler, Esq.
*Attorneys for Plaintiff*
*Courtney Mitchener*