**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
Kamran B. Ahmadian (SBN 314566)
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859
*blukitsch@bakerlaw.com*
*kahmadian@bakerlaw.com*

*Attorneys for Defendant*
TALKSPACE, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COURTNEY MITCHENER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TALKSPACE NETWORK LLC, a New York Limited Liability Company; and DOES 1 through 25, inclusive,<br><br>Defendant. | Case No.: 2:24-cv-07067-JAK-BFM<br><br>*[Hon. John A. Kronstadt]*<br><br>**DEFENDANT TALKSPACE, INC.'S:**<br>**(1) NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51); AND**<br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed concurrently with Declaration of Kamran B. Ahmadian]*<br><br>Case Filed: August 20, 2024<br>Hearing Date: February 3, 2025 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on February 3, 2025, or as soon thereafter as the matter may be heard, Defendant Talkspace, Inc. (incorrectly named in the First Amended Complaint as Talkspace Network LLC) ("Defendant" or "Talkspace") will and hereby does move for an order dismissing and/or striking Plaintiff Courtney Mitchener's ("Plaintiff") First Amended Class Action Complaint for Violations of California's Trap and Trace Law (Cal. Penal Code § 638.51) ("FAC") ("Motion"). This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiff lacks Article III standing and otherwise fails to state a claim against Talkspace upon which relief can be granted. Talkspace further seeks the striking of certain improper and irrelevant allegations pursuant to Federal Rule of Civil Procedure 12(f).

Talkspace bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities and declarations, the pleadings, papers and records on file in this action, and such oral argument as may be presented at the time of the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on several days including August 29, 2024, October 29, 2024, and December 3, 2024. *See* Declaration of Kamran B. Ahmadian, Esq. ("Ahmadian Decl."), ¶¶ 3-6. Having exhausted all attempts at resolution, Talkspace has proceeded with the filing of this Motion.

Dated: December 9, 2024 **BAKER & HOSTETLER LLP**

By: <u>*/s/ Kamran B. Ahmadian*</u>
Bethany G. Lukitsch
Kamran B. Ahmadian

*Attorneys for Defendant*
TALKSPACE, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 5

A. Plaintiff's Allegations Fail to Satisfy Rule 8's Pleading Standard .......... 5

B. Plaintiff Lacks Article III Standing. .......... 7

C. Plaintiff Fails To State A Cause of Action Under Section 638.51 Because The TikTok Cookie is Not a "Trap and Trace" Device. .......... 8

1. The Statutory Framework Confirms that Section 638.51 Only Applies to Devices Used for Telephonic Surveillance .......... 9

2. The Legislative History of Section 638.51 Confirms That It Was Only Intended to Apply to Telephones. .......... 12

3. Plaintiff's Application of Section 638.51 to the TikTok Cookie Contravenes Public Policy. .......... 14

4. Plaintiff's Application of Section 638.51 is an Improper Run Around the CCPA. .......... 15

D. Plaintiff's Claim Fails Because Talkspace Consented to The Use of The TikTok Cookie on Its Website. .......... 16

E. Plaintiff Fails to Allege the Required Scienter. .......... 18

F. Plaintiff's Irrelevant and Inflammatory Allegations Should Be Stricken. .......... 19

V. CONCLUSION .......... 20


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Barragan v. Superior Court*,
148 Cal. App. 4th 1478 (2007) .......... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 5

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, Jr., J) .......... 7

*Capitol Records Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) .......... 15

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) .......... 4

*Columbia Pictures Indus. v. Bunnell*,
2007 WL 2080419 (C.D. Cal. May 29, 2007) (Chooljian, J.) .......... 14

*In re DoubleClick Inc. Privacy Litigation*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 17

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993) .......... 19

*In re First T.D. & Inv., Inc.*,
253 F.3d 520 (9th Cir. 2001) .......... 10

*Fletcher v. Porter*,
203 Cal. App. 2d 313 (Ct. App. 1962) .......... 16

*Gramajo v. Joe's Pizza on Sunset, Inc.*,
100 Cal. App. 5th 1094 (2024), *review denied* (July 10, 2024) .......... 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 12

*Hartley v. Urb. Outfitters, Inc.*,
2024 WL 3445004 (E.D. Pa. July 17, 2024) ........ 8

*Heiting v. Taro Pharms. USA, Inc.*,
2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) (Garnett, J.) ........ 18

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Sup. Mar. 13, 2024) ........ 11

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 7

*Lorillard v. Pons*,
434 U.S. 575 (1978) ........ 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 4

*LVDV Holdings, LLC v. Shelton*,
2023 WL 3258437 (C.D. Cal. May 2, 2023) ........ 19

*Malibu Media, LLC v. Doe*,
2019 WL 2537671 (D. Conn. June 20, 2019) ........ 15

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ........ 8

*Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*,
2022 WL 4126272 (N.D. Cal. Sept. 9, 2022) (White, J.) ........ 20

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) ........ 5

*Mejia v. Reed*,
31 Cal. 4th 657 (2003) ........ 10

*Mir v. City of Torrance*,
2018 WL 6133712 (C.D. Cal. Oct. 17, 2018) (Klausner, J.) ........ 6

*Monster Energy Co. v. Vital Pharms., Inc.*,
2019 WL 2619666 (C.D. Cal. May 20, 2019) (Bernal, J.) ........ 19

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Mosqueda v. Am. Honda Motor Co., Inc.*,
443 F. Supp. 3d 1115 (C.D. Cal. 2020) (Fitzgerald, J.) .......... 6

*Neilson v. Union Bank of California, N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) (Morrow, J.) .......... 20

*Sams v. Lundy*,
2023 WL 9058354 (E.D. Cal. Sept. 22, 2023) .......... 6, 7

*Sparshott v. Feld Ent., Inc.*,
311 F.3d 425 (D.C. Cir. 2002) .......... 17

*In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a Pen Reg. & Trap & Trace Device*,
890 F. Supp. 2d 747 (S.D. Tex. 2012) .......... 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 7

*In re U.S.*,
441 F. Supp. 2d 816 (S.D. Tex. 2006) .......... 9

*United States v. Est. of Romani*,
523 U.S. 517 (1998) .......... 16

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 15

*United States v. Jenkins*,
2019 WL 1568154 (N.D. Ga. Apr. 11, 2019) .......... 14, 15

*United States v. Pacheco*,
225 F.3d 148 (2d Cir. 2000) .......... 14

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017) .......... 14, 15

*Vasconcellos v. Sara Lee Bakery*,
2013 WL 4014520 (N.D. Cal. Aug. 5, 2013) .......... 6

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.) .......... 13

*Walker v. Muniz*,
2019 WL 2359229 (N.D. Cal. June 4, 2019) .......... 6

*Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc.*,
2013 WL 12124386 (C.D. Cal. Mar. 25, 2013) (Anderson, J.) .......................... 5

*Yagman v. Allianz Ins.*,
2015 WL 5553460 (C.D. Cal. May 11, 2015) (Kronstadt, J.) .......................... 19

**Statutes**

Cal. Civ. Proc. Code § 1798.100 (c)........................................................... 16

Cal. Civ. Proc. Code § 1798.105 (a)........................................................... 16

Cal. Pen. Code § 20 ................................................................................ 18

Cal. Pen. Code § 638.50 *et seq.* ...............................................................*passim*

Cal. Pen. Code § 638.53 ...........................................................................9, 10

**Rules**

Fed. R. Civ. P. 8.......................................................................................5, 7

Fed. R. Civ. P. 9.......................................................................................... 1

Fed. R. Civ. P. 12(b)..................................................................................4, 5

Fed. R. Civ. P. 12(f)...................................................................................... 19

**Other Authorities**

*Application of United States of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*,
885 F. Supp. 197 (C.D. Cal. 1995) (Edwards, J.) ....................................... 13, 14

Assembly Floor Bill Analysis, AB 929, 2015-2016 Regular Session
(July 8, 2015)............................................................................................ 13, 17

Senate Committee on Public Safety Bill Analysis, AB 929, 2015-2016
Regular Session (June 15, 2015) ................................................................. 13

U.S. Const. art. III..................................................................................1, 4, 7, 8

# I. INTRODUCTION

This litigation is one of well ***over a hundred*** of near-identical lawsuit filed in state and federal courts in recent months by this same plaintiff's counsel that seek to vastly expand a narrow provision of the California Invasion of Privacy Act ("CIPA") to cover the routine operation of a company's website. Plaintiff Courtney Mitchener's ("Plaintiff") First Amended Complaint ("FAC") asserts a single claim against Defendant Talkspace, Inc. (incorrectly named in the FAC as Talkspace Network LLC) ("Talkspace" or "Defendant") for a violation of CIPA claiming that the TikTok web beacon ("TikTok Cookie"), a popular and ubiquitous website technology, is an illegal "trap and trace" device under Cal. Penal Code § 638.51. The FAC, just as the initial Complaint that came before it, suffers from the same legal defects which warrant dismissal. Even more troubling, Plaintiff ***continues*** to make multiple allegations regarding the type of information Talkspace supposedly shares with TikTok, allegations that are unfounded and have ***no basis in fact***. Talkspace categorically does not share name, date of birth, address, or minors' medical information with TikTok, as Plaintiff's reckless allegations suggest. Ultimately, the FAC lacks merit and should be dismissed as a matter of law for the following reasons.

*First*, the FAC fails to comply with Rule 9 of the Federal Rules of Civil Procedure. Although Plaintiff now alleges that she visited the Talkspace website (unlike the initial Complaint that did not even include this allegation), she does not provide any facts demonstrating *when* this visit (and the alleged illegal conduct tied to that visit) occurred.

*Second*, Plaintiff lacks Article III standing, as she has failed to present any factual allegations showing that she suffered a cognizable injury. Indeed, Plaintiff could not establish this because the FAC does not contain any specific factual allegations about her visit to Talkspace's website (i.e., where she navigated, what pages she viewed, how she interacted with the "cookie banner," etc.).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Third*, the TikTok Cookie does not qualify as a "trap and trace device" under CIPA as a matter of law. Specifically, the alleged software clearly falls outside of CIPA's intended scope based on the statute's plain language, legislative history, and analogous case law. Indeed, a "trap and trace device" involves the recording of *telephone numbers* associated with incoming calls and does not extend to software embedded on a website. Moreover, accepting Plaintiff's strained reading of CIPA would have vast and harmful public policy implications. The very function of the internet relies on the exchange of information from a web user's browser to website, and without it, the internet could not exist. And, Plaintiff's improper application of CIPA cannot be squared with California's comprehensive privacy statute, the California Consumer Protection Act ("CCPA"), which explicitly authorizes the conduct Plaintiff seeks to criminalize.

*Fourth*, even if the TikTok Cookie could be considered a trap and trace device, no violation of Section 638.51 exists because Talkspace, as the website owner and "user" of an "electronic communication service," gave its consent.

*Fifth*, Plaintiff has failed to allege any facts (nor can she) showing that Talkspace had the criminal intent necessary to establish a violation of CIPA—a criminal statute that requires a showing of scienter.

For these reasons, and as further explained below, this Court should grant Talkspace's Motion and dismiss Plaintiff's FAC with prejudice. If not dismissed in its entirety, the FAC contains "immaterial, impertinent, or scandalous" allegations that are entirely unrelated to Plaintiff's lone CIPA cause of action and should be stricken.

## II. BACKGROUND

Talkspace is a leading online and mobile therapy company. Talkspace offers customers a more affordable and convenient alternative to in-person therapy sessions and has helped thousands of people across the country obtain mental health services. Notably, Talkspace was able to provide these crucial services when access to mental

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

health providers was severely hindered during the global COVID-19 pandemic. Talkspace maintains a public-facing website where users can explore and purchase customizable subscription plans and review articles and information regarding the company and its programs. Talkspace also provides its clients with virtual appointment booking and counseling from licensed therapists through a separate online portal and mobile application not at issue in this dispute.

On August 20, 2024, Plaintiff commenced this action by filing an initial Complaint against Talkspace asserting a single claim under CIPA, Cal. Penal Code § 638.51. *See* Dkt. No. 1. On November 4, 2024, Talkspace filed a Motion to Dismiss Plaintiff's Class Action Complaint ("Initial Motion to Dismiss"). *See* Dkt. No. 12. On November 15, 2024, Plaintiff filed notice that she intended on filing an amended complaint rather than respond to Talkspace's Initial Motion to Dismiss. *See* Dkt. No. 16. On November 25, 2024, Plaintiff filed the operative FAC. *See* Dkt. No. 17.

In the FAC, Plaintiff alleges that Talkspace installed "software created by TikTok" (the TikTok Cookie) on its website that *allows TikTok* to identify "otherwise anonymous visitors." FAC, ¶ 9. Plaintiff further alleges that the TikTok Cookie gathers and sends "device[,] browser[,] [and] geographic information" (i.e., IP addresses) as well as "referral tracking[] and url tracking" (i.e., information about a website that directed a visitor to Talkspace, if they clicked on a link to access the site) to TikTok so it can "identify website visitors." *Id.*, ¶¶ 9-10. In addition to gathering the above data automatically, Plaintiff alleges that when website visitors voluntarily provide information to Talkspace, "such as name, date of birth, and address" that information is "sent simultaneously to TikTok." *Id.*, ¶ 13. Plaintiff goes further, alleging that Talkspace also sends "medical information related to minors" to TikTok. *Id.*, ¶ 15.

Although a banner is not required by California's comprehensive privacy statute, the CCPA, upon entering the website, visitors are presented with a "cookie banner," which stretches across the bottom of the screen and notifies the visitor that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"cookies" are used to operate the website, and the visitor can opt-out if they prefer. *See e.g.,* FAC, ¶ 11. When a visitor clicks on the "Privacy Settings" button on the cookie banner or in the website footer, they can opt-out of the use of certain cookies, including the TikTok Cookie. *Id.* While Plaintiff mentions the cookie banner, Plaintiff does not allege whether she interacted with the banner or if she purposefully bypassed it. *See generally*, FAC.

In fact, the FAC ***does not*** identify any specific information captured by the TikTok Cookie in connection with Plaintiff's visit to the website. This is not surprising given that ***Plaintiff does not allege any facts about her alleged visit to the website at all***. *See generally*, FAC. The FAC does not explain how she arrived at the website (i.e., did she click on an ad within her TikTok account), her motive for visiting the website, whether she visited any other webpages related to the website, if and how she interacted with the cookie banner, or *any* other details regarding her visit. *See id*. Plaintiff does not allege that she ever affirmatively provided any information to Talkspace, such as her name or phone number, that could *possibly* have been captured by the TikTok Cookie (it does not), nor does she allege that she was referred to the Website from another URL, such that the TikTok Cookie would have captured "referral tracking" or "url tracking" information. *See id.*

## III. LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff bears the burden of establishing standing under Article III of the Constitution, which requires an "injury in fact" that is both "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (int. cit. omitted). The injury must be "fairly traceable to the challenged action of the defendant," and it must be likely "that the injury will be redressed by a favorable decision." *Id.* at 560-61.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. *See* Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*." *Id.* (emph. added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To that point, pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Id.* at 679. Thus, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc.*, 2013 WL 12124386, at *2 (C.D. Cal. Mar. 25, 2013) (Anderson, J.).

## IV. ARGUMENT

### A. Plaintiff's Allegations Fail to Satisfy Rule 8's Pleading Standard.

Federal Rule of Civil Procedure Rule 8 requires "each averment of a pleading to be 'simple, concise, and direct.'" *See McHenry v. Renne*, 84 F.3d 1172, 1177–78 (9th Cir. 1996). To comply with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *Id.* at 1178. As outlined below, the FAC runs afoul of Rule 8 because it fails to identify when the alleged illegal conduct allegedly occurred.

Courts often dismiss claims under Rule 8 when a plaintiff fails to allege ***when*** the actionable misconduct occurred, particularly when there is a colorable statute of limitations defense. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2020); *Mir v. City of Torrance*, 2018 WL 6133712, at *1 (C.D. Cal. Oct. 17, 2018) (Klausner, J.) ("Although twice directed to do so by the Court, Plaintiff has not attributed most of the alleged acts to any Defendant nor alleged when most of them occurred, leaving the Court and Defendants to attempt to parse out who is accused of doing what and when. This is improper.") (cit. omitted)); *Vasconcellos v. Sara Lee Bakery*, 2013 WL 4014520, at *2 (N.D. Cal. Aug. 5, 2013) (concluding plaintiffs' claims were "insufficiently pled" in part because "[t]he complaint d[id] not allege when plaintiff worked for defendants, when plaintiff became injured or engaged in protected activity, or when the alleged misconduct occurred"); *Walker v. Muniz*, 2019 WL 2359229, at *4 (N.D. Cal. June 4, 2019) (dismissing claims and warning plaintiff that in any future amended complaint, the plaintiff "must provide dates for all the events and omissions alleged. This will aid the court in determining whether claims are time-barred … [and] dates are necessary to provide defendants fair notice of [plaintiff's] claims.").



Here, Plaintiff does not allege *any* facts identifying ***when*** (either specifically or generally) she visited Talkspace's website despite this information being well within her scope of knowledge. Instead, Plaintiff only vaguely alleges that she "visited [Talkspace's] website" at some point "after the TikTok software was installed" but within the "limitations period established by the statutes." FAC, ¶ 8. Simply alleging that an event occurred within the relevant statute of limitations is a legal conclusion (and not a fact) that this Court must disregard in analyzing the sufficiency of the complaint. *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1123 (C.D. Cal. 2020) (Fitzgerald, J.). Stripped of this lone legal conclusion, both the Court and Talkspace are left to speculate as to when this alleged visit occurred and whether it fell within or outside the short one-year CIPA statute of limitations.

Accordingly, Plaintiff's FAC, and its lone CIPA claim, fails to meet the date specificity requirements of Rule 8 and should be dismissed. *See Sams v. Lundy*,

2023 WL 9058354, at *5 (E.D. Cal. Sept. 22, 2023) ("[A]ssertions of wrongdoing in the [complaint] fail to identify the date they occurred. Accordingly, Plaintiff's [complaint] fails to meet the date specificity requirements of Rule 8.").

### B. <u>Plaintiff Lacks Article III Standing.</u>

"Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). The Supreme Court "has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* In sum, for purposes of Article III standing, "***an injury in law is not an injury in fact***." *Id.* (emph. added). Accordingly, to establish Article III standing, Plaintiff must "identify the specific personal information" that "implicates a protectable privacy interest" that was then intercepted by or improperly disclosed to a third party. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, Jr., J) (finding lack of Article III standing where "[p]laintiff does not identify any personal or sensitive information she disclosed on the website"); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ("Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact.").

No such concrete injury exists here. Plaintiff fails to allege *any harm* resulting from her use of the Talkspace website because Plaintiff ***does not allege any facts about her visit to the website***—let alone that she was harmed during that visit. Plaintiff does not allege what "electronic impulses" of hers were captured, what information those electronic impulses allegedly contained, nor that any such information was likely to identify Plaintiff. Rather, Plaintiff's allegations are cast in hypothetical terms and conclusory language. Indeed, none of the generic allegations in the FAC that are untethered to Plaintiff's *own* experiences are sufficient to save

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

her FAC from dismissal. *See* FAC, ¶¶ 10, 13-15. General allegations about what the TikTok Cookie *may be capable* of collecting do not sufficiently establish what the TikTok Cookie *actually collected* from Plaintiff (if anything). *See e.g., Hartley v. Urb. Outfitters, Inc.*, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."). Aside from these vague allegations, Plaintiff does not—and cannot—claim that any information was collected about her or *caused her harm*, because she has not alleged any basic facts about her interactions with the Talkspace website.

Simply put, because Plaintiff has not alleged concrete harm to her privacy, she has failed to satisfy the injury in fact requirement for Article III standing. Without standing, the court must dismiss Plaintiff's § 638.51 claims for lack of subject matter jurisdiction. *See Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction").

### C. **<u>Plaintiff Fails To State A Cause of Action Under Section 638.51 Because The TikTok Cookie is Not a "Trap and Trace" Device.</u>**

Even if Plaintiff can establish standing (which she cannot), the alleged TikTok Cookie does not constitute a trap and trace device as a matter of law. Plaintiff (and her counsel) advance a grossly expanded definition of a "trap and trace" device well beyond its intended use (as an investigatory tool for law enforcement) by applying it to a popular internet technology. Plaintiff's application should be rejected for several reasons. *First*, the statutory framework of CIPA makes clear that Section 638.51 only applies to trap and trace devices that are used in ***telephonic*** surveillance. *Second*, the legislative history ***confirms*** that Section 638.51 was intended only to apply to telephone devices. *Third*, applying CIPA to website software would be contrary to public policy and common sense as it would essentially criminalize basic website functionality and overload the courts. *Fourth*, because Plaintiff's application of

Section 638.51cannot be reconciled with the CCPA, it should be rejected.

*1. The Statutory Framework Confirms that Section 638.51 Only Applies to Devices Used for Telephonic Surveillance.*

Cal. Penal Code § 638.51 makes it unlawful for a person to "install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Historically, pen registers and trap and trace devices have been used by law enforcement personnel to capture data related to telephone calls and conduct telephonic surveillance. *See In re U.S.*, 441 F. Supp. 2d 816, 818 (S.D. Tex. 2006) ("In 1986, Congress enacted the ECPA to regulate the process under which law enforcement could install…trap and trace devices, ***which capture phone numbers of incoming calls***.") (emph. added); *see also* California Bill Analysis, A.B. 929 Assem. ("Bill Analysis, A.B. 929") (April 21, 2015); *see also* Bill Analysis, A.B. 929 (pen registers and trap and trace devices "generally track incoming and outgoing telephone calls" and "are often utilized by law enforcement to track which people in an investigation are communicating with one another and at what times").

CIPA *generally* defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). While the definition of "trap and trace" does not explicitly address whether general website software is covered under CIPA; given its historical usage, and the cross-referenced provisions in Sections 638.52 and 638.53, it clearly does not.

Indeed, Sections 638.52 and 638.53 outline the procedures law enforcement must complete *before* they can use a trap and trace device—they must obtain a court order. To obtain a court order, however, law enforcement must provide specific information related to ***a particular telephone they are seeking to trap and trace***. *See e.g.*, Cal. Penal Code § 638.52(d)(1)-(3) (requiring that an order "authorizing or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

approving the installation and use of a pen register or a trap and trace device" shall specify, *inter alia,* the "identity, if known, of the person to whom is leased or in whose name is listed the ***telephone line*** to which the pen register or trap and trace device is to be attached" and the "***number*** and, if known, physical location of the ***telephone line*** to which the pen register or trap and trace device is to be attached[.]"; Cal. Pen. Code, § 638.52 (c) ("Information acquired solely pursuant to the authority for a pen register, or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the ***telephone number***.") (emph. added).

The numerous references to telephones or telephone numbers in Sections 638.52 and 638.53 demonstrate that a "pen register" and "trap and trace device" apply only to the interception of specific, targeted ***telephonic communications***, and not to IP addresses or other data, if any, captured by general website advertising technology.[1] To hold otherwise would lead to absurd results. In effect, a party could be held liable for using a trap and trace device without a court order when (because the technology used does not involve a telephone line) a court order could never be issued. That is the case here. A court order to use the TikTok Cookie as a "trap and trace" device could never be issued because compliance with Section 638.52 requires the identification of a "telephone line" to which the software could "attach." *See Barragan v. Superior Court*, 148 Cal. App. 4th 1478, 1484 (2007) (Under California law, courts should "not interpret statutes in a manner that results in absurd

[1] When a federal court interprets a California statute, California's rules of statutory construction and interpretation apply. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). California's "well-established rules of statutory construction" require that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003). As such, Sections 638.51 and 638.52 "must be read together and so construed as to give effect, when possible, to all the provisions thereof." *Id.*

consequences that could not have been intended by the Legislature."). The only logical way to give effect to both Sections 638.51 and 638.52 is to limit the applicable trap and trace devices to those that could be used after obtaining a court order if sought. Because the TikTok Cookie at issue here does not involve telephonic communications and cannot be connected to a telephone line, a court order could not be obtained, and thus, Section 638.51 does not apply.

Further, several cases involving similar allegations have held that a "trap and trace device" is limited to its more traditional definition and does not apply to website-use technologies like the TikTok Cookie. *See Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Sup. Mar. 13, 2024); *In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a Pen Reg. & Trap & Trace Device*, 890 F. Supp. 2d 747 (S.D. Tex. 2012). In *Hickory Farms*, the plaintiff sued for violation of the trap and trace laws based on the defendant's installation of software on its website. The court dismissed, finding allegations related to "a 'device' without any actual specific reference to a mobile phone or other potential form of communication device potentially qualifying as a cellular device," fails to allege a violation of Section 638.51. *Id.*

In *In re Trap & Trace Device*, the court considered whether a "stingray" device was either a pen register or a trap and trace device under the identical language of the federal Pen/Trap statute. 890 F. Supp. 2d at 748. There, the stingray was capable of "detect[ing] radio signals emitted from wireless telephone numbers in the vicinity of the [subject of the investigation]" and "identify[ing] the telephones (e.g., by transmitting the telephone's serial number and phone number to the network for authentication)," in order to ultimately identify "the telephone number corresponding to the [Subject's] Telephone." *Id.* The court focused on the plain language of the Pen/Trap statute, including the requirements to issue an order authorizing a trap and trace or pen register device's use, and found that the stingray did not qualify as one such device. *Id.* Looking to Congress's "mandate" that "the telephone number or

other such identifier" of the target of the device be included in the order, the court questioned how it could possibly include the target number if the device was being used to identify the target number in the first place. *Id.* at 751. In other words, unless a trap and trace device is attached or assigned to a specific telephone or account, as opposed to *all* devices within a general vicinity, it cannot be a trap and trace device within the Pen/Trap statute's purview.

The factual scenario here is even more attenuated than the stingray scenario, but the *In re Trap & Trace Device* logic still applies. Plaintiff does not allege that Talkspace attached a trap and trace device to *her* computer. Instead, she claims that Talkspace "has installed *on [Talkspace's] website*" the TikTok Cookie. FAC, ¶ 8 (emph. added). Again, as discussed above, this theory cannot be squared with the plain language of CIPA and requires the dismissal of this case with prejudice.[2]

*2. The Legislative History of Section 638.51 Confirms That It Was Only Intended to Apply to Telephones.*

As outlined above, the plain language of Section 638.51 makes clear that it only applies to telephone communications. To the extent the Court finds ambiguity and seeks to look beyond the plain language of the statute, the legislative history of Section 638.51, likewise, confirms that the Legislature never intended for Section 638.51 to apply to website technology like the TikTok Cookie.

In 2015, the Legislature enacted (and the Governor signed) Assembly Bill 929, which introduced various provisions to the California Penal Code regarding the "trap and trace device" language relevant to this case. *See* 2015 California Assembly Bill No. 929, California 2015–2016 Regular Session ("Assembly Bill 929"). The

[2] Any reliance on *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) would be misplaced. In *Greenley*, the court found that the plaintiff plausibly alleged that a third-party data broker violated Section 638.51 by surreptitiously installing tracking software ***on plaintiff's cell phone***. Here, unlike *Greenley*, the TikTok Cookie is allegedly embedded on Talkspace's Website—there is no allegation or connection to a telephone of any kind.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Legislative Counsel's Digest, at the beginning of Assembly Bill 929, explains that the "bill would clarify that any location information obtained by a pen register or a trap and trace device is limited to the information that can be determined ***from the telephone number***." *Id.* (emph. added). Additionally, Regular Session comments clearly limit the application to a telephone. *See* Senate Committee on Public Safety Bill Analysis, AB 929, 2015-2016 Regular Session (June 15, 2015) ("…a pen register/trap and trace device *only records the numbers dialed to or from a* ***particular phone number***."); Assembly Floor Bill Analysis, AB 929, 2015-2016 Regular Session (July 8, 2015)) ("… a 'pen register' [] allows law enforcement officers to record all outgoing *numbers from a particular* ***telephone line***.) (emph. added).

Had the Legislature intended to prohibit data collection from website software or cookies, it could have explicitly done so. There is nothing in the legislative history that supports the application of Section 638.51 to the operation of website technology despite the prevalent use of such technology at the time it was enacted. Indeed, unlike other portions of CIPA, the relevant provisions, § 638.50 *et seq.*, were enacted in 2015—at a time when the internet and website tracking software were both known and highly utilized—thus, there is no need for the Court to evaluate whether they were intended to evolve and apply to future (unimaginable) technologies. *See, e.g., In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1227 (C.D. Cal. 2017) (Staton, J.).

Further, courts interpreting the exact language that CIPA adopted from the federal Pen Register Act have concluded that the prohibited devices apply solely to those that can be "attached to a telephone line." *See e.g., Application of United States of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (Edwards, J.). Specifically, the *Cellular Tel. Digit. Analyzer* court opined that the specific language and references to telephones throughout the Pen Register Act "cannot be assumed to be inadvertent." *Id.*; *see also Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("Where … Congress adopts a new law



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."); *United States v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000) (Under the "whole act rule," a statutory provision is to be "interpret[ed] . . . in a way that renders it consistent with the tenor and structure of the whole act or statutory scheme of which it is a part.") (cit. omitted). Similarly, the numerous references to telephone communications within CIPA itself provide clear insight into the legislature's intent.

Thus, the statute's plain language and legislative history all point to the same conclusion: Section 638.51 was not intended to apply to the TikTok Cookie at issue.

*3. Plaintiff's Application of Section 638.51 to the TikTok Cookie Contravenes Public Policy.*

Setting aside that Plaintiff has not alleged any facts to suggest that any information was collected from her during her visit to the website (which is dispositive), Plaintiff's strained interpretation of Section 638.51 would essentially break the internet by significantly disturbing how websites operate and criminalizing even basic general website functionality, or clutter the court systems with companies continuously seeking a court order every time a new IP address is created. For example, Plaintiff generally alleges that the TikTok Cookie "is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users[.]" FAC, ¶ 21. These allegations merely suggest that Talkspace obtains ***IP addresses*** from visitors, which identifies the approximate geographic location of the device when they visited the website. However, website owners ***must*** "necessarily capture [a visitor's IP address] … to operate the website." *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2007) (Chooljian, J.); *see also United States v. Ulbricht*, 858 F.3d 71, 84 (2d Cir. 2017) (An IP address "indicates the online identity of the communicating device."); *United States v. Jenkins*, 2019

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

WL 1568154 at *4 (N.D. Ga. Apr. 11, 2019) ("IP address information merely shows the location at which a device accesses the internet during a specific session.").

Not only is it necessary that a user provide their device's IP address to view a given webpage, but such an offering is *voluntarily* made by the user to have their viewing request sent. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party's servers."). By virtue of this voluntary exchange, courts have routinely held that internet users ***have no expectation of privacy in their devices' IP address***. *See Ulbricht*, 858 F.3d at 96 ("[A] 'person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," including "IP addresses."); *Forrester*, 512 F.3d at 510 ("Internet users have no expectation of privacy in the … IP addresses of the websites they visit."); *Malibu Media, LLC v. Doe*, 2019 WL 2537671, at *3 (D. Conn. June 20, 2019) ("[T]here is no expectation of privacy in . . . an IP address.").

Accordingly, the mere collection of an IP address cannot be a violation of Section 638.51. Finding otherwise would open the door for *any* website owner to theoretically incur *criminal* liability anytime someone visited their website, making it logically and financially unsound to even operate a website. The reverberating effect that this decision would have on internet usage and the economy at large cannot be overstated. As one court aptly recognized, "the Internet could not function" if we criminalize the collection of IP addresses "because standard computer operations require recording IP addresses." *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009).

*4. Plaintiff's Application of Section 638.51 is an Improper Run Around the CCPA.*

Let's call a spade a spade—Plaintiff's use of Section 638.51 to bring a private right of action related to the collection of information from third-party advertising



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

technology like the TikTok Cookie on a company's website is nothing more than a thinly veiled attempt to bypass the CCPA—the robust privacy regime that heavily regulates how companies may collect customer data—and its ban on private lawsuits. First enacted in 2018—three years after Section 638.51—the CCPA regulates the collection of "personal information" of website visitors by businesses including that shared with cookies and pixels like the TikTok Cookie.

Plaintiff's proposed interpretation of Section 638.51 not only intrudes upon the scope of the CCPA but effectively criminalizes actions expressly permitted under the statute. *See* Cal. Civ. Code, §1798.100 (c); §1798.105 (a). This presents an irreconcilable conflict. Under California law, courts must construe statutes in a manner "so as not to conflict with other legislative enactments." *Fletcher v. Porter*, 203 Cal. App. 2d 313, 316 (Ct. App. 1962). However, when two statutes cannot be harmonized, as is the case here, the *specific* statute will take precedence over a general one, and a more *recently* enacted statute will take precedence over an earlier one. *See Gramajo v. Joe's Pizza on Sunset, Inc.*, 100 Cal. App. 5th 1094, 1103 (2024), *review denied* (July 10, 2024) (citing Cal. Civ. Proc. Code § 1859); *see also United States v. Est. of Romani*, 523 U.S. 517, 518 (1998). Here, the CCPA governs the specific conduct at issue—using advertising technology like the TikTok Cookie on a website—and was enacted more recently, thus taking precedence.

Accordingly, the only reasonable interpretation is that technology placed on a website that collects and shares visitor's "information" (such as the TikTok Cookie) is not a "trap and trace" device, and Section 638.51 does not apply.

### D. <u>Plaintiff's Claim Fails Because Talkspace Consented to The Use of The TikTok Cookie on Its Website.</u>

Even *assuming arguendo* that the TikTok Cookie can constitute a trap and trace device (which it cannot), Plaintiff's claim would still fail because Section 638.51 includes an exception for the use of pen registers and trap and trace devices "if the ***consent of the user of that service*** has been obtained." Cal. Pen. Code §



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

638.51 (b)(5) (emph. added). Here, based on Plaintiff's own allegations, Talkspace (and not Plaintiff) is the "user" of the TikTok Cookie, an electronic service, and Talkspace has "consented" to its limited use on its Website. *See* FAC, ¶ 8 ("Defendant has installed on its Website software created by TikTok in order to identify website visitors.").

The statute's use of the singular "user" for Section 638.51's consent requirement is a notable and intentional departure from other provisions of CIPA (such as Section 631's prohibition on wiretapping), which require the consent of all parties. Because pen registers and trap and trace devices do not provide the "content of the messages" they are not subject to the same level of scrutiny as wiretaps. *See* Assembly Bill 929, California 2015-2016 Regular Session. Indeed, if it was a requirement to obtain the consent of *all* parties before installing a trap and trace device, then "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting an identical provision of federal law on which Section 638.51 was modeled). A caller ID system, after all, enables the recipient of an inbound communication to identify and record the identity of the initiating party. *See id*. Therefore, if statutes like Section 638.51 were interpreted (contrary to their text) to require the consent of all parties to any communication, then all users of caller ID would be subject to criminal liability—since such users do not first obtain consent from incoming callers before retrieving their identity through the caller ID system. *See id.*; *see also In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (finding that because website operators are the "users" of advertising cookies placed on their website—not the website visitors—a similar consent exception in the Electronic Communications Privacy Act ("ECPA") applied).

The same reasoning applies to Section 638.51, warranting the same conclusion. The "user" consent exception under Section 638.51(b)(5) applies to Talkspace, and Plaintiff has expressly alleged that Talkspace consented to the use of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the TikTok Cookie on its Website. Consequently, Plaintiff's claim fails.

### E. Plaintiff Fails to Allege the Required Scienter.

Finally, because CIPA is a criminal statute, to establish liability, Plaintiff must establish the scienter element. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent"). Even if the TikTok Cookie would qualify as a trap and trace device (it is not), to be liable under Section 638.51, Talkspace must have installed the TikTok Cookie with knowledge and intent that it illegally identifies anonymous visitors without a court order.

Here, Plaintiff has not alleged (nor can she) that Talkspace had any such intent or knowledge. Even accepting the FAC's allegations as true, ***it is TikTok and not Talkspace***, who is able to identify the source of a wire or electronic communication. *See* FAC, ¶ 9 ("The TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website ***and matches it with existing data TikTok has acquired*** and accumulated about hundreds of millions of Americans."); ¶ 11 ("Thus, even though the Website has a 'cookie banner' the information has already been ***sent to TikTok*** regarding the user's visit."); ¶ 13 ("… the information is sent simultaneously to TikTok, ***so that TikTok can isolate with certainty the individual to be targeted***.") (emph. added). Thus, Plaintiff has not alleged any facts (nor can she) that *Talkspace* did any identifying or had any intent to do so in violation of a criminal statute. Plaintiff's inability to allege that Talkspace possessed the requisite scienter is dispositive of her claim. *See e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) (Garnett, J.) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."). Without factual allegations demonstrating the necessary criminal intent, Plaintiff's purported criminal violation fails, and must be dismissed with prejudice.

\\

\\

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### F. Plaintiff's Irrelevant and Inflammatory Allegations Should Be Stricken.

Pursuant to Rule 12(f), "[t]he court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The central "function of a Rule 12(f) motion is 'to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (Kronstadt, J.); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ("The district court could properly grant the motion to strike for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case.").

Courts grant motions to strike where, as here, the FAC includes allegations that are immaterial, impertinent, or "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation" or may cause the objecting party prejudice. *Monster Energy Co. v. Vital Pharms., Inc.*, 2019 WL 2619666, at *17 (C.D. Cal. May 20, 2019) (Bernal, J.) (citing *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). Matter is "immaterial" where it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy*, 984 F.2d at 1527 (int. cit. and quot. omitted). Similarly, "[i]mpertinent matter consists of statements that do not pertain, and are necessary, to the issues in question." *Id.* In other words, impertinent allegations are "neither responsive nor relevant to the issues involved in the action" and "could not be put in issue or given in evidence between the parties." *LVDV Holdings, LLC v. Shelton*, 2023 WL 3258437, at *7 (C.D. Cal. May 2, 2023) (Lew, S.J.) (cit. omitted).

Here, Plaintiff's lone CIPA claim is premised on the use of an illegal trap and trace device" in violation of Section 638.51. *See* FAC ¶¶ 32-36. Thus, the relevant inquiry at trial will be solely related to Talkspace's alleged use of the TikTok Cookie—e.g., whether its use constitutes a violation of CIPA, whether its use injured

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff, etc. Yet, Plaintiff's FAC is rife with allegations that are highly inflammatory and wholly unrelated to Plaintiff's interaction with the TikTok Cookie on Talkspace's website. Specifically, Plaintiff (who does not allege to be a teenager), makes inflammatory (and false) allegations about how Talkspace interacts with teen visitors on its website. *See e.g.*, FAC ¶ 15-17. Plaintiff goes as far as alleging that "TalkSpace is just a platform to sell powerful psychiatric drugs to young people," and lists over twenty medications that could be prescribed by a licensed Talkspace psychiatrist. FAC, ¶ 17.

Not only do these allegations lack any factual basis, but more importantly for purposes of this Motion, they have nothing to do with Plaintiff's lone CIPA claim. Plaintiff does not allege any facts (nor can she) connecting the use of the TikTok Cookie to identify Plaintiff (ostensibly an adult woman) to the alleged prescription practices related to teenagers. Even if true, these practices are not at issue in this litigation.

Ultimately, these allegations are irrelevant, defamatory, highly prejudicial, and should be stricken from the FAC. *See Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, 2022 WL 4126272, at *2 (N.D. Cal. Sept. 9, 2022) (White, J.) (striking unrelated allegations of bad faith by an insurance company that "were not related to Plaintiff's current claim of unlawful repossession" as they would lead to confusion of the issues); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1153 (C.D. Cal. 2003) (Morrow, J.) (striking allegations that only serve to prejudice defendant "since they seek to associate it with practices that are not at issue in this case."). Accordingly, to the extent the FAC is not dismissed in its entirety, paragraphs 15-17 should be stricken.

## V. <u>CONCLUSION</u>

For all of the foregoing reasons, Talkspace respectfully requests that the Court dismiss Plaintiff's FAC in its entirety with prejudice.

Dated: December 9, 2024

**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
Bethany G. Lukitsch
Kamran B. Ahmadian

*Attorneys for Defendant*
TALKSPACE, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**L.R. 11-6.2. Certificate of Compliance**

The undersigned, counsel of record for Defendant Talkspace, Inc., hereby certifies that this brief contains 6,951 words, which complies with the word limit of L.R. 11-6.1.

*/s/Kamran B. Ahmadian*
Kamran B. Ahmadian

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES