Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Courtney Mitchener*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COURTNEY MITCHENER, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>TALKSPACE NETWORK LLC, a New York limited liability company; DOES 1 through 25, inclusive<br><br>Defendant. | Case No.: 2:24-cv-07067-JAK-BFM<br><br>**PLAINTIFF COURTNEY MITCHENER'S OPPOSITION TO DEFENDANT TALKSPACE NETWORK LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>Hearing</u><br>Date: March 10, 2025<br>Time: 8:30 am<br>Courtroom: 10C |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. RELEVANT FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 4

III. ARGUMENT ..... 4

A. Plaintiff Has Article III Standing ..... 4

1. Defendant violated Plaintiff's right of privacy – a constitutionally recognized injury ..... 4

2. Defendant's Article III Standing Arguments Ignore The Allegations In The FAC ..... 5

3. Defendant's Cited Cases Are All Factually Distinguishable ..... 8

B. ...... The Allegations In the FAC Are More than Sufficient To State A Claim And Satisfy Rule ..... 8

C. The California Invasion of Privacy Act's Prohibition on Trap and Trace Devices Applies To The Internet ..... 14

1. Plaintiff Properly Pleads Defendant Used a Trap and Trace Device Under the Plain Meaning of the Statute ..... 15

2. Defendant's Arguments Lack Legal Support ..... 20

IV. CONCLUSION ..... 26

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ..... 28

CERTIFICATE OF SERVICE ..... 29

## TABLE OF AUTHORITIES

Page(s)

Cases


2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........ 9

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) ........ 20

*ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999 (9th Cir. 2014) ........ 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 3, 10

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) ........ 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 3, 10

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 11, 12

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016) ........ 3

*Conley v. Gibson*, 355 U.S. 41 (1957) ........ 3

Defendant's citation to *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ........ 22

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) ........ 4

*Greenley*, 684 F. Supp. 3d ........ 16, 17, 18

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ........ 4, 5

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3rd Cir. 2019) ........ 7

*Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020) ........ 16

*Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ........ 8

*Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627 (2018) ........ 18, 19

*Lungren v. Deukmejian*, 45 Cal. 3d 727 (1988) ........ 16

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) .......... 9
*Mir v. City of Torrance*,
2018 WL 6133712 (C.D. Cal. Oct. 17, 2018) .......... 12
*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 1, 16, 19
*Moody v. C2 Educ. Sys. Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024) .......... Passim
*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) .......... 4
*Pennsylvania State Police v. Suders*,
542 U.S. 129 (2004) .......... 11
*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .......... 1, 16
*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 10
*TikTok Inc. v. Garland*,
122 F.4th 930 (D.C. Cir. 2024) .......... 6
*United States v. McGee*,
993 F.2d 184 (9th Cir. 1993) .......... 11
*Walker v. Muniz*,
2019 WL 2359229 (N.D. Cal. June 4, 2019) .......... 12

Statutes

15 U.S.C. § 9901 .......... 6
18 U.S.C. § 3127 .......... 21
Cal. Civ. Code § 1798.175 .......... 19
Cal. Penal Code § 638.50(c) .......... 15, 16
Cal. Penal Code §§ 638.50(b)–(c) .......... 16
California Penal Code § 638.51 .......... 1, 2, 14, 17
Pub. L. No. 118-50 .......... 6
Pub.L. 107-56 .......... 21
§ 638.50 .......... 16
§ 638.50(a) .......... 15, 16, 17
§ 638.50(b) .......... 16

Rules

Federal Rule of Civil Procedure 8(a)(2) .......... 3
Rule 8 of the Federal Rules of Civil Procedure .......... 9, 11, 12, 13

Other Authorities

A.B. 929 .......... 17
Assembly Bill 929 .......... 17
or 638 .......... 14

XXX

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant collects data on unsuspecting visitors to its website using sophisticated technology so that it can identify and track Californians with the assistance of TikTok. Defendant, like other defendants before it, seek the Court's assistance to bail them out of their privacy collection practices that are illegal in this state. *E.g.*, *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367, at *4 (C.D. Cal. July 25, 2024) (concluding that defendant could be held liable for violating California's prohibition on trap and trace devices over the internet) ("*C2*"); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024) (same); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same). However, virtually every court who has assessed the TikTok Software at the pleading stage has come to the same conclusion – that the TikTok Software fits within the definition of an illegal "Trap and Trace" device under California Penal Code § 638.51 because of the way it is designed to collect information from Californians without their consent. As Judge Klausner explained in *C2*, "Defendant argues that § 638.52 indicates that a pen register or trap and trace device must be a physical device attached to a telephone line. . . . The Court disagrees." 2024 WL 3561367, at *2. Judge Klausner even reaffirmed that conclusion again just last week. *Rodriguez v. Autotrader.com*, Inc., 2:24-cv-08735-RGK-JC, ECF No. 25 (C.D. Cal. January 8, 2024).

## II. RELEVANT FACTUAL BACKGROUND

Defendant is a "a health care provider offering therapy services" that operates a website at talkspace.com ("Website"). FAC ¶¶ 5, 8. On that website Defendant installed code written and controlled by TikTok, a California company, that violates California law and invades the privacy of every person that visits its website, including Plaintiff, without their consent. *Id.* ¶¶ 8-25. This was because the code acted as an illegal "Trap and Trace" device, in violation of California Penal Code § 638.51 (California's "Trap and Trace Law), part of the California Invasion of Privacy Act, § 630 *et seq*. Defendant's purpose in violating the privacy rights of Plaintiff and countless others was because data is valuable, and data about specific individuals is more valuable than anonymous or aggregated data. *E.g.*, FAC ¶¶ 9-11, 23-25. By operating an illegal trap and trace device Defendant could turn anonymous data in personalized data about specific individuals through de-anonymizing the data or "fingerprinting." *Id.* ¶ 9. Fingerprinting can only happen because companies like TikTok have collected vast troves of personal data which it then uses build up enough of a profile on an individual so it can identify the source and origin of otherwise anonymous website visits and interactions. And in exchange for contributing to TikTok's massive database by installing its code Defendant gets to enjoy the benefits that come when an online retailer has removed visitors' privacy thereby turning the anonymous website visitor into the specifically identifiable recipient of highly personalized and universally unwanted marketing efforts. *E.g.*, FAC ¶¶ 9, 16, 19, 27-29. If people like Plaintiff actually wanted Defendant's marketing and advertising to be more aggressive,

personalized, and tailored, companies like Defendant have a lot of options and make it very easy to do just that, from email-signups to expressly asking customers for their preferences or countless other options. Companies like Defendant choose to use an illegal Trap and Trace device because clearly many people do not want to give up their anonymity and privacy to every company whose website they visit, that is why the TikTok Software was designed to meet this sole objective. FAC ¶ 22.

## III. LEGAL STANDARD

### Standard for 12(b)(6) Motion to Dismiss.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "It is axiomatic that

the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## IV. ARGUMENT

### A. Plaintiff Has Article III Standing

#### 1. Defendant Violated Plaintiff's Right Of Privacy – A Constitutionally Recognized Injury.

Plaintiff suffered a constitutionally cognizable injury when Defendant violated her right to privacy. After reviewing allegations substantially similar to those in the FAC, *C2 Educational Systems* explained:

> there is no credible dispute that Plaintiff has alleged an injury necessary for both § 637.2 and standing. Plaintiff alleges: (1) Defendant operates its TikTok Software on its Website; (2) the TikTok Software collects data from every visitor of the Website; and (3) Plaintiff visited the Website after the TikTok Software was installed. These allegations demonstrate that Defendant, through the use of the TikTok Software, collected Plaintiff's information, thereby constituting an invasion of privacy. And invasions of privacy are actionable injuries.

2024 WL 3561367, at *2-*6 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*")).

Indeed, violations of someone's right to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact. *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). "A right to privacy 'encompass[es] the individuals' control of information concerning his or her person.'" *In re Facebook*, 956 F.3d at 598-99. There, Facebook

"continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." *Id.* at 599. The Ninth Circuit concluded that such an "unauthorized exploration" of someone's private life and information behind their back constitutes a cognizable Article III injury. *Id.* at 599.

### 2. **Defendant's Article III Standing Arguments Ignore The Allegations In The FAC**

The allegations of the FAC more than adequately describe the relevant facts and how Defendant violated Plaintiff's privacy in a constitutionally cognizable way. The Motion spends considerable space faulting Plaintiff for not alleging things that are plainly alleged in the FAC, Defendant simply chose to ignore them. Defendant criticizes Plaintiff for "generic" and "hypothetical allegations that do not include facts or harms from her visit to Defendant's website regarding things like "what information those electronic impulses allegedly contained, nor that any such information was likely to identify Plaintiff." Mot. at 7. But the FAC alleges is that "the TikTok Software gathers data including device and browser information, geographic information, referral and url tracking." FAC ¶ 10. And this begins from the very first moment that Plaintiff or anyone else arrives on the Website and continues whenever someone clicks on a new page on the Website. *Id.* ¶¶ 10-12, 15. The FAC also alleges Defendant went far beyond merely collecting basic technical information. Defendant used the information collected to fingerprint the data and deanonymize Plaintiff by matching it "with existing data TikTok has acquired and accumulated about hundreds of millions of Americans," including Plaintiff, presumably

because Defendant found more profit in invading Plaintiff's privacy than playing by the rules. *Id.* ¶ 9, 23, 29. Moreover, people like Plaintiff had no idea any of their data was potentially being sent to a foreign government. *Id.* ¶ 21. Defendant argues that "none of the generic allegations in the FAC that are untethered to Plaintiff's own experiences are sufficient" but everything just described are injuries Plaintiff personally experienced.

Indeed, this exact same concern was raised during oral arguments in the Supreme Court. "Just on the data collection, that seems like a huge concern for the future of the country," said Justice Brett Kavanaugh. He suggested that TikTok's vast trove of information on Americans could be used "to develop spies, to turn people, to blackmail people, people who a generation from now will be working in the FBI or the CIA or in the State Department." Transcript of Oral Argument, *TikTok, Inc. v. Garland* (24-656). Oyez. Retrieved at https://www.oyez.org/cases/2024/24-656. It is difficult to see how the injury Defendant caused is too intangible for Article III when Supreme Court Justices discuss it during oral arguments. Congress itself recognized that millions of Americans have been injured by the depth and volume of data being collected about them that a foreign government could possibly have access to that the United States Congress actually passed a law addressing a concern, something that virtually never happens in modern American politics. *See* Protecting Americans from Foreign Adversary Controlled Applications Act, Pub. L. No. 118-50, div. H (2024), codified as 15 U.S.C. § 9901; *see generally TikTok Inc. v. Garland*, 122 F.4th 930, 939 (D.C. Cir. 2024) (subsequent history omitted). To be clear, Plaintiff's point is much simpler and entirely separate from the actual merits or results of

the actual case before the Supreme Court or potential Congressional legislation. It is that Defendant cannot simply denigrate Plaintiff, invalidate her actual experiences which are corroborated by multiple sources (making them far more than merely "plausible") and act as if the concerns and injuries alleged in the FAC are an ephemeral and trifling "hypothetical" when Congress and the Supreme Court are treating those same risks and injuries as very real and very tangible. It should be more than enough at this stage that Defendant makes no meaningful arguments on Article III standing regarding the FAC's central allegations about the scope of information collected about Plaintiff and millions more that has been used for fingerprinting, de-anonymization, or even potential collaboration with a foreign government. FAC ¶¶ 14, 19, 21.

The instant action is remarkably similar to the allegations the Ninth Circuit found sufficient *In re Facebook*, where it also noted it would be simply "untenable" to think that "federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data." *In re Facebook*. (quoting *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019)). And yet the inescapable conclusion of Defendant's Article III standing arguments is that federal courts are constitutionally powerless to enforce privacy laws, even for a physical trap and trace device attached to a phone line like the kind even Defendant concedes is illegal under state and federal law. This is because Plaintiff has apparently not alleged a "real" harm when she alleged her device, browser, and geographic information were tracked across multiple webpages, without her knowledge or consent, all so that people she does not know and has

never met can use that data to build a profile that will allow them to identify everywhere else she visits even when she thinks she is anonymously browsing the internet. *E.g.*, FAC ¶¶ 14, 19, 21. To many this will sound far more invasive, harmful, and dangerous than someone using a trap and trace device attached to a traditional telephone land line which can only give someone a simply list of the phone numbers that were dialed. Defendant thinks none of these constitute injuries real or valid enough to be heard in federal court, but thankfully Defendant and social media companies are not the ones deciding if the conduct and injuries to Plaintiff and countless others alleged in the FAC are real injury enough to be heard in federal court.

**3. <u>Defendant's Cited Cases Are All Factually Distinguishable</u>**

None of the cases Defendant cites help its argument. In *Lightoller v. Jetblue Airways Corp*. No. 23-cv-361-H, 2023 WL 3963823 (S.D. Cal. June 12, 2023), the defendant recorded things like mouse movements and keystrokes, but the plaintiff lacked allegations connecting those words and clicks with any category or type of information that was about her personally. *Id*. at *4. The only category of personal information she alleged was intercepted and recorded was the defendant's own information on flight prices, and "[f]light pricing information is not personal information." *Id*. That is plainly not the case here because Plaintiff has identified multiple different pieces of personal information that Defendant recorded during an anonymous visit that Defendant used to personally identify and unmask Plaintiff in order to turn Plaintiff's anonymity into Defendant's profit, all in violation of California law.

Similarly, *Byars v. Sterling Jewelers, Inc*. the plaintiff alleged that her chat communications with the defendant through the chat feature on its website were illegally intercepted by a third-party, but the defendant made a factual challenge to the court's subject matter jurisdiction based on its unrebutted factual showing that "there is no evidence that Plaintiff engaged in any communication with Defendant's chat feature". No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *2 (C.D. Cal. Apr. 5, 2023). No such factual challenge has been made here, and Plaintiff has identified multiple categories of anonymous personal information that Defendant disclosed to TikTok. FAC ¶¶ 10, 12-18, 20.

**B. <u>The Allegations In the FAC Are More than Sufficient To State A Claim And Satisfy Rule 8</u>**

Defendant argues that Plaintiff has violated the requirement in Rule 8 of the Federal Rules of Civil Procedure that "each averment of a pleading to be 'simple, concise, and direct'" because the FAC does not allege the specific date that Plaintiff visited Defendant's Website. Mot. at 5-7 (quoting *McHenry v. Renne*, 84 F.3d 1172, 1177–78 (9th Cir. 1996)). To be clear, Defendant does not challenge any other aspect of Plaintiff's claim as insufficient under Rule 8. Defendant also (correctly) does not argue that the failure to allege the date of her visit renders Plaintiff's claim implausible. Defendant cannot make this argument because the FAC alleges "Plaintiff visited Defendant's website after the TikTok software was installed," FAC ¶ 8, and this is the only fact related to the timing of Plaintiff's visit that is necessary for the Court to be able to draw the reasonable inference "that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Assuming the remaining aspects of the claim are properly alleged, which, again, Defendant does not challenge, it simply doesn't matter whether Plaintiff visited Defendant's Website last week, last month, or last year, or some other time before then. This is because as far as timing is concerned, the only fact you need to know about the timing of Plaintiff's visit in order for Defendant to plausibly be liable for the misconduct alleged and to "give fair notice and to enable the opposing party to defend itself effectively" is that Plaintiff visited Defendant's Website *after* the TikTok Software was installed. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Defendant explains that it wants the date Plaintiff visited Defendant's Website to determine "whether it fell within or outside the short one-year CIPA statute of limitations." Mot. at 6. As an initial matter Plaintiff will argue that the relevant statute of limitations is two years and not one, and one of the reasons why statute of limitations arguments are often not appropriately resolved on a motion to dismiss is because of the fact intensive nature of determining what the applicable limitations period is and whether it has run or any exceptions have applied. The reason why Defendant is demanding this date be alleged in the *complaint* instead of simply asking for it in discovery is because the statute of limitations is an affirmative defense and "dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Unfortunately for Defendant however, a plaintiff "is not required to

plead on the subject of an anticipated affirmative defense." *United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993). The Supreme Court has explained that a "plaintiff might elect to allege facts relevant to mitigation in her pleading or to present those facts in her case in chief, but she would do so in anticipation of the employer's affirmative defense, *not as a legal requirement*." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 152 (2004) (emphasis added).

Moreover, none of the cases Defendant cites have held that plaintiffs were required to plead the date of an event solely necessary for an affirmative defense and entirely unrelated to the plausibility of the claim. In every case the date identified by the Court, often through rulings on multiple motions to dismiss repeatedly addressing this point, the timing of the event was necessary either as part of establishing liability, because other allegations established a statute of limitations defense, or because there were multiple defendants and the lack of specificity with regards to time prevented defendants from being able to determine the nature of the facts underlying the claim alleged against them. For example, in *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020), the court faulted the plaintiffs for failing to allege when two-factor authentication was enabled on their devices because that was when their claims accrued. The applicable statute of limitations was three years, the evidence properly before the court on a motion to dismiss was sufficient to raise a statute of limitations defense, and "Plaintiffs' repeated failure to plead the approximate date of alleged misconduct fails to satisfy Rule 8's requirement to contain sufficient allegations of underlying facts to give fair notice and to enable the

opposing party to defend itself effectively." *Id.* (citation omitted). That does not help Defendant who is instead trying to force Plaintiff to allege facts necessary for Defendant's own affirmative defense because it cannot raise a limitations defense itself.

Similarly, *Mir v. City of Torrance*, No. CV 14-1191-RGK (PJW), 2018 WL 6133712, at *1 (C.D. Cal. Oct. 17, 2018), *aff'd*, 807 F. App'x 729 (9th Cir. 2020), involved a "21-page, 105-paragraph, meandering, fantastical, conclusory Third Amended Complaint does not conform to the dictates of Rule 8." The plaintiff there repeatedly failed to follow the court's directive to attribute alleged acts to a specific defendant, allege when most of the events occurred, events that were attributed to a specific defendant failed to show plaintiff was entitled to relief, when dates were alleged they showed the claims were untimely, and he was trying to avoid a two-year statute of limitations by alleging a conspiracy claim that was also insufficiently alleged. *Id.* This case is not applicable to Plaintiff or the allegations in the FAC.

Finally, in *Walker v. Muniz*, No. 19-CV-01430-SI, 2019 WL 2359229, at *4 (N.D. Cal. June 4, 2019), the court explained that had repeatedly ordered the plaintiff to allege specific dates because he was a prisoner who had been incarcerated for a long time with a "very thick prison file" that indicated over 11 years of vision problems at least 30 appeals that went through three levels of review and the complaint named many defendants and described events over many years without any specificity. *Id.* "The relevant dates are needed to provide defendants fair notice of the particular events and omissions on which Walker's claims are based." Defendant here has received specific notice of the particular

events which Plaintiff's claim against it is based on, Defendant's gripe is just that the notice was insufficient to prove Defendant's affirmative defense.

To be clear, there is no reason why Defendant should still be "left to speculate as to when this alleged visit occurred" because discovery since begun in this case. But Defendant's impatience to present a limitations defense is irrelevant to Rule 8 and its expressed desire that no discovery should occur until after the Court rules on its Motion to Dismiss is a problem of its own making.

### C. The California Invasion of Privacy Act's Prohibition on Trap and Trace Devices Applies To The Internet

It is very clear from the relevant terms and their statutory definitions that CIPA's prohibition on trap and trace devices in § 638.51 applies to internet communications because internet communications obviously involve the transfer of data "by a wire, radio, electromagnetic, photoelectric, or photo-optical system." Penal Code § 638.50(a) (incorporating the meaning of "electronic communication" set forth in § 629.51(a)(2)). The analysis is straightforward, the relevant terms are clearly defined and lack any ambiguity, and the statutory language speaks directly to the issue and indisputably shows that § 638.51 applies to all electronic communications and is not limited to telephone communications. Every judge who has addressed the issue has found it to be clear and straightforward, but Defendant seeks to make the issue appear complicated and confusing because it does not like that result. This is also not a question of whether an older statute applies to a new form of technology because § 638.51 was passed in 2015 by legislators who were obviously

very aware of internet communications and clearly understood that the definition chose for "electronic communication" included the internet. The analysis below will go through CIPA's statutory provisions to prove the California Legislature clearly chose to cover internet communications under CIPA and then explain why Defendant's scattershot arguments to the contrary are simply wrong, ignore dispositive provisions, or can otherwise be rejected out of hand.

**1. <u>Plaintiff Properly Pleads Defendant Used a Trap and Trace Device Under the Plain Meaning of the Statute.</u>**

Plaintiff asserts that Defendant violated California's Trap and Trace Law. California Penal Code § 638.51 provides, in pertinent part, as follows:

> (a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.
> (b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:
> (1) To operate, maintain, and test a wire or electronic communication service.
> * * *
> (5) If the consent of the user of that service has been obtained.

Thus, to state a claim under § 638.51, a plaintiff must allege, at most, that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. *Id*. § 638.51. California law defines a "trap and trace device" as:

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to

> identify the source of a wire or electronic communication, but not the contents of a communication.

Cal. Penal Code § 638.50(c). And in the same section just a few lines earlier § 638.50(a) instructs that the terms "'Wire communication' and 'electronic communication' have the meanings set forth in subdivision (a) of Section 629.51." § 638.50(a). The definition for "electronic communication" in § 629.51(a)(2) states that, subject to certain exceptions not relevant here, the term "Electronic communication" means "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." By incorporating this definition for electronic communication into the definition of a trap and trace device in § 638.50(c) CIPA clearly encompasses internet communications because they involve the transfer of data by "a wire, radio, electromagnetic, photoelectric, or photo-optical system." There is simply no way to read the expansive language of the statutory definition of trap and trace devices and conclude that the California Legislature actually meant to cover telephone communications and nothing else.

Defendant's arguments simply have no basis in any of CIPA's statutory definitions discussed above and courts have repeatedly and universally rejected it. If the Legislature had intended to limit trap and trace devices to telephone communications then that is what CIPA would have said. But it doesn't. Judge Breyer in the Northern District recently explained:

> As the *Shah* and *Greenley* courts held, "the Court cannot ignore the expansive language in the California Legislature's chosen definition of pen register," which is "specific as to the type of

> data collected," but "vague and inclusive as to the form of the collection tool" (i.e. "device or process").

*Mirmalek*, 2024 WL 5102709, at *3 (quoting *Greenley*, 684 F. Supp. 3d at 1050 and *Shah*, 2024 WL 4539577, at *1) (cleaned up). The expansive language chosen by the legislature requires the Court to reject Defendant's attempt to ignore its plain and unambiguous terms. And while *Shah* and *Greenley* concerned pen registers, § 638.50(a) of CIPA requires the statutory definitions of "pen register" in § 638.50(b) and "trap and trace device" in § 638.50(c) to both use the exact same definition of "electronic communication" found in § 629.51(a)(2) making the analyses identical. This exact same argument was also rejected in *C2* because "Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to 'wire or electronic communication.'" *C2*, 2024 WL 3561367, at *2 (citing Cal. Penal Code §§ 638.50(b)–(c)).

Defendant's attempts to invoke selective parts of the legislative history are similarly unhelpful to its attempts to evade the statute's plain meaning under California's rules for statutory interpretation. "Words used in a statute or constitutional provision should be given the meaning they bear in ordinary use. If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute)." *Lungren v. Deukmejian*, 45 Cal. 3d 727, 735 (1988) (citations omitted); *see also Jarman v. HCR ManorCare, Inc.*, 10 Cal.5th 375 (2020) ("If the language is clear, courts must generally follow its plain meaning . . ."). If the California Legislature had wanted to limit trap and trace devices to just telephones then the very first

line of Assembly Bill 929 adding § 638.50(a) to the Penal Code would have said that "electronic communication means telephone communications" instead of expressly adopting the expansive definition of "electronic communication" set forth in § 629.51(a). 2015 Cal. Legis. Serv. Ch. 204 (A.B. 929).

Moreover, in addition to the numerous federal decisions discussed above which reached this conclusion, numerous state court judges have also reached the same conclusion. Their opinions have been attached to Plaintiff's accompanying Request for Judicial Notice. *E.g.*, *Anne Heiting v. Taylor Fresh Foods, Inc.*, LASC Case No. 24STCV12891 at 4 (July 31, 2024) ("neither CIPA nor the modern version of the federal statutes cited in *Digital Analyzer* limit the definition of 'pen register' or 'trap and trace device' to physical devices attached to telephone lines."); *Jurdi v. MSC Cruises*, LASC Case No. 24STCV14098 at 3 (September 17, 2024) ("The plain language of section 638.51 does not limit the statute to telephone-based communications."); *Heiting v. IHOP Restaurants*, LASC Case No. 24STCV14453 (October 28, 2024); *Price v. Entravision Comm's*, LASC Case No. 24SMCV02630 (November 21, 2024).

In short, Penal Code § 638.51 unambiguously applies to internet communications and the FAC alleges the two elements necessary to establish a violation of Penal Code § 638.51: (i) Defendant installed a prohibited device (pen register or trap and trace); (ii) without a court order. *E.g.*, *Greenley v. Kochava, Inc.* (S.D. Cal. July 2023) 684 F. Supp. 3d 1024, 1050-51. Plaintiff has therefore properly stated a claim under § 638.51.

**2. <u>Defendant's Arguments Lack Legal Support</u>**

Notably, Defendant spends very little space addressing the actual statutory sections discussed above that every court has relied on and found central to their decisions. Defendant instead raises a hodgepodge of largely unrelated cases and arguments, all of which are either entirely irrelevant, have already been roundly rejected by the courts, or simply ignore the relevant authorities.

Defendant argues that CIPA does not apply to the internet because of the subsequent enactment in 2018 of the California Consumer Privacy Act ("CCPA"). Mot. at. 15-16. Obviously CCPA itself has no bearing on the plain meaning of CIPA because it was passed three years later by a different Legislature and the CCPA does not amend or even reference CIPA in any way. Defendant nonetheless writes "Let's call a spade a spade . . . [this case] is nothing more than a thinly veiled attempt to bypass the CCPA" and the two statutes are in irreconcilable because some unidentified actions are "expressly permitted" by some unspecified provisions of the CCPA but would now be criminalized by CIPA. *Id.* But even on its face this is an incorrect argument. Not only Defendant failed to show that the CCPA "expressly permitted" anything, but there are potentially many ways to reconcile something that is "expressly permitted" in certain contexts by one statute and criminalized by another statute in a separate context. By arguing that a subsequently enacted statute requires a prior statute to be interpreted more narrowly despite the absence of any such language, Defendant appears to be arguing that a portion of CIPA was repealed by implication with the passing of the CCPA. But repeals by implication are disfavored when interpreting California statutes. *Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627, 637 (2018) ("We

do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied.") (citation omitted). In order to invoke the doctrine of implied repeal there must be no rational basis for harmonizing the two statutes, and the statutes must "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." *Id.* (cleaned up). None of that applies here. And far from being repugnant and irreconcilable courts have found that "CCPA and CIPA are complementary." *Mirmalek*, 2024 WL 5102709, at *5.

Moreover, Defendant's argument is expressly foreclosed by the plain text of the CCPA. Defendant plainly ignores the provision of the CCPA stating that "law relating to consumers' personal information should be construed to harmonize with the provisions of this title." Cal. Civ. Code § 1798.175. The CCPA also explicitly states that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id.* So, even if the CCPA and CIPA were not complementary and instead they completely and irreconcilably conflicted such that the terms of the CCPA controlled, then § 1798.175 of CCPA itself would require that CIPA be applied in this case because it would afford greater privacy protections. *Mirmalek*, 2024 WL 5102709, at *5.

Defendant also makes multiple arguments based on the provisions of CIPA authorizing law enforcement to obtain court orders authorizing the use of trap and trace devices. Defendant seeks to use those provisions to rewrite the statutory definitions

because the plain text of the statute is inconvenient. Defendant even somehow complains that it would be an absurd result that "a party could be held liable for using a trap and trace device without a court order when (because the technology used does not involve a telephone line) a court order could never be issued. That is the case here." Mot. at 10. Far from an absurd result, the Legislature intended for Defendant to never be able to seek a court order authorizing the installation of a trap and trace device *because that is a crime* and also because *Defendant is not a law enforcement entity*. The California Legislature intended for Defendant to never install trap and trace devices of any kind, and for law enforcement to do so only for phone lines and subject to the statutory procedures and requirements for a court order. Perhaps unsurprisingly, it was also perfectly reasonable for the California Legislature to decide not to authorize law enforcement entities like LAPD to run massive worldwide social media networks that collect data on millions of Americans and billions of people worldwide.

Defendant also makes an argument based on the federal trap and trace law that is equally incorrect. Mot. at 13-14 (citing to A*pplication of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995)). As explained in *C2*, that case and Defendant's argument involve a federal law which is at best persuasive and the few lines from the opinion quoted by Defendant do little to even establish how that federal law has any bearing on CIPA. *C2*, 2024 WL 3561367, at *2. Further reflective of Defendant's legal analyses throughout its Motion, the language from the case cited above that Defendant relies on is from the federal statute referencing

the physical attachment of pen registers, not trap and trace devices, and appears to have been repealed by the Patriot Act over two decades ago. Pub.L. 107-56, Title II, § 216(c)(1) to (4), Oct. 26, 2001, 115 Stat. 290 (amending 18 U.S.C. § 3127).

Defendant also makes a bold proclamation that if this Court adopts the interpretation of CIPA already adopted by many other courts it will "break the internet." It won't. Defendant's entire argument basically that websites routinely and sometimes need to collect IP addresses from visitors, and this would make that illegal. But Plaintiff's allegations are clear that Defendant did not violate the law just because it collected Plaintiff's IP address. Defendant also collected a vast amount of information about Plaintiff, everything it could, including her IP address, browser data, device data, even geographic information, all in order to use all of its data to fingerprint and de-anonymize her. Defendant could not have achieved that by recording just IP addresses, if it could have it would have. The FAC instead alleges that the TikTok Software exists because it was "designed solely to meet this objective." FAC ¶ 22.

Defendant finally argues that it is exempt from liability because it is an electronic service provider and it consented to its own use of a trap and trace device. Mot. at 16-17. But there is simply no basis to conclude that Defendant is a "provider" of an "electronic communication service" within the meaning of CIPA, and even if it were then Defendant could not also be the "user of that service" who can provide the necessary consent under § 638.51(b)(5). The FAC clearly alleges that Plaintiff was the user, and it is Plaintiff's consent that is necessary. It would make no sense for a privacy-protection statute to allow

Defendant to avoid liability by simply consenting to its own invasion of Plaintiff's privacy. *See C2*, 2024 WL 3561367, at *4 (rejecting argument at the motion to dismiss stage that website operators are also the website users the trap and trace law was designed to protect).

Defendant's scienter argument is similarly flawed. Defendant asserts without citation, authority or explanation that the relevant mental state is that "Talkspace must have installed the TikTok Cookie with **knowledge** and **intent** that it illegally identifies anonymous visitors without a court order." Mot. at 18 (emphasis added). Even more confusing is Defendant's multiple assertions that it lacked the requisite "criminal intent" because it provides no explanation of what that means, nor does criminal law establish a single specific standard of "criminal intent" required to be convicted of a crime. Most significantly, even though Defendant fails to identify any specific intent required by the statute. Moreover, Rule, even if it did that would mean very little in terms of federal pleading rules because Rule 9(b) provides that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Defendant's citation to *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023), is also unavailing because the cited opinion provided leave to amend and the court ultimately ended up concluding that the plaintiff had sufficiently alleged a claim. Also, it probably bears mentioning that *Taro* involves a claim for aiding and abetting a violation of § 631(a) which covers things like wiretapping, eavesdropping, using such information, or aiding and abetting one of those activities. Perhaps unsurprisingly, the intent requirement

for a claim for aiding and abetting a different violation is often not the same as the intent requirement for a completely criminal violation. For all these reasons there is no meaningful value in the Court attempting to determine as a matter of potentially first impression what sort of intent, if any, may be required by § 638.51 to be pled generally when ruling on the pending Motion.

Finally, Defendant's Rule 12(f) motion must be denied for a myriad of reasons. They are generally a strongly disfavored motion because they often serve minimal purpose and here they would serve no purpose whatsoever. Defendant argues the allegations about how Defendant takes advantage of vulnerable teenagers "lack any factual basis," but Defendant is not entitled to declare on a motion to dismiss that plaintiff's allegations are simply false. Reasonable inferences can certainly be made from its website and marketing even if Defendant dislikes them. Those allegations are also entirely relevant to Plaintiff's claim because (1) Plaintiff brings this case as a putative class action and if certified Defendant's treatment of class members is an issue to be addressed in litigation; (2) Plaintiff alleges those facts because they are an important part of understanding and explaining Defendant's potential motives for its marketing, particularly if Defendant used TikTok to market to a younger audience. Despite the fact that Plaintiff is not a teenager, Defendant's motives and the scheme used in engaging in the wrongdoing that injured Plaintiff will necessarily be relevant; and (3) in the immediately preceding section Defendant faulted Plaintiff for not including allegations about its "criminal intent" and mental state. The allegations that Defendant calls highly

prejudicial and inflammatory are perhaps thus better described as, if true, highly probative of a "criminal intent." Indeed, allegations like these will almost certainly be relevant to showing any degree of mental state so unless Defendant is going to argue that the Trap and Trace Law is strict liability there is no possible basis for striking those allegations as irrelevant, impertinent, scandalous, or redundant. Defendant has no basis to strike any of the allegations in the FAC and the request should be denied.

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the Complaint deficient.

DATED: January 13, 2025

**TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Courtney Mitchener

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Carol Price, certifies that this brief contains 6,493 words, which complies with the word limit of L.R. 11-6.1.

DATED: January 13, 2025

**TAULER SMITH LLP**

By: *__/s/ Robert Tauler__*
Robert Tauler, Esq.
Attorneys for Plaintiff
Courtney Mitchener

**CERTIFICATE OF SERVICE**

I hereby certified that I served the foregoing document on all parties of record by CM/ECF.

DATED: January 13, 2025 **TAULER SMITH LLP**

By: */s/ Robert Tauler*
Robert Tauler, Esq.
Attorneys for Plaintiff
Courtney Mitchener