Robert Tauler  (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Courtney Mitchener*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY MITCHENER, individually and on behalf of all others similarly situated; <br><br> Plaintiff, <br><br> v. <br><br> TALKSPACE NETWORK LLC, a New York limited liability company; DOES 1 through 25, inclusive <br><br> Defendant. | Case No.: 2:24-cv-07067-JAK-BFM <br><br> **PLAINTIFF COURTNEY MITCHENER'S OPPOSITION TO DEFENDANT TALKSPACE NETWORK LLC'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** <br><br> Hearing <br> Date: April 21, 2025 <br> Time: 8:30 am <br> Courtroom: 10C |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................1

I. INTRODUCTION ............................................................................................1

II. RELEVANT FACTUAL BACKGROUND .................................................2

III. LEGAL STANDARD ...................................................................................3

IV. ARGUMENT ..................................................................................................5

   A. Defendant Grossly Misrepresents the Meaningless Factual Conclusions of its "Expert" Witness ...............................................................................5

   B. Defendant's Arguments Regarding Plaintiff's Pre-Filing Investigation Are Meritless ................................................................................................8

   C. Defendant Does Not Dispute That The FAC Still States A Claim For Violating Penal Code § 638.51 Even Without The Disputed Allegations ...................11

   D. Talkspace Is Not Entitled To The Relief It Seeks ..................................14

   E. Substantial Evidence Proves Plaintiff Had A Reasonable Basis For The Disputed Factual Allegations .................................................................15

V. CONCLUSION ...............................................................................................17

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ........................18

PTF'S OPP. TO DEF'S MOTION FOR SANCTIONS                    2:24-cv-07067-JAK-BFM

# TABLE OF AUTHORITIES

Page(s)

Cases

8:24-CV-00135-DOC-DFMX,
   2024 WL 3914508 (C.D. Cal. July 31, 2024) ...................................................6
132 S.Ct. 1962 (2014) ...................................................................................5
742 F. Supp. 3d 1072 (C.D. Cal. 2024).........................................................13, 14
Christian v. Mattel, Inc.,
   286 F.3d 1118 (9th Cir. 2002) ....................................................................5
Cooter,
   496 U.S. ...............................................................................................6
CQ Int'l Co. v. Rochem Int'l, Inc., USA,
   659 F.3d 53 (1st Cir. 2011) ........................................................................6
Erickson Prods. Inc. v. Kast,
   2024 WL 3956317 (N.D. Cal. Aug. 26, 2024) .................................................5
Gaiardo v. Ethyl Corp.,
   835 F2d 479 (3rd Cir. 1987)........................................................................7
Garr v. U.S. Healthcare, Inc.,
   22 F.3d 1274 (3d Cir. 1994) ......................................................................6
Golden Eagle Dist. Corp. v. Burroughs Corp.,
   801 F.2d 1531 (9th Cir. 1986) ....................................................................6
Heiting v. FKA Distributing Company,
   2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ...................................................14
Holgate v. Baldwin,
   425 F.3d 671 (9th Cir. 2005) ...............................................................5, 6, 9
Hudson v. Moore Bus. Forms, Inc.,
   836 F.2d 1156 (9th Cir. 1987) ....................................................................6
In re Keegan Management Co. Sec. Litig.,
   78 F.3d 431 (9th Cir. 1996) ..................................................................5, 10
In re Zilog, Inc.,
   450 F.3d 996 (9th Cir. 2006) ......................................................................6
Kiobel v. Millson,
   592 F3d 78 (2nd Cir. 2010) ...................................................................5, 15
Mirmalek v. Los Angeles Times Commc'ns LLC,
   2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ...............................................14
Operating Eng'rs Pension Trust v. A–C Co.,
   859 F.2d 1336 (9th Cir. 1988) ....................................................................6
Patterson v. Aiken,
   841 F2d 386 (11th Cir. 1988) ...................................................................16
Petrella v. Metro–Goldwyn–Mayer, Inc.,
   695 F.3d 946 (9th Cir. 2012) ......................................................................5

*Rodriguez v. Autotrader.com, Inc.*,
  2025 WL 65409 (C.D. Cal. Jan. 8, 2025)......................................................14
*Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*,
  834 F.2d 833 (9th Cir. 1987)..........................................................................6
*Townsend v. Holman Consulting Corp.*,
  929 F.2d 1358 (9th Cir. 1990)........................................................5, 6, 12, 14
*Wendelberger v. Deutsche Lufthansa AG*,
  2018 WL 2387858 (N.D. Cal. May 25, 2018)..................................................6

Statutes

Cal. Penal Code §§ 638.50(b)–(c) ......................................................................13
California Penal Code § 638.51 ..............................................................................3

Rules

FED. R. CIV. P. 11................................................................................... Passim
Fed. R. Civ. P. 11(c)(2) .........................................................................................5
Fed. R. Civ. P. Rule 11(c)(1)...............................................................................15
Fed. R. Civ. P. Rule 11(c)(4)...............................................................................15
Rule 11(b)...............................................................................................................5

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    <u>INTRODUCTION</u>

Defendant Talkspace Network LLC, ("Talkspace" or Defendant) brings the instant Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 but fails to meet the legal or factual burdens required by Rule 11. Plaintiff brought a Complaint and now First Amended Complaint ("FAC") alleging that Defendant installed an illegal "Trap and Trace" device on its website talkspace.com ("Website"). See Dkts. 1, 17. This resulted in information about Plaintiff being sent to TikTok so it could de-anonymize and fingerprint the data to allow TikTok and Talkspace to eliminate her anonymity from their personalized and targeted ads, in violation of Plaintiff's privacy rights under the California Invasion of Privacy Act ("CIPA") Section 638.51. *See generally* FAC. Dkt. 17.

Defendant's Motion for Sanctions does not dispute anything about the allegations as they relate to de-anonymization, fingerprinting, Plaintiff's personal experience, her

Article III standing, or the ability of a class to be certified. Defendant instead disputes what amounts to essentially two sentences in the FAC alleging that some information entered into forms is also simultaneously sent to TikTok. Mot. at 4 (Defendant quoting and bolding the allegations at issue). The allegations at issue are found within paragraphs 13 and 15 of the FAC ("Disputed Allegations"), and by contrast everything else in the FAC is an Undisputed Allegation for the purposes of this Motion.

Defendant's Motion for Sanctions is simply an improper attempt to disprove the merits of two narrow and specific allegations supporting Plaintiff's claim and obtain terminating sanctions without ever having to provide any of the required procedural rights or protections such as basic discovery. Defendant's "evidence" even comes from an expert hired by Defendant's counsel after the case was filed. Defendant's Motion is nothing more than an early motion for summary judgment, except Defendant's "evidence" wouldn't even be enough to win on an *unopposed* motion for summary judgment. Meanwhile Defendant has been engaging in bad faith tactics throughout this entire litigation, including refusing to participate in discovery

## II.   **RELEVANT FACTUAL BACKGROUND**

Defendant is a "a health care provider offering therapy services" that operates a website at talkspace.com ("Website"). FAC ¶¶ 5, 8. On that website Defendant installed code written and controlled by TikTok, a California company, that violates California law and invades the privacy of every person that visits its website, including Plaintiff, without their consent. *Id.* ¶¶ 8-25. This was because the code acted as an illegal "Trap and Trace" device, in violation of California Penal Code § 638.51 (California's "Trap and Trace Law), part of the California Invasion of Privacy Act, § 630 *et seq*. Defendant's purpose in violating the privacy rights of Plaintiff and countless others was because data is valuable, and data about specific individuals is more valuable than anonymous or aggregated data.

*E.g.*, FAC ¶¶ 9-11, 23-25. By operating an illegal trap and trace device Defendant could turn anonymous data in personalized data about specific individuals through de-anonymizing the data or "fingerprinting." *Id.* ¶ 9. Fingerprinting can only happen because companies like TikTok have collected vast troves of personal data which it then uses build up enough of a profile on an individual so it can identify the source and origin of otherwise anonymous website visits and interactions. And in exchange for contributing to TikTok's massive database by installing its code Defendant gets to enjoy the benefits that come when an online retailer has removed visitors' privacy thereby turning the anonymous website visitor into the specifically identifiable recipient of highly personalized and universally unwanted marketing efforts. *E.g.*, FAC ¶¶ 9, 16, 19, 27-29. If people like Plaintiff actually wanted Defendant's marketing and advertising to be more aggressive, personalized, and tailored, companies like Defendant have a lot of options and make it very easy to do just that, from email-signups to expressly asking customers for their preferences or countless other options. Companies like Defendant choose to use an illegal Trap and Trace device because clearly many people do not want to give up their anonymity and privacy to every company whose website they visit, that is why the TikTok Software was designed to meet this sole objective. FAC ¶ 22.

## III.    **LEGAL STANDARD**

"Federal Rule of Civil Procedure 11 provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, without factual foundation or brought for an improper purpose." *Petrella v. Metro–Goldwyn–Mayer, Inc.*, 695 F.3d 946, 957 (9th Cir. 2012), *reversed on other grounds*, 132 S.Ct. 1962 (2014). A motion for sanctions "must

describe the specific conduct that allegedly violates Rule 11(b). Fed. R. Civ. P. 11(c)(2). Rule 11 therefore 'calls for an intensely fact-bound inquiry.'" *Erickson Prods. Inc. v. Kast*, No. 13-CV-05472-DMR, 2024 WL 3956317, at *9 (N.D. Cal. Aug. 26, 2024) (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1365 (9th Cir. 1990) (*en banc*)). "Rule 11 sanctions do not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains well grounded in fact." *Kiobel v. Millson*, 592 F3d 78, 83 (2nd Cir. 2010) (internal quotes and brackets omitted).

Where "a complaint is the primary focus of a Rule 11 proceeding, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)). The complaint need not be wholly baseless to be sanctionable: A partially supported, partially unsupported filing may still be sanctionable. *See Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362–65 (9th Cir. 1990) ("The relation of the allegedly frivolous claim to the pleading as a whole is thus a relevant factor, but the mere existence of one non-frivolous claim is not dispositive...."). The Ninth Circuit has held that an attorney may not be sanctioned under Rule 11 "for a complaint that is not well-founded, so long as she conducted a reasonable inquiry ... [nor] [m]ay she be sanctioned for a complaint which is well-founded, solely because she failed to conduct a reasonable inquiry." *In re Keegan Management Co. Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996). Under that test, the district court must "consider after-acquired factual evidence that would have adequately supported the complaint" when determining whether sanctions are appropriate under Rule 11. *Id.* (holding district court erred when it "excluded from consideration any evidence supporting the suit which was unknown to counsel at the time of filing"). "The key question in assessing frivolousness is whether a complaint states an arguable claim – not whether the pleader is correct in his perception of the law." *Hudson*

*v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987). Therefore, "ultimate failure on the merits is irrelevant." *Id.*

In assessing the pre-filing inquiry required under Rule 11, the court's task is to determine "whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate*, 425 F.3d at 677 (citation omitted). The court must consider "all the circumstances of a case," *Cooter*, 496 U.S. at 401, focusing on the information available when the paper is filed. *See Golden Eagle Dist. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). Courts consider factors including time constraints and deadlines, the complexity of the subject matter and the party's familiarity with it, and the ease of access to the requisite information. *See CQ Int'l Co. v. Rochem Int'l, Inc., USA*, 659 F.3d 53, 63 (1st Cir. 2011); *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994); *Townsend*, 929 F.2d at 1364.

"When Rule 11 sanctions are party-initiated, the burden is on the moving party to demonstrate why sanctions are justified." *Boat People S.O.S., Inc. v. VOICE*, No. 8:24-CV-00135-DOC-DFMX, 2024 WL 3914508, at *11 (C.D. Cal. July 31, 2024) (citing *Tom Growney Equip., Inc. v. Shelley Irr. Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987)). "The party seeking sanctions bears the burden of demonstrating by clear and convincing evidence that sanctions are justified." *Wendelberger v. Deutsche Lufthansa AG*, No. 18-CV-01055-PJH, 2018 WL 2387858, at *3 (N.D. Cal. May 25, 2018) (citing *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006), and *Tom Growney Equip., Inc. v. Shelley Irrigation Dev., Inc.*, 834 F.2d 833, 837 (9th Cir. 1987)). Cases warranting the imposition of sanctions on grounds of frivolousness are "rare and exceptional." *Operating Eng'rs Pension Trust v. A–C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).

"Threats of Rule 11 sanctions are improper where the other side's position is plausible (even if it is incorrect). Seeking sanctions under such circumstances is itself sanctionable conduct: 'The use of Rule 11 … has become part of the so-called "hardball" litigation techniques espoused by some firms and their clients. Those practitioners are

cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct.'" Phillips & Stevenson, *Rutter Group Prac. Guide, Federal Civ. Pro. Before Trial* (The Rutter Group 2020), ¶ 17:71 (quoting *Gaiardo v. Ethyl Corp.*, 835 F2d 479, 485 (3rd Cir. 1987).

## IV.    <u>ARGUMENT</u>

### A.    <u>Defendant Grossly Misrepresents the Meaningless Factual Conclusions of its "Expert" Witness</u>

Despite presenting the declaration of its "expert" as firmly declarative and unambiguous about the truth of the Disputed Allegations, the totality of Defendant's "expert's" analysis and conclusions is a single sentence from his declaration and says far, far less than Defendant represents in its Motion:

> I did not observe name, date of birth, address, or medical information being transmitted to TikTok from any webpage or form reviewed on the Website, including the pages depicted in paragraphs 12 through 15 of the Complaint.

Vint Decl. ¶ 12 (emphasis added).

Defendant asserts the language quoted above from the declaration of its "expert" proves the allegations in paragraph 13 of the FAC "**are demonstrably false**." Mot. at 6 (emphasis in original). But the only ***demonstrably false*** statement is that assertion by Defendant. When James Vint only states "**I did not observe**" certain categories of information being transmitted, Vint Decl. ¶ 12 (emphasis added), then Defendant *cannot* accurately and honestly assert that statement proves the "TikTok Software **does not** collect" those categories of information or that an allegation that it does "**has no basis in fact**." Mot. at 6 (emphasis in original). This is not a complicated concept. Defendant's "expert" stating that he did not observe a particular event occur does not and cannot prove that the event does not occur, cannot occur, has not occurred, will not occur, or that no facts exist which could be construed as supporting the plausibility of that event occurring.

There are also multiple other deficiencies in the declaration of Defendant's "expert" that show Defendant has grossly misstated the contents of his testimony. The biggest problem is one of timing. Plaintiff visited the Website in February 2024 and the Complaint was filed in August 2024, but Defendant's "expert assessment" was conducted in September and October and there is no factual basis in the record to suggest that the Website and TikTok Software operated the same way when Plaintiff visited the Website as it did when this "assessment occurred." Vint. Decl. ¶ 11. Defendant's expert provides no reason to think that may be true, Defendant never even identifies this deficiency that is six months wide, and in fact there is plenty of reason to believe that the Website and Defendant's privacy practices have changed since Plaintiff's visit to its website and the filing of this lawsuit. For example, Talkspace updated its privacy policy on April 12, 2024. Ex. 12. It also updated the language in its consent banner some time after this lawsuit was filed. Its consent banner for cookies in January 2024 is a single sentence, Ex. 13, while in March 2024 it is much more specific and specifically refers to permitting "personalized content," discloses the existence of and right to "opt-out of sale of processing personal data for targeted advertising" and links to a formal cookie policy. Ex. 14. Given all of these changes it is particularly difficult to swallow Defendant's unstated requirement that we have to simply accept that not enough changed so its expert's assessment is still clear and convincing evidence that is accurate enough to support sanctions including terminating sanctions.

While less significant, another deficiency is that Defendant's "expert" states his team conducted this review but according to his declaration his personal role was limited to reviewing the Fiddler session captures. Vint Decl. ¶¶ 8-9, 11-12. Given that he never describes any of the details of what his team actually did, Defendant cannot justify accepting as expert evidence a declaration from someone who does not state the details of any aspect of the team's assessment explaining how it was conducted or even that he has personal knowledge of what was involved in any aspect of the assessment besides the review of the Fiddler session captures. For example, based on the way the declaration is

9

worded there is certainly a strong suspicion that *some* information was observed being transmitted to TikTok, but what was it? For that matter how did he review the information to evaluate whether any name, date of birth or address was ever transmitted? Surely he didn't go through every piece of data transmitted through the TikTok Software. Similarly, he qualified his opinion to "from any webpage or form *reviewed*" but that does not tell us what specific webpages or forms were reviewed. In fact, all it tells us is that some webpages and forms were not reviewed, otherwise he would have removed the qualifier and simply said "from any webpage or for on the Website."

Defendant has produced a declaration from someone that it touts as an expert but what it has provided does not establish that single sentence of opinion satisfies *Daubert* or is any better than junk data. Could it have been reliably and methodologically perfect? Absolutely. Does the Court have any reason to believe it was? Not at all. If Defendant is going to seek terminating sanctions based on an undisclosed expert who it refuses to provide any discovery about, Kumar Decl., Exs. 8-9, then Defendant is obligated to do far more than it has here. At a minimum Defendant's Rule 11 "expert" should be subject to *at least as much* review as an expert testifying at trial. Instead, Defendant is trying to evade liability with a factual demonstration for Rule 11 sanctions that would be laughable on summary judgment. And if Defendant's expert's single sentence opinion is disregarded, or even just limited to what he actually states, then Defendant has not established the falsity of any allegations and its entire Motion is baseless and must be denied.

**B.**     **<u>Defendant's Arguments Regarding Plaintiff's Pre-Filing Investigation Are Meritless</u>**

Defendant fails to make any substantial arguments demonstrating Plaintiff's pre-filing inquiry was unreasonable, because Defendant cannot do so. Defendant's "expert" obviously cannot opine on Plaintiff's pre-filing investigation, and Defendant makes no attempt to cite facts or present argument regarding "whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate*, 425 F.3d at 677 (citation omitted). And recall, in the Ninth

Circuit, Rule 11's frivolous prong is only violated when both a reasonable inquiry was not conducted *and* the factual allegations are not well-founded. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996). Defendant fails to establish either.

Defendant's arguments for the inadequacy of Plaintiff's pre-filing investigation are deeply misguided. Defendant argues that (1) based on conclusions of Defendant's "expert" the allegations in paragraphs 12-15 of the original complaint "could not have been the product of a reasonable and competent inquiry because they are plainly false," and (2) by continuing to pursue this litigation and not dropping the entire case, "Plaintiff's Counsel is purposefully ignoring evidence provided to him by Talkspace that shows, with certainty, that the allegations are baseless." Mot. at 6-7. As explained above, Defendant's first point has no basis in the facts or opinions stated in the declaration of its expert, and it is obviously irrelevant for establishing an inadequate pre-filing investigation because it is literally just a repetition of Defendant's explanation on falsity. There is no basis in law or fact for Defendant's argument that merely alleging something which is later shown to not be true is, by itself, evidence that proves no reasonable investigation was conducted. Defendant's argument is essentially *falsitas ipsa loquitur* and would effectively read the reasonable pre-filing inquiry requirement out of Rule 11 entirely.[1]

On the second point, Defendant's own argument demonstrates the bad faith and burden shifting it has engaged in throughout this case that defeats its' point. Defendant admits it has been accusing Plaintiff of violating Rule 11 and filing a pleading with false allegations since "days after the initial complaint" was filed. Mot. at 7; Ahmadian Decl. ¶ 3 (stating that on a phone call nine days after the Complaint was filed "we communicated to Mr. Tauler that paragraphs 12-15 in the Complaint contained allegations that were not based in fact. Mr. Tauler refused to provide the factual basis for any allegations in the

---

[1] Plaintiff assumes for the sake of argument that some factual allegations may be so self-evidently false that it is obvious and indisputable that any attorney who put them in a pleading did so without an adequate investigation, such as, perhaps, allegations involving little green extraterrestrials or Hogwarts, but there is nothing self-evidently false about the Disputed Allegations.

PTF'S OPP. TO DEF'S MOTION FOR SANCTIONS                    2:24-cv-07067-JAK-BFM

Complaint."). But Defendant also represents that when its attorneys called Mr. Tauler in August (just nine days after the Complaint was filed) they had *no factual basis whatsoever* supporting their contentions of falsity, just "a good faith belief" that they were right and the FAC was wrong. Mot. at 3. Indeed, despite Defendant's repeated accusation and threats of sanctions over multiple months, there is simply nothing in the record demonstrating that Defendant had *any* evidentiary basis for its contentions prior to November 5, 2024, which is when it served its "expert's" declaration as part of its original Rule 11 Motion. *See* Ahmadian Decl. ¶ 6. Moreover, Defendant's counsel has *never* been entitled to simply call up Plaintiff's attorney and demand the factual basis for the allegations. That's not how Rule 11 works, nor is it how discovery works. There are rules for discovery allowing a party to request documents, Defendant's counsel has simply refused to abide by them. One attorney who conducted no investigation into the facts alleged against its client then accusing the opposing attorney of failing to conduct a reasonable investigation, solely because she has an unsubstantiated "good faith belief that these allegations are false," shows absolutely nothing about the reasonableness of Plaintiff's inquiry.[2]

Similarly, Defendant's assertion that on another phone call on October 29, 2024, counsel for Plaintiff "could not provide the factual basis for the allegations in the Complaint" only shows that Defendant continued making baseless accusations and improper demands that should have been made through the discovery process.[3] Ahmadian Decl. ¶ 3. But the fact is that phone call was scheduled for Defendant to conduct the pre-filing conference required by Central District Local 7-3 for Defendant's own motion to dismiss and Defendant never even communicated that it also wanted to have a separate substantive discussion regarding its Rule 11. Kumar Decl. ¶ #. In addition, Defendant would not even produce its "expert's" report to Plaintiff for another week. This means that

---

[2] It does however demonstrate that Defendant has been leveling accusations of Rule 11 violations and threats of sanctions, since at least as far back as nine days after the complaint was filed, without any identified factual basis.

[3] As will be discussed below, Defendant still refuses to meaningfully respond to discovery until its demands are met.

Defendant is faulting Plaintiff's lack of investigation because on the October 29 phone call Plaintiff's counsel did not credit what Defendant's counsel said about an undisclosed expert's secret report. Defendant cannot establish an investigation was unreasonable simply because the opposing party declined to accept what Defendant had not yet produced.

The first (and only) piece of evidence that Defendant has identified which could even remotely support the months Defendant spent accusing Plaintiff of an insufficient pre-suit investigation is Defendant's "expert's" report from Defendant's original Rule 11 letter that Defendant served on Plaintiff on November 5, 2024. Ahmadian Decl. ¶ 6. Plaintiff has already provided many reasons why that declaration is plainly insufficient for establishing the truth or falsity of the allegations in paragraphs 12-15, and there are additional reasons why that declaration is also plainly insufficient to establish that Plaintiff failed to conduct a reasonable investigation into those allegations before keeping them when she filed the FAC.

The first is that … it's nothing like the evidence in *Townsend* which was party providing information about itself, namely that it did not administer the relevant plan. *Townsend*, 929 F.2d at 1360-64. *Townsend* was also not based entirely on an expert's declaration about the conclusions he drew from a post-filing investigation his team conducted for the law firm representing Defendant. Vint Decl. ¶ 8. Nor had the defendant in Townsend previously cried wolf by repeatedly accusing the other side of violating Rule 11 but had never provided any factual basis for its own accusations.

Second, if that sort of "evidence" is sufficient to demonstrate that attorneys conducted no reasonable investigation into a complaint's factual allegations in violation of Rule 11 then the rules of civil procedure for expert discovery in federal court are largely meaningless. Here, Defendant's attorneys hired an undisclosed expert, never made any of the disclosures required for expert witnesses who it may use at trial, refused to produce any fact or expert discovery whatsoever, and now demand terminating sanctions and attorneys' fees. Ex. 9 (Defendant explaining it would not be providing any disclosure or

discovery related to its expert witness); Exs. 15-16 (Defendant's discovery responses stating that it will not produce any discovery whatsoever until its demands are met, which were for a protective order it never asked for and a ruling from the Court on its Motion to Dismiss); Kumar Decl. ¶ 3 ("Defendant has not yet made any initial disclosures, despite them being due on January 24, 2025."); Kumar Decl. ¶ 4 ("Defendant has not produced a single document in discovery."). Why should any defendant sit through fact discovery, expert discovery, expert disclosures, defend expert depositions, or engage in discovery at all when it could instead just file a Rule 11 motion like Defendant has here?

## C.    <u>Defendant Does Not Dispute That The FAC Still States A Claim For Violating Penal Code § 638.51 Even Without The Disputed Allegations</u>

Despite the appearance presented by Defendant of a complaint replete with "patently false" allegations, Defendant only disputes a handful of the allegations in the original Complaint and only two sentences of the FAC. Mot. at 4 (citing portions FAC ¶¶ 13, 15). Significantly, Defendant does not argue that any of the Disputed Allegations are necessary for the FAC to state a claim. In other words, while Defendant has identified certain allegations it says are false and sanctionable, Defendant says nothing about almost all of the factual allegations in the FAC, nor has Defendant analyzed the relationship between the Disputed Allegations and either the Undisputed Allegations or the claim for Defendant's violation of Section 638.51. This failure alone requires the Motion to be denied.

For the core elements of Plaintiff's claim, Judge Klausner explained in *Moody v. C2 Educational Systems Incorporated*, "[t]o state a claim under § 638.51, a plaintiff must allege that a defendant installed and used a pen register or trap and trace device without first obtaining a court order." 742 F. Supp. 3d 1072, 1075 (C.D. Cal. 2024) (citing Cal. Penal Code §§ 638.50(b)–(c); 638.51). Plaintiff discusses the meaning of that statutory language in much greater detail in her Opposition to Defendant's Motion to Dismiss at 13-17, dkt. #, and it is important to understand that Defendant does not dispute here the FAC's allegations regarding:

- De-anonymization and fingerprinting. FAC ¶ 9;
- That the "TikTok Software gathers device and browser information, geographic information, referral tracking, and url tracking by running code or 'scripts' on the Website to send user details to TikTok." FAC ¶ 10;
- "The TikTok Software begins to collect information the moment a user lands on the Website." FAC ¶ 11;
- "The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users." FAC ¶ 21;
- "The TikTok Software is "reasonably likely" to identify the source of incoming electronic impulses. In fact, it is designed solely to meet this objective." FAC ¶ 22

These allegations in the FAC are identical or substantially similar to those which numerous other courts concluded were sufficient to state a viable claim under Section 638.51. *See Moody*, 742 F. Supp. 3d at 1076; *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 65409, at *5 (C.D. Cal. Jan. 8, 2025); *Heiting v. FKA Distributing Company*, No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024).

Despite asserting that "the FAC filed against Talkspace contains numerous allegations that are objectively incomplete and were clearly made without any reasonable and competent inquiry" it is very telling that Talkspace's Motion ignores almost all of the allegations in the FAC, does not discuss the statutory requirements of Plaintiff's claim, never even refers to CIPA after the introductory paragraph, and only even specifically identifies language from portions of two of the thirty-six paragraphs in the FAC. Mot. at 6 (referencing FAC ¶¶ 13, 15). This is why the Ninth Circuit has explained that while "the mere existence of one non-frivolous claim is not dispositive" and the "relation of the allegedly frivolous claim to the pleading as a whole is thus a relevant factor" in determining whether Rule 11 has been violated." *Townsend v. Holman Consulting Corp.*, 929 F.2d

1358, 1364 (9th Cir. 1990) (*en banc*); *Kiobel v. Millson*, 592 F3d 78, 83 (2nd Cir. 2010) (internal quotes and brackets omitted) ("Rule 11 sanctions do not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains well grounded in fact. Defendant has instead failed to even meaningfully *acknowledge* that its Motion concerns Disputed Allegations that are, at most, only a handful of sentences in the FAC. Defendant has therefore also not substantively addressed the Disputed Allegations' relationship to all the other factual allegations in the FAC and Plaintiff's claim that it violated CIPA by using an illegal Trap and Trace device. Defendant was required to do this with clear and convincing evidence because *Defendant*, not Plaintiff, bears the burden of proving Rule 11 was violated. Defendant has utterly failed to do this, and its failure requires the Court to deny the Motion.[4]

### D.  <u>Talkspace Is Not Entitled To The Relief It Seeks</u>

Talkspace repeatedly requests terminating sanctions and for Plaintiff to directly pay it for all of its attorneys' fees for the entire action, but it makes no attempt to show how or why those remedies are appropriate or even allowed in this case. "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. Rule 11(c)(4); *see also* Fed. R. Civ. P. Rule 11(c)(1) (requiring sanctions awarded under Rule 11 to be appropriate

---

[4] The closest the Motion comes to acknowledging that the Disputed Allegations are a small part of the factual allegations in the FAC and the larger claim is in its request for monetary and non-monetary damages, stating "[t]he Court can impose sanctions for misrepresentations or frivolous pleadings, even if the party to be sanctioned has asserted a non-frivolous claim." Mot. at 8. This bare acknowledgement contrasts with Talkspace's repeated accusations and suggestions that the FAC's factual deficiencies are far more pervasive than it actually attempts to show in its Motion, as well as its requests for relief that are only appropriate if the FAC as a whole is factually baseless, like direct payment of its attorneys' fees for the entire case and dismissing or striking the FAC in its entirety. *E.g.*, Not. of Mot. at ii ("Talkspace seeks an order (1) dismissing Plaintiff's FAC with prejudice or striking the frivolous allegations, and (2) directing Plaintiff's Counsel to reimburse Talkspace for its attorneys' fees and costs incurred in this action as well as bringing this Motion."); Mot. at 8, 9, 10. This strongly suggests Talkspace's failure to address this issue was both knowing and intentional.

for the violation). Defendant has also failed in its obligation to identify any injury or increased litigation costs caused by the Disputed allegations. Phillips & Stevenson, *Rutter Group Prac. Guide, Federal Civ. Pro. Before Trial* (The Rutter Group 2020), ¶ 17:265 (explaining that when only a part of a pleading is frivolous, "[t]o warrant sanctions, however, it must be shown that the improper claims or allegations *increased the cost of litigation* to the opposing party") (emphasis in original) (quoting *Patterson v. Aiken*, 841 F2d 386, 387 (11th Cir. 1988) ("The district court was within its discretion in imposing Rule 11 sanctions as to a single count of a multiple count complaint, *where the effect and cost of that count could be separated* from that of the other counts.") (emphasis in original); Committee Notes on Amendments to Federal Rules of Civil Procedure (1993), *Subdivisions (b) and (c)* ("Any such award to another party, however, should not exceed the expenses and attorneys' fees for the services directly and unavoidably caused by the violation of the certification requirement."). And even though "any award of expenses should be limited to those directly caused by inclusion of the improper count, and not those resulting from the filing of the complaint or answer itself," Committee Notes on Amendments to Federal Rules of Civil Procedure (1993), *Subdivisions (b) and (c)*, Talkspace repeatedly requests it be directly paid the full amount of its attorneys in defending the entire action. *E.g.*, Mot. at 8, 9, 9-10 (requesting "all other reasonable attorney's fees incurred thus far in defending against this action." Mot. at 9-10.

## E. Substantial Evidence Proves Plaintiff Had A Reasonable Basis For The Disputed Factual Allegations

Although Plaintiff has no burden on a Rule 11 motion to prove there is a reasonable basis for the Disputed Allegations (no matter how many times Defendant demanded it or incorrectly asserted it had a right to do so), there is more than enough objective evidence to easily establish a reasonable factual basis for the Disputed Allegations just from Talkspace's publicly posted privacy documents.

Talkspace has two privacy policies on its website that are relevant here: Its general Privacy Policy, Kumar Decl. Ex. 12, and its Privacy Notice for California Residents

("California Privacy Notice"), Kumar Decl. Ex. 11. The California Privacy Notice discloses that "Identifiers" that come "[d]irectly from you or your devices, for example **from forms you complete and submit** prior to becoming a subscriber[,]" are collected by Talkspace "to communicate with you, including for marketing purposes" and Talkspace will not sell this information but it will "share this information with certain service providers who help us process and use the information subject to written agreements." Ex. 11 at 3. Now compare that to the Disputed Allegations in Paragraph 12 of the FAC: "When the website asks for information, such as name, date of birth, and address, as it does above, the information is sent simultaneously to TikTok, so that TikTok can isolate with certainty the individual to be targeted." Name, date of birth, and address are all "Identifiers" and the screenshot in paragraph 12 clearly shows a form on the Website asking visitors to complete those exact Identifiers and submit them directly to Talkspace. FAC ¶ 12. And if a visitor did that the California Privacy Notice discloses that Talkspace collects that information for marketing purposes and shares it with service providers, which could certainly include TikTok because the TikTok Software helps process and use the information submitted, as long as Talkspace has a written agreement with TikTok. In short, the California Privacy Notice expressly discloses that Talkspace has the right to do exactly what the TikTok Software it installed on its Website is alleged to do in paragraph 13. Talkspace's Privacy Policy is even clearer because it contains identical language except that service providers expressly includes entities providing services like marketing and analytics, both of which obviously apply to TikTok.  Ex. 12 at 3. While this does not *prove* that this has occurred, the fact that Talkspace wrote two different privacy documents that expressly allow it to do exactly what is alleged and it installed the TikTok Software which can do that, then Defendant cannot genuinely assert that such a thing is impossible and nothing more than "baseless, factually unsupported allegations." Mot. at 1.

      If Talkspace doesn't want people to think it's doing what is alleged in paragraph 13 because that allegation caused it "significant reputational harm to Talkspace,

damaging both current and future business opportunities," Mot. at 1-2, then Talkspace really shouldn't have multiple privacy policies that expressly allow it to do that. Defendant and its expert never address these privacy documents or explain why Talkspace has expressly written them to allow it to do exactly what is alleged. Moreover, the Disputed Allegations have also been confirmed by multiple other expert witnesses in this case and others. *See* Tauler Decl., Exs. 3, 4; Weiss Decl. ¶ 4 ("The pixel can send form data captured from any page on the website and transmit it to TikTok, including name and phone number depending on the pixel's configuration.").

Similarly, the Disputed Allegations in paragraph 15 concern whether medical information has been shared with TikTok. Defendant's counsel asserts in its brief that "Talkspace has never shared any medical information of minors with TikTok," Mot. at 2, but counsel must be stating this from personal knowledge because there is no citation to any evidence and this assertion is not supported by anything in its expert's report. Moreover, it's quite clear that the TikTok Software can send medical information to TikTok because, at a minimum, visiting the webpages of a medical provider who offers therapy is itself medical information which TikTok can determine from the urls it collects. FAC ¶ 10. It's no big leap to conclude that someone on a webpage for a medical provider may be experiencing a medical condition which that provider can treat.

## V.  **CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion for Sanctions. If the Court has any reason to consider making a factual finding in support of the Motion then Plaintiff requests permission to cross-examine Defendant's expert pursuant Local Rule 7-8, or, in the alternative, to take the matter under submission until after Defendant has provided Plaintiff with expert disclosures, responded to basic discovery requests, and an opportunity to depose any witness it seeks to use to obtain a favorable judgment on the merits whether through sanctions or otherwise.

DATED: March 21, 2025                **TAULER SMITH LLP**

By:  */s/ Robert Tauler*
　　　 Robert Tauler, Esq.
　　　 Attorneys for Plaintiff
　　　 Courtney Mitchener

PTF'S OPP. TO DEF'S MOTION FOR SANCTIONS　　　　　　2:24-cv-07067-JAK-BFM

1

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Plaintiff Courtney Mitchener, certifies that

3  this brief does not exceed 25 pages, which complies with the page limit set by the Court

4  in the Standing Order it issued in this case. Dkt. 9 at 10.

5

6  DATED: March 21, 2025         **TAULER SMITH LLP**

7

8

9                  By:  */s/ Robert Tauler*_____

10                      Robert Tauler, Esq.
                        Attorneys for Plaintiff
11                     Courtney Mitchener

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28