UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-07067-JAK (BFMx) | Date | June 27, 2025 |
| Title | Mitchener v. Talkspace Network LLC | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |

| | |
|---|---|
| Daniel Torrez | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT (DKT. 18); DEFENDANT'S MOTION FOR SANCTIONS (DKT. 30)**

## I. Introduction

On August 20, 2024, Courtney Mitchener ("Plaintiff") brought this putative class action against Talkspace, Inc.[1] ("Talkspace" or "Defendant") and Does 1 through 25 (the "Complaint"). Dkt. 1. On November 4, 2024, Defendant filed a motion to dismiss the Complaint. Dkt. 12.

On November 25, 2024, Plaintiff filed a First Amended Complaint (the "FAC"), which is the operative one. Dkt. 17. The FAC advances a single claim for violations of the California Trap and Trace Law. *Id.* ¶¶ 32–36. On December 9, 2024, Defendant filed a motion to dismiss and/or strike the FAC (the "MTD"). Dkt. 18. On January 13, 2025, Plaintiff filed an opposition to the MTD (the "MTD Opposition"). Dkt. 22. On February 3, 2025, Defendant filed a reply in support of the MTD (the "MTD Reply"). Dkt. 25.

On March 7, 2025, Defendant filed a Rule 11 motion to impose sanctions on Plaintiff and her attorneys, Tauler Smith, LLP (the "Sanctions Motion"). Dkt. 30. On March 21, 2025, Plaintiff filed an opposition to the Sanctions Motion (the "Sanctions Opposition"). Dkt. 33. On March 28, 2025, Defendant filed a reply in support of the Sanctions Motion (the "Sanctions Reply," Dkt. 37), and evidentiary objections to the declarations and exhibits proffered in support of the Sanctions Opposition. Dkt. 38.

A hearing on the MTD was held on March 10, 2025, and a hearing on the Sanctions Motion was held on April 21, 2025, and the matters were taken under submission. For the reasons stated in this Order, the MTD is **GRANTED,** and the Sanctions Motion is **GRANTED IN PART**. The FAC is dismissed without prejudice, *i.e.*, with leave to amend.

## II. Background

### A. Parties

[1] The Complaint incorrectly identified Defendant as "Talkspace Network LLC."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-07067-JAK (BFMx) | Date | June 27, 2025 |
| Title | Mitchener v. Talkspace Network LLC | | |

It is alleged that Plaintiff is a citizen of California, who resides within the Central District. Dkt. 17 ¶ 4.

It is alleged that Defendant is a New York limited liability company that owns, operates and/or controls www.talkspace.com (the "Website"). *Id.* ¶ 5. It is alleged that the true identities of Doe Defendants 1 through 25 are currently unknown to Plaintiff. *Id.* ¶ 6. It is alleged that each of these defendants was "acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency." *Id.* ¶ 7.

Pursuant to Local Rule 19-1, no complaint or petition shall be filed that includes more than ten Doe or fictitiously named parties. Accordingly, Doe Defendants 11 through 25 are dismissed, without prejudice.

B. Allegations in the FAC

It is alleged that Defendant is a health care provider offering therapy services through the Website. *Id.* ¶ 8. It is alleged that Defendant installed software created by TikTok on the Website to identify website visitors (the "TikTok Cookie"). *Id.* It is alleged that "Plaintiff visited Defendant's website after the TikTok Cookie was installed and within the limitations period established by statutes." *Id.*

It is alleged that the TikTok Cookie functions through a process called "fingerprinting," in which it "collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." *Id.* ¶ 9. It is alleged that the TikTok Cookie "begins to collect information the moment a user lands on the Website." *Id.* ¶ 11. Accordingly, it is alleged that "even though the Website has a 'cookie banner' the information has already been sent to TikTok regarding the user's visit." *Id.* It is alleged that the Website "instantly sends communications to TikTok whenever a user lands on the Website and every time a user clicks on a page." *Id.* ¶ 13.

It is alleged that when the Website "asks for information, such as name, date of birth, and address…the information is sent simultaneously to TikTok, so that TikTok can isolate with certainty the individual to be targeted." *Id.* It is further alleged that the Website "encourages . . . visitors, including those seeking 'Teen Therapy' to enter information" and "TikTok obtains medical information related to minors through TalkSpace." *Id.* ¶ 15. It is alleged that, "[a]rguably, TalkSpace is just a platform to sell powerful psychiatric drugs to young people." *Id.* ¶ 17.

It is alleged that "Defendant did not obtain Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization." *Id.* ¶ 23. Accordingly, it is alleged that Defendant's conduct is in violation of Cal. Pen. Code § 638.51, the "California Trap and Trace Law." *Id.* ¶¶ 32–36. It is alleged that "Defendant uses a trap and trace process on its Website by deploying the TikTok [Cookie] on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors." *Id.* ¶ 35.

C. Class Allegations

Plaintiff seeks to represent the following Class: "All persons within California whose identifying information was sent to TikTok as a result of visiting the Website within the limitations period." *Id.* ¶ 26.

D. California Invasion of Privacy Act ("CIPA")

Chapter 1.5 of the California Penal Code, which is the California Invasion of Privacy Act, criminalizes invasions of privacy. Section 637.2 of the CIPA provides a private right of action for a person who has been injured by a violation of this chapter.

Section 638.51 of the CIPA addresses the use of a pen register or trap and trace device:

> (a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.
>
> (b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:
>
> (1) To operate, maintain, and test a wire or electronic communication service.
> (2) To protect the rights or property of the provider.
> (3) To protect users of the service from abuse of service or unlawful use of service.
> (4) To record the fact that a wire or electronic communication was initiated or completed to protect the provider, another provider furnishing service toward the completion of the wire communication, or a user of that service, from fraudulent, unlawful, or abusive use of service.
> (5) If the consent of the user of that service has been obtained.
>
> (c) A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment.
>
> (d) A good faith reliance on an order issued pursuant to Section 638.52, or an authorization made pursuant to Section 638.53, is a complete defense to a civil or criminal action brought under this section or under this chapter.

Section 638.50(c) defines a "trap and trace device" as follows:

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

E. Declarations Filed in Support of the Sanctions Motion

1. <u>Vint Declaration</u>

Defendant submitted the declaration of Jim Vint ("Vint") in support of the Sanctions Motion (the "Vint Declaration"). *See* Dkt. 30-2. Vint declares that he is a Managing Director at Secretariat Advisors

("Secretariat"), which is a consulting firm that specializes in "advisory and expert services related to data-driven forensic and data privacy investigations." *Id.* ¶ 1. Vint also declares that, since 2019, he has performed more than 400 investigations as to the use of website technology, and that he has "more than 25 years of experience in the data analytics and security industry." *Id.* ¶¶ 3, 6. Vint next declares that he was engaged by Defendant's counsel in this matter to perform a review of the TikTok Cookie as it is deployed on the Website. *Id.* ¶ 8.

Vint declares that he investigated the TikTok Cookie using Fiddler Everywhere ("Fiddler"), an "industry-standard web traffic analysis software." *Id.* ¶ 9. Vint then declares that Fiddler "provides the ability to forensically capture webpage navigation paths taken by a user, assess web technology deployed, record requests between a user's browser and third parties, and inspect any inbound or outbound transmissions of data, including any user-entered information that might be entered via form fields." *Id.* ¶ 10. Vint declares that those with whom he works performed an assessment of the Website in September and October of 2024. *Id.* ¶ 11. Vint then declares that after reviewing the Fiddler analysis of the Website, he "did not observe name, date of birth, address, or medical information being transmitted to TikTok from any webpage or form reviewed on the Website, including the pages depicted in paragraphs 12 through 15 of the Complaint." *Id.* ¶ 12.

2. <u>Kumar Declaration</u>

Plaintiff submitted the declaration of Narain Kuman ("Kumar"), who is one of her counsel in this matter, in support of the Sanctions Opposition (the "Kumar Declaration"). Dkt. 34. Attached to the Kumar Declaration are several exhibits. *Id.* ¶¶ 5–19. They are described as follows:

- Ex. 5: a true and correct copy of a screenshot showing code of the TikTok software installed on Defendant's website.
- Ex. 6: a true and correct copy of an email sent from Defendant's attorney to me on October 30, 2024.
- Ex. 7: a true and correct copy of an email sent from me to Defendant's attorney on October 30, 2024.
- Ex. 8: a true and correct copy of an email sent from Defendant's attorney to me on March 17, 2025.
- Ex. 9: a true and correct copy of an email sent from Defendant's attorney to me on March 17, 2025.
- Ex. 10: a true and correct copy of a screenshot showing a privacy pop-up window that appears on Defendant's website.
- Ex. 11: a true and correct copy of Defendant's "Privacy Notice for California Residents," found on Defendant's website.
- Ex. 12: a true and correct copy of Defendant's "Privacy Policy," found on Defendant's website.
- Ex. 13: a true and correct copy of a screenshot showing a privacy pop-up window that appears on Defendant's website.
- Ex. 14: a true and correct copy of a screenshot showing a privacy pop-up window that appears on Defendant's website.
- Ex. 15: a true and correct copy of Defendant Talkspace Inc.'s Objections and Responses to Plaintiff Courtney Mitchener's Special Interrogatories, Set One, dated February 12, 2025.

- Ex. 16: a true and correct copy of Defendant Talkspace Inc.'s Objections to Plaintiff Courtney Mitchener's Request for Production of Documents, Set One, dated February 12, 2025.
- Ex. 17: a true and correct copy of a meet-and-confer letter sent from [Kumar] to Defendant's attorneys, dated March 17, 2025.
- Ex. 18: a true and correct copy of an information page titled "About using cookies with TikTok Pixel," found on TikTok's website.
- Ex. 19: a true and correct copy of Defendant's former "Privacy Policy," accessed via the Wayback Machine's archive of Defendant's website.

*Id.*

3. Tauler Declaration

Plaintiff also submitted the declaration of Robert Tauler ("Tauler"), who is also one of her counsel in this matter, in support of the Sanctions Opposition (the "Tauler Declaration"). Dkt. 35. Tauler declares that he has "serious concerns about the business model of TalkSpace" and "[b]ased on [his] research, [he] believe[s] that TalkSpace uses TikTok and other social media platforms to target vulnerable teenagers, steering them toward pharmaceutical products and paid mental health services." *Id.* ¶ 4. Tauler further declares that "[i]t is no secret that TikTok has been deemed a threat to our society" and he has "developed a deep understanding of the way TikTok's embedded tracking software functions on third-party websites, including TalkSpace.com." *Id.* ¶ 8. Tauler then declares that his "knowledge stems from public reports, academic papers, and [his] consultations with technical experts." *Id.* ¶ 9. Tauler further states that "[e]xperts [he] has engaged in this and other cases have confirmed that TikTok's code collects user names, email addresses, IP addresses, device information, and browsing behavior." *Id.* ¶ 11.

The following exhibits are appended to the Tauler Declaration:

- Ex. 2: a public report from the Office of the Director of National Intelligence. Tauler states that "[t]his report explains TikTok's potential role in foreign surveillance."
- Ex. 3: a report from another case explaining how the TikTok Software can collect names and email addresses.
- Ex. 4: a report from an opposing expert in another case who concedes that the TikTok Software can collect names and email addresses.

*Id.* ¶¶ 10, 12, 13.

4. Weiss Declaration

Plaintiff also submitted the declaration of Adam Weiss ("Weiss") in support of the Sanctions Opposition (the "Weiss Declaration"). Dkt. 36. Weiss declares that he has an undergraduate degree, and that he majored in Urban Planning. *Id.* ¶ 1. Weiss also declares that he has "a Masters degree . . . in Public Administration." *Id.* Weiss then declares that he is "the President, CEO and Lead Web Developer at Great Matter," a company that "specializes in designing, developing, hosting, and supporting web sites, marketing campaigns, and technical support." *Id.* ¶ 2. Weiss adds that he was "engaged to conduct a technical audit of the Talkspace.com website to evaluate its implementation of the TikTok [Cookie]

tracking code and consent architecture." *Id.* ¶ 3. Weiss declares that "[f]ollowing [his] evaluation of the complaint, and a review of the website and publicly available APIs, the complaint's screenshot accurately depicts a pixel on the Talkspace website that references TikTok, and that the website no longer uses that specific [cookie]." *Id.* ¶ 4. Weiss further declares that the TikTok Cookie "can send form data captured from any page on the website and transmit it to TikTok, including name and phone number depending on the [cookie's] configuration." *Id.*

## III. <u>Evidentiary Objections</u>

Defendant has filed evidentiary objections to the Kumar, Tauler and Weiss Declarations. Dkt. 38 at 2. However, the rulings on the Motions that are made in this Order rely solely on certain, admissible evidence. Therefore, to the extent objections have been made to such evidence as cited in this Order, they are **OVERRULED**. To the extent the objections are not cited as to evidence on which this Order is based, they are **DENIED** as moot. However, for clarity, certain general objections, which are not directed at specific evidence, are addressed.

Defendant objects to the entirety of the Kumar and Tauler Declarations as untimely. *Id.* at 2, 14. Defendant argues that, pursuant to this Court's Standing Order, Plaintiff's opposition to the Sanctions Motion and any accompanying declarations were to be filed no later than March 21, 2025. *Id.* The Kumar Declaration was filed at 12:36 a.m. on March 22, 2025, and the Tauler Declaration was filed at 12:44 a.m. on March 22, 2025. *Id.* at 2, 14. These objections are **OVERRULED** because the delay in making these filings was *de minimis*, and Defendant has not shown any resulting prejudice, including in the connection with the filing of its reply briefs.

Defendant further objects to the entirety of the Kumar and Tauler Declarations because they are unsigned. *Id.* at 2, 14. Defendant argues that "[b]ecause [these] declarations [have] not been signed, Mr. Kumar [and Mr. Tauler have] not properly attested to the truthfulness of [their] declaration[s]." *Id.* Fed. R. Civ. P. 11(a) requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name." "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id.* Kumar and Tauler did not sign their declarations prior to submitting them. However, each corrected this error following the hearing on the Sanctions Motion, by submitting signed copies of their respective declarations. Dkts. 43-1, 43-2. Accordingly, Defendant's objections are **DENIED AS MOOT**. Defendant also lodges individual objections to certain statements in the Kumar and Tauler Declarations on several grounds. Dkt. 38 at 14–22. Because these statements do not form the basis for the analysis and conclusions in this Order, they are **DENIED AS MOOT**.

Defendant objects to the entirety of the Weiss Declaration as untimely. *Id.* at 23. As discussed, Plaintiff's opposition to the Sanctions Motion and any accompany declarations were to be filed no later than March 21, 2025. *Id.* The Weiss Declaration was filed at 12:44 p.m. on March 22, 2025. For the same reasons stated above as to the Kumar and Tauler Declarations, this objection is **OVERRULED**.

## IV. <u>Analysis</u>

### A. Motion to Dismiss

In support of the MTD, Defendant argues that this action should be dismissed pursuant to Fed. R. Civ. P 12(b) for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted. Dkt 18 at 14–25.

1. <u>Legal Standards</u>

a) Subject-Matter Jurisdiction

" 'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' " *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "The limits upon federal jurisdiction . . . must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). The plaintiff bears the burden of proving that his case is within federal jurisdiction. *See, e.g.*, *In re Ford Motor Co./Citibank (S.D.), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

"Standing is an essential component of the case or controversy requirement of Article III, § 2 of the United States Constitution." *Am. C.L. Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) (internal quotation marks and citation omitted). "To satisfy Article III standing, the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017) (citing *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 578 U.S. 330, 338 (2016)) (internal quotation marks and alteration omitted). Because the standing requirements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). However, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.*

"A plaintiff establishes injury in fact, if he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Van Patten*, 847 F.3d at 1042 (quoting *Spokeo II*, 578 U.S. at 339). However, "a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Even then, Article III standing requires a concrete injury." *Robins v. Spokeo, Inc.* ("*Spokeo III*"), 867 F.3d 1108, 1112 (9th Cir. 2017), cert. denied, 538 U.S. 1102 (2018) (internal quotations and alteration omitted).

b) Failure to State a Claim

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading must allege facts that, if established, would be sufficient to show that a claim for relief is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint need not include detailed factual allegations but must provide more than a "formulaic

recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Fed. R. Civ. P. 12(b)(6) permits a party to move to dismiss a cause of action that fails to state a claim in accordance with the foregoing standards. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *See Cahill*, 80 F.3d at 337–38. However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

2. Application

a) Subject-Matter Jurisdiction

In support of the MTD, Defendant argues that Plaintiff has not shown Article III standing because she "fails to allege *any harm* resulting from her use of the Talkspace website because Plaintiff *does not allege any facts about her visit to the website* -- let alone that she was harmed during that visit." Dkt. 18 at 14 (emphasis in original). Defendant also contends that "Plaintiff does not allege what 'electronic impulses' of hers were captured, what information those electronic impulses allegedly contained, nor that any such information was likely to identify Plaintiff." *Id.* Defendant then argues that "Plaintiff's allegations are cast in hypothetical terms and conclusory language" and contain "generic allegations" that are "untethered to Plaintiff's *own* experiences." *Id.* (emphasis in original). Defendant also asserts that "[g]eneral allegations about what the TikTok Cookie *may be capable* of collecting do not sufficiently establish what the TikTok Cookie *actually collected* from Plaintiff (if anything)." *Id.* at 15 (emphasis in original). For these reasons, Defendant argues that "because Plaintiff has not alleged concrete harm to her privacy, she has failed to satisfy the injury in fact requirement for Article III standing." *Id.*

Through the MTD Opposition, Plaintiff responds that she "suffered a constitutionally cognizable injury when Defendant violated her right to privacy." Dkt. 22 at 9. Plaintiff also contends that "violations of someone's right to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact." *Id.* Plaintiff then asserts that the allegations in the FAC are sufficient to establish standing because "she alleged her device, browser, and geographic information were tracked across multiple webpages, without her knowledge or consent." *Id.* at 12.

Defendant replies that "the only plausible inference that can be made" based on Plaintiff's "lone allegation about her *single* visit to the Talkspace website" is that her "IP address was provided and collected by Talkspace – a voluntary exchange that is necessary to operate the website and does not constitute an invasion of a visitor's privacy." Dkt. 25 at 7 (emphasis in original). Defendant then contends that "[t]he FAC's remaining non-specific allegations describing what the TikTok Cookie *may*

*be* capable of collecting cannot be used to establish" standing. *Id.* (emphasis in original). Defendant also argues that Plaintiff has not identified "any information" that she provided to Talkspace*, e.g.,* "name, date of birth, or address…nor does she allege that she was referred to the Talkspace website from another URL, such that the TikTok Cookie would have captured 'referral tracking or 'url tracking' information." *Id.*

Defendant's arguments are persuasive. Article III standing requires a plaintiff to establish a concrete and particularized injury. *See Spokeo II*, 578 U.S. at 334. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.' *Id.* at 339 (quoting *Lujan*, 504 U.S. 560, n.1). *See also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (standing requires that the plaintiff personally has suffered some actual or threatened injury). "A concrete injury must be de facto; that is, it must actually exist," and it must be "real, and not abstract." *Spokeo II*, 578 U.S. at 340 (internal citations and quotation marks omitted).

"[A] right to privacy encompasses the individual's control of information concerning his or her person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (cleaned up). A plaintiff adequately alleges harm to these privacy interests in the context of internet browsing by alleging tracking of "browsing activities," including "an individual's likes, dislikes, interests, and habits over a significant amount of time." *Id.* at 599.

Other district courts have concluded that the collection of "other, less personalized information does not implicate privacy concerns." *See, e.g.*, *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (collection of "basic contact information, including one's email address, phone number, or Facebook or Zynga username" is insufficiently concrete to confer standing as there is "an insufficient fit between the loss of information alleged here and the common law privacy torts of private disclosure of private facts and intrusion upon seclusion"); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (granting motion to dismiss for lack of standing because "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (granting motion to dismiss for lack of standing as "Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest. She therefore has not identified any harm to her privacy").

The only specific, relevant allegation in the FAC is that "Plaintiff visited Defendant's website after the TikTok software was installed and within the limitations period established by statutes." Dkt. 17 ¶ 8. This conclusory allegation does not identify what personal information of Plaintiff's, if any, was captured by the TikTok Cookie. Thus, Plaintiff has not sufficiently alleged the collection or disclosure of any of her personal information that would violate a protectable privacy interest.

Because the FAC does not allege that Plaintiff has suffered any injury in fact, and in light of the lenient standards that apply in determining whether leave to amend should be permitted, the MTD is **GRANTED WITHOUT PREJUDICE,** *i.e.*, with leave to amend.

b) Failure to State a Claim

Because it has been determined that the FAC will be dismissed due to inadequate allegations as to the basis for Plaintiff's standing, whether the FAC has failed to state a claim is **MOOT**. These issues may be renewed in a future motion to dismiss any Third Amended Complaint.[2]

B. Motion to Strike

1. <u>Legal Standards</u>

District courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The analysis of a motion to strike begins with a determination of whether the material was "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Id. at 973 (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

In general, motions to strike are disfavored; courts grant them only if there is "a showing of prejudice by the moving party." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (quoting *SEC v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995)); *see also* 5A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1381 (2d ed. 1990) ("Thus, even when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party."); Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Proc. Before Trial § 9:376 (The Rutter Group 2013) ("[A] motion to strike is usually a waste of time and money without such a showing").

The basis for a motion to strike must appear on the face of the challenged pleading. *Eurow & O'Reilly Corp. v. Superior Mfg. Grp., Inc.*, No. CV 14-6595-RSWL (VBKx), 2015 WL 1020116, at *2 (C.D. Cal. Mar. 6, 2015). "In reviewing a motion to strike, the challenged pleading must be read in the light most favorable to the non-moving party." *Xingen v. Inland Energy, Inc.*, No. SA CV19-01039 JAK (JEMx), 2020 WL 13211718, at *4 (C.D. Cal. Feb. 18, 2020); *see also Lilley v. Charren*, 936 F. Supp. 708, 713 (N.D. Cal. 1996) ("A motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation.").

2. <u>Application</u>

In support of the MTD, Defendant argues that "Plaintiff's FAC is rife with allegations that are highly inflammatory and wholly unrelated to Plaintiff's interaction with the TikTok Cookie on Talkspace's website." Dkt. 18 at 27. Accordingly, pursuant to the MTD, Defendant moves to strike what it contends are Plaintiff's "inflammatory (and false) allegations about how Talkspace interacts with teen visitors on its website." *Id.* Defendant contends that "[n]ot only do these allegations lack any factual basis . . . they have nothing to do with Plaintiff's lone CIPA claim," particularly given that Plaintiff is "ostensibly an adult woman," and not a teenager. *Id.* For these reasons, Defendant contends that these allegations are

[2] Without making any determination of the merits of Defendant's arguments on this issue, it is recommended that Plaintiff consider them in connection with the preparation of any Third Amended Complaint in order to advance party and judicial efficiency.

"irrelevant, defamatory, [and] highly prejudicial." *Id.* Defendant then contends that "to the extent the FAC is not dismissed in its entirety, paragraphs 15–17 should be stricken." *Id.*

In the MTD Opposition, Plaintiff responds that the motion to strike should be denied because "[it is] generally a strongly disfavored motion because [it] often serve[s] minimal purpose and here [it] would serve no purpose at all." Dkt. 22 at 28. Plaintiff contends that the challenged allegations are "an important part of understanding and explaining Defendant's potential motives for its marketing," which is relevant to the wrongdoing that injured Plaintiff "[d]espite the fact that [she] is not a teenager." *Id.* Plaintiff then argues that these allegations are "probative of a 'criminal intent.' " *Id.* at 29.

The paragraphs of the SAC that Defendant seeks to have stricken contain allegations that "TikTok obtains medical information related to minors through Talkspace," that "Talkspace offers its services to teenagers," that "Talkspace is just a platform to sell powerful psychiatric drugs to young people," and a list of "over twenty medications that could be prescribed" by a Talkspace psychiatrist. *See* Dkt. 17 ¶¶ 15–17. Further, Defendant has brought the Sanctions Motion pursuant to Fed. R. Civ. P. 11. The relief sought there also includes striking certain allegations regarding teen visitors to the Talkspace website. "Motions to strike are generally regarded with disfavor." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Because the MTD has been granted, these specific allegations are no longer active. Accordingly, the overlapping requests to strike certain allegations in the FAC are **MOOT**. However, they are considered in connection with the Sanctions Motion, which challenges their inclusion with the FAC as filed.

C. Motion for Sanctions

Defendant argues that sanctions under Fed. R. Civ. P. 11 are warranted against Plaintiff and her counsel because the FAC contains "allegations that have no basis in fact and were made without a reasonable and competent inquiry." Dkt. 30 at 2. On this basis, Defendant seeks an order: (1) dismissing the FAC with prejudice and/or striking the frivolous allegations; (2) awarding Talkspace reasonable attorney's fees incurred in connection with the Sanctions Motion, a portion of the fees attributable to the MTD and all other reasonable attorney's fees incurred at this point in defending this action. *Id.* at 14–15. Based on the prior discussion and rulings in this Order, only the second request remains at issue.

1. <u>Legal Standards</u>

Fed. R. Civ. P. 11(b) provides that an attorney who signs and files a pleading "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the matter "is not being presented for any improper purpose" and that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)(1), 11(b)(2). Rule 11(b)(3) requires that "the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Rule 11 permits the imposition of sanctions "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (citing *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996)).

The Ninth Circuit has identified two circumstances in which Rule 11 sanctions may be imposed: "where a litigant makes a 'frivolous filing,' that is, where he files a pleading or other paper which no competent attorney would believe was well grounded in fact and warranted by law; and where a litigant files a pleading or other paper for an 'improper purpose,' such as personal or economic harassment." *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987). Frivolous filings are those that are both "(1) baseless and (2) made without a reasonable and competent inquiry." *Montrose Chem. Corp. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1133 (9th Cir. 1997) (quoting *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). To be baseless, an assertion must "completely lack[ ] a factual foundation." *Id.* (quoting *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.3d 797, 801 (9th Cir. 1986)). Rule 11 places an "affirmative obligation [on parties and their attorneys] to investigate both the law and the facts underlying their claims." *Agron, Inc. v. Lin*, No. 03-CV-05872-MMM (JWJx), 2004 WL 555377, at *12 (C.D. Cal. Mar. 16, 2004) (citing *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 550 (1991); *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986)).

As to timing, Rule 11(c)(2) provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2). "[T]he procedural requirements of Rule 11(c)[(2)]'s 'safe harbor' are mandatory." *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (citing *Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998)).

2. <u>Application</u>

Defendant argues that the FAC is "riddled with baseless, factually unsupported allegations" that a "reasonable pre-suit investigation would have easily confirmed [as inaccurate]." Dkt. 30 at 6. Defendant specifically challenges two allegations in the FAC: (1) [W]hen the website asks for information, such as name, date of birth, and address, the information is sent simultaneously to TikTok; and (2) [T]he information given to TikTok by Talkspace includes medical information related to minors (the "Challenged Allegations"). *Id.* at 7 (quoting Dkt. 1 ¶¶ 12, 15)[3].

a) Factual Basis

Defendant contends that the Challenged Allegations are baseless because Plaintiff is not a minor, she did not "allege any facts about her alleged visit to the Website," and she did not allege that she filled out any form that would capture the aforementioned personally identifying information. *Id.* at 6.

---

[3] The Challenged Allegations appear in ¶¶ 12 and 15 of the Complaint. These allegations appear in ¶¶ 13 and 15 of the FAC. *See* Dkt. 17 ¶¶ 13, 15.

Vint declares that he investigated the TikTok Cookie using Fiddler, an "industry-standard web traffic analysis software," that "provides the ability to forensically capture webpage navigation." Dkt. 30-2 ¶¶ 9–10. Vint further declares that, after reviewing the Fiddler analysis of the Website, he "did not observe name, date of birth, address, or medical information being transmitted to TikTok from any webpage or form reviewed on the Website." *Id.* ¶ 12. Accordingly, Defendant argues that the Challenged Allegations are "demonstrably false" and have "no basis in fact." Dkt. 30 at 11 (citing Dkt. 30-1 ¶ 12).

In the Sanctions Opposition, Plaintiff argues that the Sanctions Motion is "an improper attempt to disprove the merits of two narrow and specific allegations supporting Plaintiff's claim and obtain terminating sanctions without ever having to provide any of the required procedural rights or protections such as basic discovery." Dkt. 33 at 5. Plaintiff also contends that Defendant "misrepresents" the conclusion in the Vint Declaration because "Defendant's expert stating that he did not observe a particular event occur does not and cannot prove that the event does not occur . . . or that no facts exist which could be construed as supporting the plausibility of that event occurring." *Id.* at 9. Plaintiff further challenges the timing of Vint's investigation. *Id.* at 10. Plaintiff argues that there is "no factual basis in the record to suggest that the Website and TikTok Software operated the same when Plaintiff visited the Website [in February 2024]" and when the expert visited in September and October 2024. *Id*. at 10.

Plaintiff next argues that "there is plenty of reason to believe that the Website and Defendant's privacy practices have changed since Plaintiff's visit" because Defendant "updated its privacy policy on April 12, 2024" and changed its consent banner for cookies to be "much more specific" in March 2024. *Id.* Plaintiff further argues that the Vint Declaration is deficient because it "never describes any of the details of what his team actually did" beyond "reviewing the Fiddler session captures." *Id.* Accordingly, Plaintiff argues that "Defendant has not established the falsity of any allegations." *Id.* at 11.

The Sanctions Opposition further argues that "there is more than enough objective evidence to easily establish a reasonable factual basis for the [Challenged] Allegations just from Talkspace's publicly posted privacy documents." *Id.* at 18. The Sanctions Opposition contends that "it's quite clear that the TikTok [Cookie] can send medical information to TikTok because . . . visiting the webpages of a medical provider who offers therapy is itself medical information," and "[i]t's no big leap to conclude that someone on a webpage for a medical provider may be experiencing a medical condition which that provider can treat." *Id.* at 20.

Defendant replies that Plaintiff fails to proffer any evidence to support a basis for the Challenged Allegations. Dkt. 37 at 4. Defendant argues that Plaintiff's Counsel certified that they had sufficient evidentiary support to back up the unqualified representations in the Complaint that Talkspace sends "name, date of birth, [] address . . . and medical information related to minors." *Id.* at 3. Defendant then argues that, "[a]s confirmed by the [Sanctions] Opposition, the Challenged Allegations have no objective basis in fact and by advancing them Plaintiff's Counsel has violated Rule 11(b)(3)." *Id.* at 4. The Sanctions Reply also contends that "[o]nly after a series of *assumptions* and *inferences* about Talkspace's data sharing practices . . . can Plaintiff's Counsel even potentially argue that the Challenged Allegations *might be possible*." *Id.* at 7 (emphasis in original) (citing Dkt. 33 at 18, 19) ("While this does not prove that this has occurred . . ."; "[I]t's quite clear that the [TikTok Cookie] can send medical information to TikTok.")). It then contends that, by admitting that inferences are required to support her position, "Plaintiff's Counsel has effectively conceded that they lack evidentiary support

for the Challenged Allegations—which were pled as non-qualified facts." *Id.* (citing *Martinez v. City of W. Sacramento*, 2021 WL 2227830, at *13 (E.D. Cal. June 2, 2021) ("[T]o the extent they concede the absence of evidentiary support by arguing that an inference is required, Plaintiffs' allegation runs afoul of Rule 11(b)(3)")).

Defendant's arguments are persuasive. The Challenged Allegations, which were not made "upon information and belief," allege that the Talkspace website transmitted users' names, dates of birth, addresses and medical information to TikTok. However, Plaintiff has failed to provide "factual foundation" to support these allegations. Plaintiff has not alleged that she submitted such information or was affected by such a transmission.

Further, Plaintiff is an adult. Accordingly, allegations related to medical information about teens are not relevant to the present dispute. Defendant proffers expert testimony showing that the TikTok cookie does not collect or transmit such information. *See* Dkt. 30-2 ¶ 12. In response, Plaintiff submitted the declaration of Weiss, who declares only that the TikTok Cookie "can send form data captured from any page on the website . . . depending on the [cookie's] configuration." Dkt. 36 at ¶ 4. As a threshold matter, as discussed above, Weiss has not shown that he has sufficient expertise in technical data audits. Further, Weiss states only that the data could be transmitted, not that any such data actually was transmitted. *Id.* Nor does he provide any support for the Challenged Allegation that the Website transmits "medical information related to minors." Also unpersuasive is Plaintiff's argument that merely visiting the Website constitutes sending "medical information to TikTok" because it is a webpage for a medical provider. This argument requires a series of inferences that are not supported. Thus, the Challenged Allegations do not meet the requirement that allegations be "well grounded in fact." See *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 800–01 (9th Cir. 1986).

b) Reasonable and Competent Inquiry

Defendant further argues that the Challenged Allegations "could not have been the result of a reasonable and competent inquiry because they are plainly false." Dkt. 30 at 11–12 (citing Dkt. 30-1 ¶ 12). Defendant contends that Plaintiff's Counsel is "purposefully ignoring evidence provided to him by [Defendant] that shows, with certainty, that the allegations are baseless." *Id.* at 12. Defendant then argues that Plaintiff's filing of an amended complaint that contains the Challenged Allegations, despite "the evidence provided by Talkspace . . . is precisely the type of conduct that Rule 11 sanctions are meant to deter." *Id.* (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990) (upholding an award of sanctions as to a first amended complaint where plaintiff received "sworn affidavits" disputing the allegations prior to filing).

In the Sanctions Opposition, Plaintiff argues that "there is no basis in law or fact for Defendant's arguments that merely alleging something which is later shown to not be true is, by itself, evidence that proves no reasonable investigation was conducted." Dkt. 33 at 12. Plaintiff contends that Defendant's allegations of an insufficient pre-suit investigation are premised solely on Defendant's "plainly insufficient" expert report. *Id.* at 14. Plaintiff asserts that this evidence is insufficient to demonstrate that Plaintiff did not conduct a reasonable investigation into the complaint's factual allegations prior to filing. *Id.*

In the Sanctions Reply, Defendant argues that the Sanctions Opposition "utterly fails to substantively

address" whether Plaintiff's Counsel "had a factual basis to make the Challenged Allegations *at the time* the [FAC] was filed," and "whether Plaintiff's Counsel conducted a 'reasonable and competent inquiry' *before* making the Challenged Allegations." Dkt. 37 at 3 (emphasis in original). The Sanctions Reply then states that by presenting allegations, "which clearly have no basis in fact . . . Plaintiff's Counsel either failed to conduct the reasonable and factual legal inquiry required under Rule 11, or they conducted such an inquiry and filed this lawsuit anyway without the requisite support." *Id.* at 9.

The Sanctions Reply further argues that Plaintiff's attempts to discredit Defendant's expert are "faulty" and "unavailing." *Id.* at 10. It contends that the proper inquiry on a Rule 11 Motion is about what Plaintiff's Counsel knew and what steps they took prior to filing the FAC. *Id.* Accordingly, the Sanctions Reply argues that Defendant need not "conclusively establish the falsity of the Challenged Allegations," but need only demonstrate that Plaintiff's Counsel "lacked an objective good faith basis after a reasonable inquiry to include the Challenged Allegations in the FAC." *Id.* (citing *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 179 (C.D. Cal. 2002) (awarding sanctions where complaint does not meet the requirement of Rule 11 that "the allegations and other factual contentions have evidentiary support.")). The Sanctions Reply contends that, beyond claiming "that the Vint Declaration suffers from numerous 'deficiencies,' Plaintiff's Counsel did not lodge a single evidentiary objection, or present admissible, relevant evidence to the contrary." *Id.*

"Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Although the Sanctions Opposition argues that "Defendant's arguments for the inadequacy of Plaintiff's pre-filing investigation are deeply misguided," Plaintiff has not provided any evidence or explanation of any investigation that occurred prior to filing the FAC. With respect to Paragraph 13 of the FAC, the inclusion of an image of the form that is displayed on the landing page of the Website and the accompanying code containing the TikTok Cookie demonstrates that Plaintiff's Counsel did conduct some investigation into the factual basis for this allegation. *See* Dkt. 17 ¶ 13. Accordingly, it may be inferred that a pre-filing investigation occurred as to Paragraph 13.

Plaintiff's Counsel has not proffered any evidence to support the position that a similar inquiry was conducted with respect to the allegations in Paragraph 15 of the FAC that the Website shares "medical information related to minors" with TikTok. Paragraph 15 of the FAC alleges serious misconduct*, i.e.,* that a mental health provider shared sensitive personal, medical information of minors who visited the site. The FAC makes these allegations unequivocally, not upon information and belief. They are now in the public domain, which may cause harm to Defendant's business. Allegations must be supported by a reasonable basis in fact based on a reasonable and competent inquiry by counsel. Plaintiff's Counsel has not met this standard. Further, Defendant's Counsel complied with the safe harbor requirements of Rule 11 prior to filing the Sanctions Motion, giving Plaintiff sufficient time to amend or withdraw the allegations in Paragraph 15.

For the foregoing reasons, Defendant's request for sanctions pursuant to Rule 11 is **GRANTED**. A ruling on Defendant's request for an award of reasonable attorney's fees and costs, Dkt. 30 at 14–15, is **DEFERRED**, subject to a further process. On or before July 14, 2025, Defendant shall prepare and file an application for an award of attorney's fees pursuant to Fed. R. Civ. P. 11 that complies with the Initial Standing Order. *See* S.O., p. 17 (e). Plaintiff shall file any response on or before July 24, 2025. Based on a review of those filings, a determination will be made whether the application will be

scheduled for a hearing or taken under submission. The other requests are denied.

## V. Conclusion

For the reasons stated in this Order, the MTD is **GRANTED**, and the FAC is dismissed without prejudice, *i.e.*, with leave to amend. Plaintiff shall file any third amended complaint on or before July 14, 2025. Defendant's request for sanctions pursuant to Rule 11 is **GRANTED IN PART,** subject to further review of Defendant's forthcoming request for attorney's fees.

**IT IS SO ORDERED.**

___ : ___

Initials of Preparer DT