Robert Tauler, Esq. (SBN 241964)
robert@taulersmith.com
Matthew J. Smith, Esq. (SBN 240353)
matthew@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Courtney Mitchener*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY MITCHENER, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>TALKSPACE NETWORK LLC, a New York limited liability company; DOES 1 through 25, inclusive<br><br>Defendant. | Case No.: 2:24-cv-07067-JAK-BFM<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**VIOLATIONS OF CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)** |

SECOND AMENDED COMPLAINT

## JURISDICTION

1.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class.  Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen of a different State or subject of a foreign state.

2.     This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has purposefully directed its activities to the Central District of California by regularly tracking individuals in California through its website. Defendant's illegal conduct is directed at and harms California residents, including Plaintiff, and if not for Defendant's contact with the forum, Plaintiff would not have suffered harm.

3.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; (2) does substantial business within this District; (3) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## PARTIES

4.     Plaintiff Courtney Mitchener ("Plaintiff") is, and at all times relevant to the complaint has been, a citizen of California residing and located within the Central District of California.

5.     Defendant Talkspace Network LLC is a New York limited liability company ("Defendant") is a New York limited liability company that owns, operates, and/or controls www.talkspace.com.

6.     The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the

SECOND AMENDED COMPLAINT

Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

7.      Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## FACTUAL ALLEGATIONS

8.      Defendant is a health care provider offering therapy services. Defendant operates https://www.talkspace.com (the "Website"). Defendant has installed on its Website software created by TikTok in order to identify website visitors (the "TikTok Software").  On or about February 3, 2024, Plaintiff visited Defendant's Website. Plaintiff used both her cellphone and laptop to access the Website and was located in Los Angeles.  The TikTok Software was already installed when Plaintiff visited the Website.

9.      The TikTok Software acts via a process known as "fingerprinting." Put simply, the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans.

10.      Defendant facilitated the digital "fingerprinting" of his device and the assignment of unique, persistent tracking identifiers. The TikTok Software gathers personally identifiable data including device and browser information, geographic information, referral tracking, and url tracking by running code or "scripts" on the

SECOND AMENDED COMPLAINT

Website to send user details to TikTok. Information like this is automatically collected from everyone who visits the Website, including Plaintiff, and regardless of whether an individual has a TikTok account. That is the entire purpose of the TikTok Software.

11. The TikTok Software begins to collect information the moment any user lands on the Website. Thus, even though the Website has a "cookie banner" the information has already been sent to TikTok regarding the user's visit.

12. An image of the code can be seen here:



13. According to a leading data security firm, the TikTok Software "immediately link[s] to data harvesting platforms that pick off usernames and passwords, credit card and banking information and details about users' personal health." The pixel also collects "names, passwords and authentication codes" and "transfer the data to locations around the globe, including China and Russia", and does so "before users have a chance to accept cookies or otherwise grant consent."[1]

---

[1] See Aaron Katersky, TikTok Has Your Data Even If You've Never Used The App: Report, ABC News (last accessed October 2024). https://abcnews.go.com/Business/tiktok-data-app-report/story?id=97913249.

SECOND AMENDED COMPLAINT

14.    The Talkspace website instantly sends communications to TikTok whenever a user lands on the Website and every time a user clicks on a page.  In the example below, the right side of the image shows the various TikTok scripts being run by Defendant on the Website and the corresponding electronic impulses being sent from to the visitor's computer to TikTok to be added to the collection of user behavior and data. Because it happens automatically and instantly on a user's first visit, it is impossible for a user like Plaintiff to know in advance that the TikTok Software on Defendant's Website will track them or even exists.



15.    Through their installation of the TikTok Software, TalkSpace and TikTok are together able to identify the source of these communications (by "matching" them to other information TikTok has collected, to use its own terminology) so that they can de-anonymize Website visitors. This is particularly troubling given recent concerns that TikTok's data collection practices are a threat the United States.[2]

---

[2] https://www.defense.gov/News/News-Stories/Article/Article/3354874/leaders-say-tiktok-is-potential-cybersecurity-risk-to-us/

5

SECOND AMENDED COMPLAINT

16.    California Penal Code § 638.50(c). California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."    California Penal Code § 638.50(c).

17.    The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the website is collaborating with the Chinese government to obtain their phone number and other identifying information.

18.    The TikTok Software is "reasonably likely" to identify the source of incoming electronic impulses.  In fact, it is designed solely to meet this objective and is a part of TikTok's own explanation about the TikTok Software: https://ads.tiktok.com/help/article/using-cookies-with-tiktok-pixel?lang=en. Among the "Benefits" and "Key Concepts" TikTok itself identifies of using cookies with the TikTok Pixel are:

      a.    **Improve Ad Delivery and Decrease CPAs**: Identify and deliver ads to people who are more likely to take the desired action, increasing efficiency and reducing costs.

      b.    **Expand Your Reach**: Match your website visitors with people on TikTok, to expand audience sizes for solutions like web retargeting.

      c.    **Enhanced Matching Capabilities**:  Advanced Matching, combined with first- and third-party cookies, ensures the best possible matching, especially as third-party cookies face deprecation.

SECOND AMENDED COMPLAINT

d. **Third-Party Cookies:** Created and owned by TikTok via TikTok's server, third-party cookies extend beyond individual domains. They are used to recognize and match events across different websites and are enabled by default with the TikTok Pixel.

19.     When TikTok uses the phrase "matching" it means using the TikTok Software to identify individuals who visited Defendant's Website by connecting information collected about that visitor from that visit with other information collected by TikTok from other sources. One of the reasons for this "matching" is to reduce Defendant's costs to advertise to those individuals. TikTok's own sanitized description of the cookies used by the TikTok Software are to "measure and improve the performance of advertising campaigns and to personalize the customer experience (including ads) on TikTok."

20.     Defendant did not obtain Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.    Defendant is also not a "provider of electronic or wire communication service" as the term is used in Section 638.51 and therefore cannot assert an affirmative defense of consent under the statute.

21.     The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et. seq.*, imposes civil liability and provides for statutory damages for the installation of trap and trace software without a court order. *Id.* §§ 637.2, 638.51; *see Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) (holding that TikTok Software was properly alleged to be a trap and trace device because it communicates over the internet and the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication" and is not limited to telephone lines).

SECOND AMENDED COMPLAINT

22. Defendant did not obtain Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

## CLASS ALLEGATIONS

23. Plaintiff brings this action individually and on behalf of all others similarly situated in a class (the "Class") defined as follows:

**All persons within California whose identifying information was sent to TikTok as a result of visiting the Website.**

24. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be well into the thousands. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

25. COMMONALITY: Common questions of fact and law exist as to all Class Members, and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

    a. Whether Defendant installed the TikTok Software on the Website;

    b. Whether the TikTok Software is a trap and trace process as defined by law;

    c. Whether Plaintiff and Class Members are entitled to statutory damages;

    d. Whether Class Members are entitled to injunctive relief.

    e. Whether Class Members are entitled to disgorgement of data obtained unlawfully.

26. TYPICALITY: As a person who visited Defendant's Website and whose personal information was fingerprinted and de-anonymized by TikTok, Plaintiff is asserting claims that are typical of the Class.

SECOND AMENDED COMPLAINT

27.    ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

28.    SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

29.    Defendant's actions inflicted direct and tangible harm upon Plaintiff and the Class, which is concrete and not speculative. An individual's data constitutes a form of personal property, and Defendant effectively stole this property. The detailed digital profile that Defendant assembled possesses a quantifiable market value, with estimates ranging from $0.10 to $0.50 for a basic consumer profile and exceeding $5.00 for a B2B prospect interested in high-value professional services. Defendant misappropriated this valuable asset for its own commercial enrichment.

30.    Most importantly, Plaintiff and the Class were harmed because the information was used to fingerprint and identify the needle of an individual's visit from the haystack of all other anonymous internet traffic. Defendant and TikTok had no right to attempt to uncover and disclose anything about Plaintiff and the Class's anonymous visits to Defendant's Website. This information was not for sale.

## FIRST CAUSE OF ACTION

### Violations of Cal. Penal Code § 638.51

### The "California Trap and Trace Law"

31.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

SECOND AMENDED COMPLAINT

32. The California Trap and Trace Law provides that "a person may not install or use…a trap and trace device without first obtaining a court order…." California Penal Code § 638.51

33. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."  California Penal Code § 638.50(c).

34. Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is designed precisely to identify the source of the incoming electronic and wire communications to the Website.  Defendant did not obtain consent from Plaintiff or any of the class members before using trap and trace technology to identify users of its Website, and has violated Section 638.51.

35. CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. Cal. Penal Code § 637.2; *see also C2 Educ. Sys. Inc.*, 2024 WL 3561367.

36. If any intent (or scienter) is required under Section 638.51 in this civil case, Defendant acted with such intent. Defendant's intent can also be inferred from multiple different facts, including:

      a. The surveillance system on Defendant's Website is the product of intentional design, not accident or negligence. The technical sophistication required to orchestrate these near-simultaneous, pre-consent data transmissions is prima facie evidence of willfulness. This is a feature, not a bug.

      b. Defendant knew exactly what the TikTok Software did and how it worked when it installed it and over the years it continued to

SECOND AMENDED COMPLAINT

use it, and TikTok itself explains that one of the most important benefits of the TikTok Software is identifying individuals.

c. Defendant presumably could not have otherwise identified those individuals, otherwise it would not have needed to install or use the TikTok Software.

d. Defendant did not need the TikTok pixel to operate its Website or provide any functionality to the services it offered through its Website.

e. Defendant fingerprint and de-anonymized Website visitors for its own financial benefit.

f. Legally compliant alternatives are readily available and widely used. Responsible website operators obtain user consent before loading a single non-essential tracking script. Defendant chose not to. Defendant chose surveillance. Defendant chose profit over privacy. Defendant chose to violate the law.

g. Defendant's Website also has multiple pages demonstrating a specific focus on teens, meaning that this vulnerable group of people would be disproportionately impacted by the TikTok Software. Defendant must have known this when it installed and continued to use the TikTok Software.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

2. An order declaring Defendant's conduct violates CIPA;

3. An order of judgment in favor of Plaintiff and the Class against Defendant on the cause of action asserted herein;

SECOND AMENDED COMPLAINT

4.      An order enjoining Defendant's conduct as alleged herein and any other injunctive relief that the Court finds proper;

5.      Statutory damages pursuant to CIPA;

6.      Prejudgment interest;

7.      Reasonable attorneys' fees and costs; and

8.      All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: July 14, 2025                              TAULER SMITH LLP


                                        By:    */s/ Robert Tauler*
                                               Robert Tauler, Esq.
                                               *Attorneys for Plaintiff*
                                               *Courtney Mitchener*

SECOND AMENDED COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiff Courtney Mitchener hereby demands a trial by jury.


DATED: July 14, 2025                    TAULER SMITH LLP



                                        By:    */s/ Robert Tauler*
                                               Robert Tauler, Esq.
                                               *Attorneys for Plaintiff*
                                               *Courtney Mitchener*

SECOND AMENDED COMPLAINT