**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
Kamran B. Ahmadian (SBN 314566)
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859
*blukitsch@bakerlaw.com*
*kahmadian@bakerlaw.com*

*Attorneys for Defendant*
TALKSPACE, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

COURTNEY MITCHENER, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

TALKSPACE NETWORK LLC, a New York Limited Liability Company; and DOES 1 through 25, inclusive,

Defendant.

Case No.: 2:24-cv-07067-JAK-BFM

*[Hon. John A. Kronstadt]*

**DEFENDANT TALKSPACE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51); MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with Declaration of Kamran B. Ahmadian]*

| | |
|---|---|
| **Date:** | September 15, 2025 |
| **Time:** | 8:30 a.m. |
| **Crt. Rm.:** | 10C |

Action Filed: August 20, 2024

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on September 15, 2025 at 8:30 a.m., in Courtroom 10C of the above-entitled court, or as soon thereafter as the matter may be heard, Defendant Talkspace, Inc. (incorrectly named in the First Amended Complaint as Talkspace Network LLC) ("Defendant" or "Talkspace") will and hereby does move for an order dismissing and/or striking Plaintiff Courtney Mitchener's ("Plaintiff") Second Amended Class Action Complaint for Violations of California's Trap and Trace Law (Cal. Penal Code § 638.51) ("SAC") ("Motion"). This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that Plaintiff lacks Article III standing and otherwise fails to state a claim against Talkspace upon which relief can be granted. Talkspace further seeks the dismissal or striking of the SAC in its entirety as untimely, as well as certain improper and irrelevant allegations pursuant to Federal Rule of Civil Procedure 12(f).

Talkspace bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities and declarations, the pleadings, papers and records on file in this action, and such oral argument as may be presented at the time of the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 22, 2025. *See* Declaration of Kamran B. Ahmadian, Esq. ("Ahmadian Decl."), ¶ 3. Having exhausted all attempts at resolution, Talkspace has proceeded with the filing of this Motion.

Dated: July 29, 2025 **BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
Bethany G. Lukitsch
Kamran B. Ahmadian

*Attorneys for Defendant*
TALKSPACE, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

_Toc204691415

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

A. Factual Background. ........ 3

B. Procedural Background. ........ 3

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 6

A. The SAC Should be Stricken in Its Entirety Because It Is Untimely and Filed Without Leave of Court. ........ 6

B. Plaintiff Lacks Article III Standing. ........ 7

1. Plaintiff Has Not Alleged A Concrete Injury In Fact (Facial Challenge). ........ 9

2. Plaintiff Cannot Allege A Concrete Injury In Fact (Factual Challenge). ........ 11

C. The TikTok Cookie is Not an Illegal "Trap and Trace" Device Under Section 638.57 As a Matter of Law. ........ 13

1. The Statutory Framework Confirms that Section 638.51 Does Not Apply to The TikTok Cookie. ........ 14

2. The Legislative History of Section 638.51 Confirms That It Was Only Intended to Apply to Telephones. ........ 17

3. Plaintiff's Application of Section 638.51 to the TikTok Cookie Contravenes Public Policy. ........ 20

D. Plaintiff's Claim Fails Because Talkspace (and Plaintiff) Consented to The Use of The TikTok Cookie. ........ 21

E. Plaintiff Fails to Allege the Required Scienter. ........ 23

F. Plaintiff's Irrelevant and Inflammatory Allegations Should Be Stricken. .......... 24

V. CONCLUSION .......... 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6

*Aviles v. Liveramp, Inc.*,
2025 WL 487196 (Cal. Sup. Jan. 28, 2025) .......... 16

*Barragan v. Superior Court*,
148 Cal. App. 4th 1478 (2007) .......... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, Jr., J) .......... 8

*Capitol Records Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) .......... 21

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) .......... 5

*Columbia Pictures Indus. v. Bunnell*,
2007 WL 2080419 (C.D. Cal. May 29, 2007) (Chooljian, J.) .......... 20

*In re DoubleClick Inc. Privacy Litigation*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......... 22

*Eisenacher v. BMW of N. Am., LLC*,
2017 WL 1423702 (C.D. Cal. Apr. 20, 2017) .......... 7

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993) .......... 6, 24

*In re First T.D. & Inv., Inc.*,
253 F.3d 520 (9th Cir. 2001) .......... 15

*Florio v. Success Agency LLC*,
2017 WL 8897130 (S.D. Fla. Oct. 30, 2017) .......... 7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .................... 9

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .................... 16

*Hartley v. Urb. Outfitters, Inc.*,
2024 WL 3445004 (E.D. Pa. July 17, 2024) .................... 9

*Heiting v. FKA Distrib. Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) (Vera, J.) .................... 10, 12, 24

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) (Garnett, J.) .................... 23

*Hertz Corp. v. Friend*,
559 U.S. 77 (2010) .................... 13

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .................... 10

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) .................... 9

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) .................... 7

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) .................... 10

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .................... 10, 12

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .................... 5

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Sup. Mar. 13, 2024) .................... 16, 21

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .................... 8

*Lorillard v. Pons*,
434 U.S. 575 (1978) .................... 18


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*LVDV Holdings, LLC v. Shelton*,
2023 WL 3258437 (C.D. Cal. May 2, 2023) .......... 24

*Malibu Media, LLC v. Doe*,
2019 WL 2537671 (D. Conn. June 20, 2019) .......... 21

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 11

*Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*,
2022 WL 4126272 (N.D. Cal. Sept. 9, 2022) (White, J.) .......... 25

*McCarthy v. United States*,
850 F.2d 558 (9th Cir. 1988) .......... 5

*Mejia v. Reed*,
31 Cal. 4th 657 (2003) .......... 15

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 10

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) (Wu, J.) .......... 11

*Monster Energy Co. v. Vital Pharms., Inc.*,
2019 WL 2619666 (C.D. Cal. May 20, 2019) (Bernal, J.) .......... 24

*Neilson v. Union Bank of California, N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) (Morrow, J.) .......... 25

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) .......... 12

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) .......... 12

*Sparshott v. Feld Ent., Inc.*,
311 F.3d 425 (D.C. Cir. 2002) .......... 22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 7


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a Pen Reg. & Trap & Trace Device*, 890 F. Supp. 2d 747 (S.D. Tex. 2012) .......... 16, 17

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 8

*In re U.S.*, 441 F. Supp. 2d 816 (S.D. Tex. 2006) .......... 14

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) .......... 9, 20, 21

*United States v. Jenkins*, 2019 WL 1568154 (N.D. Ga. Apr. 11, 2019) .......... 20

*United States v. Ulbricht*, 858 F.3d 71 (2d Cir. 2017) .......... 20

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982) .......... 7

*Vazquez v. Select Portfolio Servicing*, 2014 WL 117390 (N.D. Cal. Jan. 13, 2014) .......... 7

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) (Staton, J.) .......... 20

*Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc.*, 2013 WL 12124386 (C.D. Cal. Mar. 25, 2013) (Anderson, J.) .......... 6

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) .......... 5

*Xu v. Reuters News & Media Inc.*, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .......... 9

*Yagman v. Allianz Ins.*, 2015 WL 5553460 (C.D. Cal. May 11, 2015) (Kronstadt, J.) .......... 6

**Statutes**

18 U.S.C. § 3127(3)(4) .......... 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Cal. Pen. Code § 20 .......... 23

Cal. Pen. Code § 638.51, *et seq.* .......... *passim*

Cal. Pen. Code § 638.52 *et seq.* .......... 14, 15

Cal. Pen. Code § 638.53 .......... 14, 15

Cal. Penal Code § 638.50(c) .......... 14, 19

Cal. Penal Code § 638.51 .......... *passim*

ECPA .......... 14

Pen Register Act .......... 18, 19

**Rules**

Federal Rule of Civil Procedure Rule 11 .......... 3, 4

Federal Rule of Civil Procedure Rule 12(b) .......... 5

Federal Rule of Civil Procedure 12(f) .......... 6

Federal Rule of Civil Procedure Rule 15 .......... 1, 6, 7

Federal Rule of Civil Procedure Rule 26(A)(2)(B) .......... 13

**Other Authorities**

Assembly Bill 929 .......... 18

Assembly Floor Bill Analysis, AB 929, 2015-2016 Regular Session (July 8, 2015) .......... 18, 19, 22

Senate Committee on Public Safety Bill Analysis, AB 929, 2015-2016 Regular Session (June 15, 2015) .......... 19

U.S. Const. art. III .......... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

For the third time, Plaintiff Courtney Mitchener ("Plaintiff") seeks to advance a single claim under the California Invasion of Privacy Act ("CIPA") against Defendant Talkspace, Inc. (incorrectly named as Talkspace Network LLC) ("Talkspace" or "Defendant") claiming that its use of the TikTok web beacon ("TikTok Cookie") on its website constitutes an illegal "trap and trace" device under Cal. Penal Code § 638.51. Just as the two pleadings that came before, Plaintiff's Second Amended Complaint ("SAC") is fundamentally flawed and should be dismissed (or stricken) with prejudice for several reasons.

*First*, after Plaintiff's First Amended Complaint ("FAC") was dismissed, Plaintiff was granted leave to file an amended complaint "on or before July 14, 2025." *See* Dkt No. 56. Plaintiff, however, filed the SAC on July 15, 2025—after the deadline had passed. *See* Dkt. No. 59. Given that Plaintiff no longer had leave of Court to file an amended pleading, the SAC should be stricken.

*Second*, Plaintiff has ***again failed*** to establish Article III standing. In dismissing the FAC, the Court noted that Plaintiff failed to allege any facts related to her visit to the Talkspace website or identify any "personal information" that was allegedly captured by the TikTok Cookie "that would violate a protectable privacy interest." *See* Dkt No. 56 at 9. Despite this clear guidance, other than adding the date and devices used, Plaintiff's SAC ***fails to provide any new relevant facts*** related to her visit to the Talkspace website—i.e., where she navigated, what pages she viewed, how she interacted with the "cookie banner," or ***what personal information was allegedly collected during her visit that would violate a protectable privacy interest***. As this Court already has held, without these facts Plaintiff cannot establish a cognizable injury. Talkspace also brings a factual challenge to Plaintiff's standing based on key facts within Plaintiff's knowledge that Plaintiff conveniently omits from the SAC which are dispositive to an Article III inquiry, and Talkspace's expert report

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

which directly rebuts allegations made in the SAC. For example, Plaintiff has admitted during discovery that she only visited the main home page (www.talkspace.com), did not input ***any*** personal information during her visit, and affirmatively accepted "all cookies" on Talkspace's cookie banner. In other words, no personal information was (or could have been) collected from Plaintiff by the TikTok Cookie, and even if there was, she consented to the placement of the TikTok Cookie when she interacted with the cookie banner. Because Plaintiff cannot establish a cognizable injury, the SAC should be dismissed *with prejudice*.

*Third*, the TikTok Cookie does not qualify as a "trap and trace device" under CIPA as a matter of law. Specifically, the alleged software clearly falls outside of CIPA's intended scope based on the statute's plain language, legislative history, and analogous case law. Indeed, a "trap and trace device" involves the recording of *telephone numbers* associated with incoming calls and does not extend to software embedded on a website. Moreover, accepting Plaintiff's strained reading of CIPA would have vast and harmful public policy implications. Simply put, the very function of the internet relies on the exchange of information from a web user's browser to website, and without it, the internet could not exist.

*Fourth*, even if the TikTok Cookie could be considered a trap and trace device, no violation of Section 638.51 exists because Talkspace, as the website owner and "user" of an "electronic communication service," gave its consent.

*Fifth*, Plaintiff has failed to allege any facts (nor can she) showing that Talkspace had the criminal intent necessary to establish a violation of CIPA—e.g., the intent to install an illegal device in violation of California law.

For these reasons, and as further explained below, this Court should grant Talkspace's Motion and dismiss Plaintiff's SAC with prejudice. If not dismissed in its entirety, the SAC still contains "immaterial, impertinent, or scandalous" allegations that are entirely unrelated to Plaintiff's lone CIPA cause of action and should be stricken.

## II. BACKGROUND

### A. Factual Background.

Talkspace is a leading online and mobile therapy company. Talkspace offers customers a more affordable and convenient alternative to in-person therapy sessions and has helped thousands of people across the country obtain mental health services. Talkspace maintains a public-facing website where users can explore and purchase customizable subscription plans and review articles and information regarding the company and its programs. Talkspace provides its clients with virtual appointment booking and counseling from licensed therapists through a separate online portal and mobile application not at issue in this dispute.

### B. Procedural Background.

On August 20, 2024, Plaintiff commenced this action by filing an initial Complaint against Talkspace asserting a single claim under CIPA, Cal. Penal Code § 638.51. *See* Dkt. No. 1. On November 4, 2024, Talkspace filed a Motion to Dismiss Plaintiff's Class Action Complaint. *See* Dkt. No. 12. Rather than respond, Plaintiff filed a FAC. *See* Dkt. No. 17.

On December 9, 2025, Talkspace filed a Motion to Dismiss and or Strike Plaintiff's FAC ("Motion to Dismiss the FAC") wherein Talkspace argued that the FAC should be dismissed pursuant for lack of Article III standing and for failure to state a claim upon which relief can be granted. *See* Dkt. No. 25. In large part, Talkspace argued that Plaintiff did not "allege any harm resulting from her use of the Talkspace website because Plaintiff does not allege any facts about her visit to the website—let alone that she was harmed during that visit."[1] *See id.* at 14. On June 27, 2025, the Court granted Talkspace's Motion to Dismiss the FAC and Talkspace's

[1] On March 7, 2025, Talkspace also filed a Motion for Sanctions Pursuant to Rule 11 ("Rule 11 Motion") based on unsupported factual allegations made by Plaintiff in the FAC that had "no basis in fact and were made without a reasonable and competent inquiry." Dkt No. 30.



BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

Rule 11 Motion. *See* Dkt. No. 56. In dismissing the FAC, the Court held that Plaintiff failed to establish Article III standing:

> The only specific, relevant allegation in the FAC is that "Plaintiff visited Defendant's website after the TikTok software was installed and within the limitations period established by statutes." Dkt. 17 ¶ 8. This conclusory allegation ***does not identify what personal information of Plaintiff's, if any, was captured by the TikTok Cookie***. Thus, Plaintiff ***has not sufficiently alleged the collection or disclosure of any of her personal information that would violate a protectable privacy interest***.

*Id.* at 9 (emph. added). The Court granted leave to amend but ordered that Plaintiff file an amended complaint "***on or before July 14, 2025***." *Id.* at 16 (emph. added). On July 15, 2025, ***after*** the Court's deadline had lapsed, Plaintiff filed her SAC. *See* Dkt. No. 59.

In the SAC, Plaintiff alleges that she visited the Talkspace website "[o]n or about February 3, 2024" using both her cell phone and laptop to access the website while in Los Angeles. *See* SAC, ¶ 8. Plaintiff generally alleges that Talkspace installed "software created by TikTok" (the "TikTok Cookie") on its website that allows TikTok to identify "otherwise anonymous visitors." SAC, ¶ 9. Plaintiff further alleges that the TikTok Cookie gathers and sends "device[,] browser[,] [and] geographic information" (i.e., IP addresses) as well as "referral tracking[] and url tracking" (i.e., information about a website that directed a visitor to Talkspace, if they clicked on a link to access the site) to TikTok so it can "identify website visitors." *Id.*, ¶¶ 9-10. Plaintiff alleges that this information is "automatically collected from everyone who visits the Website[.]" *Id.*, ¶ 10.

Although a banner is not required by California's comprehensive privacy statute, the CCPA, upon entering the website, visitors are presented with a "cookie banner," which stretches across the bottom of the screen and notifies the visitor that "cookies" are used to operate the website, and the visitor can opt-out of certain cookies if they prefer. *See e.g.,* SAC, ¶ 11. When a visitor clicks on the "Privacy Settings" button on the cookie banner or in the website footer, they can opt-out of





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the use of certain cookies, including the TikTok Cookie. *Id.* While Plaintiff mentions the cookie banner, Plaintiff does not allege in the SAC whether she interacted with the banner or if she purposefully bypassed it. *See generally*, *id.*

In her written discovery responses, Plaintiff admitted several key facts which were noticeably absent from her newly filed complaint: (1) Plaintiff visited the Talkspace website twice on February 3, 2024, once on Samsung Galaxy Z Flip5 phone and once on her Dell Latitude 7240 laptop; (2) During both visits, Plaintiff only visited the main home page (www.talkspace.com) and did not enter any personal information into the website; and (3) Plaintiff saw Talkspace's cookie banner and during one of those visits she ***affirmatively accepted "all cookies."*** *See* Declaration of Kamran B. Ahmadian ("Ahmadian Decl."), ¶ 5, Exh. A, Plaintiff's Responses and Objections to Defendant Talkspace, Inc.'s Special Interrogatories, Set One ("Plaintiff's Rogg Responses"), at 8:13-19; 9:10-15.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## III. LEGAL STANDARD

Under Rule 12(b)(1), a district court may properly dismiss an action for lack of subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). A challenge pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack to jurisdiction "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). In a factual challenge, the court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.

*See* Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*." *Id.* (emph. added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To that point, pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that would be otherwise applicable on a motion to dismiss. *Id.* at 679. Thus, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wazana Bros. Int'l, Inc. v. Int'l Laser Grp., Inc.*, 2013 WL 12124386, at *2 (C.D. Cal. Mar. 25, 2013) (Anderson, J.).

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ("The district court could properly grant the motion to strike for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case."); *Yagman v. Allianz Ins.*, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (Kronstadt, J.).

## IV. ARGUMENT

### A. The SAC Should be Stricken in Its Entirety Because It Is Untimely and Filed Without Leave of Court.

The SAC should be stricken because it was not filed in compliance with Fed.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

R. Civ. P. 15(a)(2). Here, the Court granted Plaintiff with leave to file an amended complaint so long as it was filed "***on or before July 14, 2025***." Dkt. No. 56. at 16 (emph. added). Plaintiff filed her SAC ***after*** this deadline—and she did so without seeking leave from the Court or obtaining consent from Talkspace. *See* Dkt. No. 59; *See* Ahmadian Decl., ¶ 4. Plaintiff's failure to adhere to Rule 15 warrants striking the SAC in its entirety. [2]

Courts routinely strike amended complaints where, as here, plaintiffs failed to obtain leave to amend or written consent of the adverse party. *See, e.g., Eisenacher v. BMW of N. Am., LLC*, 2017 WL 1423702, at *2 (C.D. Cal. Apr. 20, 2017) (granting motion to strike amended complaint filed after deadline and without first seeking permission); *Vazquez v. Select Portfolio Servicing*, 2014 WL 117390, at *4 (N.D. Cal. Jan. 13, 2014) (same); *see also Florio v. Success Agency LLC*, 2017 WL 8897130, at *6 (S.D. Fla. Oct. 30, 2017) (same); *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 608-09 (9th Cir. 1992) (finding no reason to deviate from approach of denying motion to amend complaint filed after the scheduling order cut-off date as untimely even if plaintiff's motion to amend complaint were treated as a motion to amend scheduling order).

Accordingly, because it was filed after the deadline established by the Court—and without leave—Plaintiff's SAC should be stricken in its entirety.

### B. <u>Plaintiff Lacks Article III Standing.</u>

The law is clear: "Those who do not possess standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475–76 (1982). Article III standing requires the plaintiff to have, among other things, "suffered an injury in

[2] This is not the first time that Plaintiff has ignored Court deadlines. For example, Plaintiff filed untimely declarations associated with an opposition (*see* Dkt. Nos. 34-36)and Plaintiff did not serve an expert report in support of class certification as was required by the Scheduling Order in effect at that time. Ahmadian Decl., ¶ 6. Meanwhile, Talkspace has adhered to every deadline set by the Court, even when stipulations to extend Court deadlines were pending. *See id.*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

fact[.]" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish injury-in-fact, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (int. quot. omitted). Concrete injuries can be "tangible" or "intangible." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Tangible injuries arise from "physical harms and monetary harms." *Id.* Intangible injuries require "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," like "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* at 425. The Supreme Court "has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* In sum, for purposes of Article III standing, "***an injury in law is not an injury in fact***." *Id.* (emph. added).

Accordingly, to establish Article III standing here, Plaintiff must "identify the specific personal information" that "implicates a protectable privacy interest" that was then intercepted by or improperly disclosed to a third party. *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *1 (C.D. Cal. Apr. 5, 2023) (Blumenfeld, Jr., J) (finding lack of Article III standing where "[p]laintiff does not identify any personal or sensitive information she disclosed on the website"); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ("Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact.").

Talkspace challenges Plaintiff's Article III standing *both* facially and factually. Not only does Plaintiff fail (yet again) to allege any harm arising out of her alleged interactions with Talkspace, but the ***facts*** relating to her visit to the Talkspace website confirm that no such injury occurred.

*1. Plaintiff Has Not Alleged A Concrete Injury In Fact (Facial Challenge).*

As this Court previously observed, to establish concrete harm, Plaintiff must identify the specific "personal information" allegedly captured by the TikTok Cookie that would implicate a protectable privacy interest. *See* Dkt. No. 56 at 9. Yet again, Plaintiff fails to make the requisite allegations. Not only does Plaintiff omit any concrete harm stemming from her use of the Talkspace website, but she also fails (yet again) to allege ***any specific facts*** about her visit—let alone facts suggesting she suffered harm during that visit. As outlined below in the factual challenge, this omission is purposeful because the facts relating to her visit conclusively establish that no harm occurred. Plaintiff only alleges the date of her visit (February 3, 2024), the devices she used, and a generalized assertion that the TikTok Cookie automatically collects "device and browser information, geographic information, referral tracking, and URL tracking." SAC ¶¶ 8, 10–11.

Because Plaintiff does not allege how she arrived at the site ("referral tracking") or any specific URL for a page visit ("URL tracking") the only plausible inference from these allegations is that, *at most*, Plaintiff's IP address and other general header information (device and browser type) were transmitted to Talkspace and collected by the TikTok Cookie. Courts have consistently held, however, that such voluntary exchanges of general device information are essential to website functionality and do not constitute an invasion of privacy. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in the … IP addresses of the websites they visit."); *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *5 (S.D.N.Y. Feb. 13, 2025) (collecting cases); *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *6 (S.D.N.Y. Feb. 18, 2025) (holding that the collection of an IP address would not be considered an intrusion that would be "highly offensive to a reasonable person."); *Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "user and device identifiers" could not



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

give rise to "a privacy injury").

Just as in her FAC, Plaintiff's remaining allegations are cast in hypothetical terms and conclusory language. Indeed, Plaintiff's general allegations about what the TikTok Cookie ***may be capable*** of collecting do not sufficiently establish what the TikTok Cookie ***actually collected*** from Plaintiff (if anything). *See e.g., Hartley v. Urb. Outfitters, Inc.*, 2024 WL 3445004, at *7 (E.D. Pa. July 17, 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."); *see also Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (Wu, J.) (holding that plaintiff did not sufficiently establish Article III standing based on substantially similar general allegations that do "not sufficiently explain what information of Plaintiff's was captured, only what information could be captured.").

In sum, despite the Court's earlier admonitions, Plaintiff has again failed to allege that any of *her personalized information* was collected. Courts, including this one, routinely dismiss such claims for lack of Article III standing. *See Vivint*, 2024 WL 5179916, at *4 ("As Plaintiff does not clearly allege what personalized information of hers was actually collected, she does not identify any harm to her privacy."); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) ("[T]he Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest."); *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (Vera, J.) ("[Plaintiff] fails to allege any basic facts from which the Court could infer a concrete injury, like when and how many times she visited the site, what information she provided, what information Defendant captured … or if she has any reason to believe that she was indeed de-anonymized."); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (dismissing for lack of standing where



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

plaintiff did "not allege that the Website collected *his* [] information[.]") (emph. in original); *Khamooshi v. Politico LLC*, 2025 WL 1408896, at *5 (N.D. Cal. May 13, 2025) ("Plaintiffs have not alleged the disclosure of information that implicates a legally protected privacy interest.").

Because Plaintiff has failed to allege a concrete privacy harm, she has not satisfied the injury-in-fact requirement for Article III standing. Accordingly, her § 638.51 claim must be dismissed. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction").

*2. Plaintiff Cannot Allege A Concrete Injury In Fact (Factual Challenge).*

Even if the Court rejects Talkspace's facial challenge to Plaintiff's Article III standing (it should not), there is ample evidence outside the pleadings that ***confirms*** Plaintiff cannot establish a concrete injury in fact based on her limited interactions with the Talkspace website. *See Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772, at *3 (C.D. Cal. Oct. 4, 2024) (Wu, J.) (the court may consider evidence outside the pleadings to determine whether it has subject matter jurisdiction).

As discussed above, despite these facts being in her control (and her counsel's knowledge) Plaintiff does not include *any* factual allegations in the SAC describing her visit to the Talkspace website—i.e., where she navigated, what pages she viewed, whether she affirmatively provided any information to Talkspace, whether she has a TikTok account, and how she interacted with the "cookie banner," etc. *See generally*, SAC. This is not because this information is outside the scope of Plaintiff's (or her counsel's) knowledge—Plaintiff knows exactly how she interacted with the Talkspace website. In her written discovery responses, which were served *over five weeks before* the filing of the SAC, Plaintiff admitted several key facts which were noticeably omitted from her new complaint. *See* Ahmadian Decl., ¶ 5, Exh. A, Plaintiff's Rogg Responses.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*First*, Plaintiff confirmed that when she visited the Talkspace website ***she only visited the main home page*** (www.talkspace.com). *See id.*, Plaintiff's Rogg Responses, at 9:10-15. Despite only visiting the home page, the SAC still includes exemplar screenshots purporting to show the TikTok Cookie "scripts" running on other portions of the Talkspace website that Plaintiff never visited. *See* SAC, ¶¶ 12, 14. As outlined below, given her admission, these screenshots are irrelevant, unnecessary, and should be stricken from the SAC. More importantly, the Talkspace home page does not ask nor collect ***any information*** from a website visitor—in fact, ***there is no place on the main page where Plaintiff could have input personal information that could have possibly been collected by the TikTok Cookie***. This limited interaction conclusively confirms that Plaintiff cannot (nor will ever be able to) allege the collection of her sensitive personal information by the TikTok Cookie. As discussed above, courts have held that this failure warrants dismissal. *See e.g., Heiting*, 2025 WL 736594, at *3; *Kishnani*, 2025 WL 1745726, at *4.

*Second*, even if Plaintiff could allege that personal or sensitive information was collected by the TikTok Cookie (which she cannot) Plaintiff has admitted that she consented to Talkspace's use of cookies on its website—to include the TikTok Cookie. Specifically, Plaintiff admitted that during her visit to the Talkspace home page she saw Talkspace's cookie banner and ***affirmatively accepted "all cookies."*** *See* Ahmadian Decl., ¶ 5, Exh. A, Plaintiff's Rogg Responses, 8:13-19. Not only does this refute any allegation that Plaintiff did not provide Talkspace with consent to use the TikTok Cookie (SAC, ¶¶ 17, 20, 22), but Plaintiff's affirmative consent defeats any claim that her privacy was violated under California law. *See Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (user consent is a defense under CIPA); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (user consent is a defense under privacy protections under the California Constitution as well as common-law tort claims for intrusion upon seclusion).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Lastly, Talkspace submitted an expert report for the purpose of opposing class certification that also rebuts many of Plaintiff's general allegations regarding how the TikTok Cookie operates on Talkspace's website. *See* Ahmadian Decl., ¶ 6, Exh. B, Rule 26(A)(2)(B) Expert Report of James Vint on Opposing Class Certification ("Vint Report").[3] Based on Mr. Vint's analysis, it is not possible to "objectively determine a real identity based on any data transmitted to TikTok." *Id.*, ¶ 48. And, contrary to Plaintiff's allegations, unless a visitor already has a TikTok cookie on its browser that is associated with their TikTok account, there is "no known way to de-anonymize any information that may have been sent to TikTok, let alone, identify an individual." *Id.*, ¶¶ 51-57. In other words, Plaintiff's vague and generalized allegations regarding TikTok's ability to identify all Talkspace website visitors through a "fingerprinting" process lack any basis in fact. *See e.g.*, SAC, ¶¶ 9-10, 15.

It is Plaintiff's burden of establishing her jurisdictional allegations (Article III injury in fact) by a preponderance of the evidence using "competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97, (2010). Given her admissions that rebut any claims of actual harm, as well as the competent testimony from Talkspace's expert, Plaintiff cannot meet this burden. Plaintiff's SAC must be dismissed with prejudice.

### C. <u>The TikTok Cookie is Not an Illegal "Trap and Trace" Device Under Section 638.57 As a Matter of Law.</u>

Not only has Plaintiff failed to establish standing (yet again), but the alleged TikTok Cookie at issue in the SAC does not constitute a trap and trace device as a matter of law. Plaintiff (and her counsel) advances a grossly expanded definition of a "trap and trace" device well beyond its intended use as an investigatory tool for law

[3] Pursuant to the Scheduling Order in effect *at the time*, the parties were required to serve expert reports related to class certification by June 30, 2025. *See* Dkt. No. 27. Although a stipulation to extend the discovery deadlines was pending, the Court had not yet ruled on it. *See* Dkt. No. 52. Accordingly, on June 30, 2025, Talkspace timely served Plaintiff with the expert report of Mr. Vint. *See* Ahmadian Decl., ¶ 6. Plaintiff did not serve any expert report in support of class certification. *Id.*



BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

enforcement by applying it to a popular internet technology. Plaintiff's application should be rejected for several reasons. *First*, the statutory framework of CIPA makes clear that Section 638.51 only applies to trap and trace devices that are used in ***telephonic*** surveillance. *Second*, the legislative history ***confirms*** that Section 638.51 was intended only to apply to telephone devices. And *third*, applying CIPA to website software would be contrary to public policy and common sense as it would essentially criminalize basic website functionality and overload the courts.

*1. The Statutory Framework Confirms that Section 638.51 Does Not Apply to The TikTok Cookie.*

Plaintiff claims that the TikTok Cookie constitutes an unlawful "trap and trace device" in violation of § 638.51. SAC, ¶¶ 31-35. Plaintiff is wrong. While CIPA generally and broadly defines a "trap and trace device" (Cal. Penal Code § 638.50(c)), the historical usage of trap and trace devices, and the cross-referenced provisions (§§ 638.52 and 638.53) makes clear that § 638.51 is limited to devices that can be attached to telephone lines by law enforcement. *See e.g., In re U.S.*, 441 F. Supp. 2d 816, 818 (S.D. Tex. 2006) ("In 1986, Congress enacted the ECPA to regulate the process under which law enforcement could install…trap and trace devices, ***which capture phone numbers of incoming calls***.") (emph. added); *see also* California Bill Analysis, A.B. 929 Assem. ("Bill Analysis, A.B. 929") (April 21, 2015); (pen registers and trap and trace devices "generally track incoming and outgoing telephone calls" and are " utilized by law enforcement to track which people in an investigation are communicating with one another and at what times").

Indeed, this is the only reasonable interpretation when the pen register provisions are read as a whole. For example, sections 638.52 and 638.53 require law enforcement to obtain a court order *before* they can use a trap and trace device. However, in order to procure a court order, ***law enforcement*** must specifically identify the ***telephone they are seeking to trap and trace***. *See e.g.*, Cal. Penal Code § 638.52(d)(1)-(3) (requiring that an order "authorizing or approving the installation





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and use of a pen register or a trap and trace device" shall specify, *inter alia,* the "identity, if known, of the person to whom is leased or in whose name is listed the ***telephone line*** to which the pen register or trap and trace device is to be attached" and the "***number*** and, if known, physical location of the ***telephone line*** to which the pen register or trap and trace device is to be attached[.]"; Cal. Pen. Code, § 638.52 (c) ("Information acquired solely pursuant to the authority for a pen register, or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the ***telephone number***.") (emph. added).

The numerous references to telephones or telephone numbers in Sections 638.52 and 638.53 demonstrate that a "pen register" and "trap and trace device" as used in Section 638.51 apply only to the interception of specific, targeted ***telephonic communications***, and not to IP addresses or other data, if any, captured by general website advertising technology.[4] To hold otherwise would lead to absurd results. In effect, a party could be held liable for using a trap and trace device without a court order when (because the technology used does not involve a telephone line) a court order could never be issued. That is the case here. A court order to use the TikTok Cookie as a "trap and trace" device could never be issued because compliance with Section 638.52 requires the identification of a "telephone line" to which the software could "attach." *See Barragan v. Superior Court*, 148 Cal. App. 4th 1478, 1484 (2007) (Under California law, courts should "not interpret statutes in a manner that results in absurd consequences that could not have been intended by the Legislature."). The only logical way to give effect to both Sections 638.51 and 638.52 is to limit the

[4] When a federal court interprets a California statute, California's rules of statutory construction and interpretation apply. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). California's "well-established rules of statutory construction" require that "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." *Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003). As such, Sections 638.51 and 638.52 "must be read together and so construed as to give effect … to all the provisions thereof." *Id.*

applicable trap and trace devices to those that could be used by law enforcement after obtaining a court order. Because the TikTok Cookie at issue here does not involve telephonic communications and cannot be connected to a telephone line, a court order could not be obtained, and thus, ***Section 638.51 does not apply***.

Recently, the Ninth Circuit acknowledged that CIPA applies only to communications conducted over telephone wires, and not the Internet. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (affirming summary judgment where no evidence the defendant "made an unauthorized connection through a telephone wire"). Although that decision examined eavesdropping claims under Section 631(a), Judge Bybee's concurrence makes clear that the entire statute was not intended to apply to Internet communications. *Id.* at *2 n.2 (Bybee, J., concurring) (discussing legislative history and preamble of statute). "If the California Legislature wanted to apply [CIPA] to the Internet, it could do so by amending … or adding to CIPA's statutory scheme" as it has done several times before. *Id.* at *3. Even prior to *Gutierrez*, courts involving similar allegations have limited a "trap and trace device" to its more traditional definition and refused to apply § 638.51 to website-use technologies like the TikTok Cookie. *See Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Sup. Mar. 13, 2024) (finding allegations related to "a 'device' without any actual specific reference to a mobile phone" fails to allege a violation of Section 638.51); *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *3 (Cal. Sup. Jan. 28, 2025) (website beacon was neither a pen register nor a trap-and-trace device); *In re the Application of the U.S. for an Ord. Authorizing the Installation & Use of a Pen Reg. & Trap & Trace Device*, 890 F. Supp. 2d 747 (S.D. Tex. 2012) ("*In re Trap & Trace Device*").

In *In re Trap & Trace Device*, the court considered whether a "stingray" device was either a pen register or a trap and trace device under the identical language of the federal Pen/Trap statute. 890 F. Supp. 2d at 748. There, the stingray was capable of "detect[ing] radio signals emitted from wireless telephone numbers in the vicinity of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the [subject of the investigation]" and "identify[ing] the telephones (e.g., by transmitting the telephone's serial number and phone number to the network for authentication)," in order to ultimately identify "the telephone number corresponding to the [Subject's] Telephone." *Id.* The court focused on the plain language of the Pen/Trap statute, including the requirements to issue an order authorizing a trap and trace or pen register device's use, and found that the stingray did not qualify as one such device. *Id.* Looking to Congress's "mandate" that "the telephone number or other such identifier" of the target of the device be included in the order, the court questioned how it could possibly include the target number if the device was being used to identify the target number in the first place. *Id.* at 751. In other words, unless a trap and trace device is attached or assigned to a specific telephone or account, as opposed to *all* devices within a general vicinity, it cannot be a trap and trace device within the Pen/Trap statute's purview.



The factual scenario here is even more attenuated than the stingray scenario, but the *In re Trap & Trace Device* logic still applies. Plaintiff does not allege that Talkspace attached a trap and trace device to *her* computer or phone. Instead, she claims that Talkspace "has installed *on [Talkspace's] website*" the TikTok Cookie. SAC, ¶ 8 (emph. added). Again, as discussed above, this theory cannot be squared with the plain language of CIPA and requires the dismissal of this case with prejudice.

*2. The Legislative History of Section 638.51 Confirms That It Was Only Intended to Apply to Telephones.*

To the extent the Court finds ambiguity and seeks to look beyond the plain language of the statute, the legislative history confirms that the Legislature never intended for Section 638.51 to apply to website technology like the TikTok Cookie.

In 2015, the Legislature enacted (and the Governor signed) Assembly Bill 929, which introduced various provisions to the California Penal Code regarding the "trap and trace device" language relevant to this case. *See* 2015 California Assembly Bill No. 929, California 2015–2016 Regular Session ("Assembly Bill 929"). This bill

was only enacted to resolve a conflict between state and federal law to confirm California law enforcement officer's ability to use these devices when conducting emergency telephonic surveillance. *See id.*, at 5. In 2015, Federal law authorized "states and local law enforcement officers to use pen registers and trap and trace devices by obtaining a court order first," but it did "not allow them to obtain an emergency order unless there [was] a state statute authorizing and creating a process for states and local law enforcement officers to do so." *Id.* Prior to § 638.51, California did not "have a state statute authorizing the use of pen registers or trap and trace devices." *Id.* Thus, local and state law enforcement agencies that utilized trap and trace devices on an emergency basis were technically in violation of federal law. Assembly Bill 929 sought to remedy that problem by explicitly authorizing state and local law enforcement agencies to seek an emergency order to use pen registers and trap and trace devices in telephone surveillance, if there is probable cause to believe that their use will lead to evidence of a crime." *Id.* at 1.

Notably, the Legislature adopted verbatim the definitions of "pen register" and "trap and trace device" from federal law (Pen Register Act). *See* 18 U.S.C. § 3127(3)(4). At the time these definitions were adopted, federal law limited these devices to those that were ***strictly related to telephone lines*** and ***telephonic surveillance***. *See e.g., Application of United States of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (Edwards, J.) ("*Digital Analyzer*").[5] Specifically, the *Digital Analyzer* recognized that even though the statutory definition does include an explicit limitation, the specific language and references to telephones throughout the Pen Register Act "cannot be assumed to be inadvertent." *Id.* ("Nonetheless, it appears from the

[5] This Court can (and must) presume that the Legislature was aware that these definitions were consistently interpreted to be limited to telephone lines, and did not reach any further, when they adopted the identical definitions this law. *See Lorillard v. Pons*, 434 U.S. 575, 581 (1978) (Legislature "can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.").



BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

construction of related sections of the statutes governing trap and trace devices ***that they include only devices that are attached to a telephone line***.") (emph. added).

The numerous explicit references to telephone communications within the law and legislative history itself confirms the Legislature meant to adopt the federal application and limit pen registers and trap and trace devices ***to equipment that could be used by law enforcement and placed on a telephonic device***. The Legislative Counsel's Digest, at the beginning of Assembly Bill 929, explains that the "bill would clarify that any location information obtained by a pen register or a trap and trace device is limited to the information that can be determined ***from the telephone number***." *Id.* (emph. added); *see also* Senate Committee on Public Safety Bill Analysis, AB 929, 2015-2016 Regular Session (June 15, 2015) ("…a pen register/trap and trace device *only records the numbers dialed to or from a* ***particular phone number***."); Assembly Floor Bill Analysis, AB 929, 2015-2016 Regular Session (July 8, 2015)) ("… a 'pen register' [] allows law enforcement officers to record all outgoing *numbers from a particular* ***telephone line***.) (emph. added).

Indeed, had the Legislature wanted to prohibit data collection from website software or cookies, it could have explicitly done so. Yet, nothing in the legislative history of Section 638.51 suggests it was meant to apply to website technologies—despite their widespread use at the time of enactment. Unlike older provisions of CIPA, Section 638.50 et seq. was enacted in 2015, when internet tracking tools were well known and widely deployed—thus, there is no need for the Court to evaluate whether they were intended to evolve and apply to future (unimaginable) technologies. *See, e.g., In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1227 (C.D. Cal. 2017) (Staton, J.).

In sum, the statute's plain language and legislative history all point to the same conclusion: Section 638.51 does not apply to the TikTok Cookie.

\\

\\

*3. Plaintiff's Application of Section 638.51 to the TikTok Cookie Contravenes Public Policy.*

Setting aside that Plaintiff has not alleged any facts to suggest that any information was collected from her during her visit to the website (which is dispositive), Plaintiff's strained interpretation of Section 638.51 would essentially break the internet by significantly disturbing how websites operate and criminalizing even basic general website functionality, or clutter the court systems with companies continuously seeking a court order every time a new IP address is created. For example, Plaintiff generally alleges that the TikTok Cookie "is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users[.]" SAC, ¶ 17. These allegations merely suggest that Talkspace obtains ***IP addresses*** from visitors, which identifies the approximate geographic location of the router to which the device is connected when they visited the website. However, website owners ***must*** "necessarily capture [a visitor's IP address] … to operate the website." *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2007) (Chooljian, J.); *see also United States v. Ulbricht*, 858 F.3d 71, 84 (2d Cir. 2017) (An IP address "indicates the online identity of the communicating device."); *United States v. Jenkins*, 2019 WL 1568154 at *4 (N.D. Ga. Apr. 11, 2019) ("IP address information merely shows the location at which a device accesses the internet during a specific session.").

Not only is it necessary that a user provide their device's IP address to view a given webpage, but such an offering is *voluntarily* made by the user to have their viewing request sent. *See Forrester*, 512 F.3d 500, 510 ("IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party's servers."). By virtue of this voluntary exchange, courts have routinely held that internet users ***have no expectation of privacy in their devices' IP address***. *See Ulbricht*, 858 F.3d at 96 ("[A] 'person has





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

no legitimate expectation of privacy in information he voluntarily turns over to third parties," including "IP addresses."); *Forrester*, 512 F.3d at 510 ("Internet users have no expectation of privacy in the … IP addresses of the websites they visit."); *Malibu Media, LLC v. Doe*, 2019 WL 2537671, at *3 (D. Conn. June 20, 2019) ("[T]here is no expectation of privacy in . . . an IP address.").

Accordingly, the mere collection of an IP address cannot be a violation of Section 638.51. Finding otherwise would open the door for *any* website owner to theoretically incur *criminal* liability anytime someone visited their website, making it logically and financially unsound to even operate a website. The reverberating effect that this decision would have on internet usage and the economy at large cannot be overstated. As one court aptly recognized, "the Internet could not function" if we criminalize the collection of IP addresses "because standard computer operations require recording IP addresses." *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009); *Hickory Farms*, 2024 WL 1698147, at *4 ("Such a broad-based interpretation would potentially disrupt a large swath of internet commerce without further refinement as the precise basis of liability, which the court declines to consider."). The Court should similarly reject Plaintiff's novel and improper extension of CIPA liability.

### D. Plaintiff's Claim Fails Because Talkspace (and Plaintiff) Consented to The Use of The TikTok Cookie.

Even *assuming arguendo* that the TikTok Cookie can constitute a trap and trace device (which it cannot), Plaintiff's claim would still fail because Section 638.51 includes an exception for the use of pen registers and trap and trace devices "if the ***consent of the user of that service*** has been obtained." Cal. Pen. Code § 638.51 (b)(5) (emph. added). Here, based on Plaintiff's own allegations, Talkspace (and not Plaintiff) is the "user" of the TikTok Cookie, an electronic service, and Talkspace has "consented" to its limited use on its Website. *See* SAC, ¶ 8

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

("Defendant has installed on its Website software created by TikTok in order to identify website visitors.").[6]

The statute's use of the singular "user" for Section 638.51's consent requirement is a notable and intentional departure from other provisions of CIPA (such as Section 631's prohibition on wiretapping), which require the consent of all parties. Because pen registers and trap and trace devices do not provide the "content of the messages" they are not subject to the same level of scrutiny as wiretaps. *See* Assembly Bill 929, California 2015-2016 Regular Session. Indeed, if it was a requirement to obtain the consent of *all* parties before installing a trap and trace device, then "it is hard to see how any caller ID system, even that used for emergency services, would be legal." *Sparshott v. Feld Ent., Inc.*, 311 F.3d 425, 432 (D.C. Cir. 2002) (interpreting an identical provision of federal law on which Section 638.51 was modeled). A caller ID system, after all, enables the recipient of an inbound communication to identify and record the identity of the initiating party. *See id*. Therefore, if statutes like Section 638.51 were interpreted (contrary to their text) to require the consent of all parties to any communication, then all users of caller ID would be subject to criminal liability—since such users do not first obtain consent from incoming callers before retrieving their identity through the caller ID system. *See id.*; *see also In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (finding that because website operators are the "users" of advertising cookies placed on their website—not the website visitors—a similar consent exception in the Electronic Communications Privacy Act ("ECPA") applied). The same reasoning applies to Section 638.51, warranting the same conclusion. The "user" consent exception under Section 638.51(b)(5) applies to Talkspace, and

[6] In opposition, Plaintiff cannot plausibly argue that Plaintiff (and not Talkspace) is the user because she provided her consent when she "[a]ccept[ed] all cookies"—which includes the TikTok Cookie—during her initial visit to the Talkspace Website. *See* Ahmadian Decl., ¶ 5, Exh. A, Plaintiff's Rogg Responses, 8:13-19.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff has expressly alleged that Talkspace consented to the use of the TikTok Cookie on its Website. Consequently, Plaintiff's claim fails.

**E. Plaintiff Fails to Allege the Required Scienter.**

Finally, because CIPA is a criminal statute, to establish liability, Plaintiff must establish the scienter element. *See* Cal. Penal Code § 20 ("In every crime or public offense there must exist a union, or joint operation of act and intent"). Even if the TikTok Cookie would qualify as a trap and trace device (it is not), to be liable under Section 638.51, Plaintiff must allege that Talkspace installed the TikTok Cookie with knowledge and intent collect information about Plaintiff using an illegal trap and trace device. *See e.g., Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (Garnett, J.) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation.").

Here, Plaintiff has not alleged (nor can she) facts that establish that Talkspace had any such intent or knowledge. Even accepting the SAC's allegations as true, ***it is TikTok and not Talkspace***, who is able to identify the source of a wire or electronic communication. *See* SAC, ¶ 9 ("The TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website ***and matches it with existing data TikTok has acquired*** and accumulated about hundreds of millions of Americans."); ¶ 11 ("Thus, even though the Website has a 'cookie banner' the information has already been ***sent to TikTok*** regarding the user's visit.") (emph. added). And, Plaintiff's newly added allegations aimed at establishing scienter are conclusory and insufficient. *See id.*, ¶ 36. None of these assertions remotely suggest that Talkspace knew—or should have known—that the TikTok Cookie was an illegal trap and trace device, or that it was installed with the intent to unlawfully collect Plaintiff's information. *See id.*

Thus, Plaintiff has not alleged any facts (nor can she) that *Talkspace* did any identifying or had any intent to do so in violation of a criminal statute. Plaintiff's





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

inability to allege that Talkspace possessed the requisite scienter is dispositive of her claim. *See e.g.*, *Heiting*, 2023 WL 9319049, at *6.

### F. <u>Plaintiff's Irrelevant and Inflammatory Allegations Should Be Stricken.</u>

Courts grant motions to strike where, as here, the SAC includes allegations that are immaterial, impertinent, or "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Monster Energy Co. v. Vital Pharms., Inc.*, 2019 WL 2619666, at *17 (C.D. Cal. May 20, 2019) (Bernal, J.) (cit. omitted). Matter is "immaterial" where it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy*, 984 F.2d at 1527 (int. cit. and quot. omitted). Similarly, "[i]mpertinent matter consists of statements that do not pertain, and are necessary, to the issues in question." *Id.* In other words, impertinent allegations are "neither responsive nor relevant to the issues involved in the action" and "could not be put in issue or given in evidence between the parties." *LVDV Holdings, LLC v. Shelton*, 2023 WL 3258437, at *7 (C.D. Cal. May 2, 2023) (Lew, S.J.) (cit. omitted).

The figures shown in paragraphs 12 and 14 of the SAC should be stricken because these screenshots were not taken by Plaintiff nor do they show pages on the website that Plaintiff has ever visited. SAC, ¶¶ 12, 14. In addition, Mr. Vint's report—which was served prior to Plaintiff's untimely filing of the SAC—establishes that the allegations regarding the functionality of the TikTok Cookie are factually incorrect. *See* Ahmadian Decl., ¶ 6, Exh. B, Vint Report. Specifically, Mr. Vint confirmed that personal information entered into the website, including name, date of birth, or medical information, was not sent to TikTok. *Id.*, ¶ 47. Mr. Vint also concluded that it is not possible to "objectively determine a real identity based on any data transmitted to TikTok." *Id.*, ¶ 48. And Mr. Vint confirmed that unless a visitor's browser is already associated with a TikTok account, there is "no known way to de-anonymize any information that may have been sent to TikTok, let alone, identify an

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

individual." *Id.*, ¶¶ 51-57. Thus, Plaintiff's conclusory allegations regarding TikTok's ability to identify Talkspace website visitors through a "fingerprinting" process lack any basis in fact and should be stricken. *See e.g.*, SAC, ¶¶ 9-10, 15.

Ultimately, these allegations are irrelevant, defamatory, highly prejudicial, and should be stricken from the FAC. *See Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, 2022 WL 4126272, at *2 (N.D. Cal. Sept. 9, 2022) (White, J.) (striking unrelated allegations of bad faith by an insurance company that "were not related to Plaintiff's current claim of unlawful repossession" as they would lead to confusion of the issues); *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1153 (C.D. Cal. 2003) (Morrow, J.) (striking allegations that only prejudice defendant "since they seek to associate it with practices that are not at issue in this case.").

Accordingly, to the extent the SAC is not dismissed in its entirety, paragraphs 9-10, 12, 14-15 should be stricken.

## V. CONCLUSION

For all of the foregoing reasons, Talkspace respectfully requests that the Court dismiss Plaintiff's SAC in its entirety with prejudice.

Dated: July 29, 2025

**BAKER & HOSTETLER LLP**

By: /s/ Kamran B. Ahmadian
Bethany G. Lukitsch
Kamran B. Ahmadian

*Attorneys for Defendant*
TALKSPACE, INC.

**L.R. 11-6.2. Certificate of Compliance**

The undersigned, counsel of record for Defendant Talkspace, Inc., hereby certifies that this brief does not exceed twenty-five (25) pages, which complies with this Court's Civil Standing Order § 9(d).

*/s/Kamran B. Ahmadian*
Kamran B. Ahmadian

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES