Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Courtney Mitchener*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

COURTNEY MITCHENER, individually and on behalf of all others similarly situated;

Plaintiff,

v.

TALKSPACE NETWORK LLC, a New York limited liability company; DOES 1 through 25, inclusive

Defendant.

Case No.: 2:24-cv-07067-JAK-BFM

**PLAINTIFF COURTNEY MITCHENER'S OPPOSITION TO DEFENDANT TALKSPACE NETWORK LLC'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing
Date: September 15, 2025
Time: 8:30 am
Courtroom: 10C

# TABLE OF CONTENTS

**I. BACKGROUND AND RELEVANT FACTUAL ALLEGATIONS .......... 6**

**II. LEGAL STANDARD ........ 8**

A. STANDARD FOR 12(B)(6) MOTION TO DISMISS. ........ 8

B. STANDARD FOR 12(F) MOTION TO STRIKE ........ 8

**III. ARGUMENT ........ 9**

A. DEFENDANT'S "MOTION TO STRIKE" IS FRIVOLOUS ........ 9

B. IN THIS CASE CONSENT IS FACTUALLY AND LEGALLY IRRELEVANT ........ 11

C. DEFENDANT'S MADE-UP SCIENTER STANDARD LACKS ANY BASIS IN LAW.. 13

D. DEFENDANT FAILS TO CITE OR DISCUSS THE RELEVANT STATUTORY TEXT . 14

E. DEFENDANT'S ADDITIONAL STATUTORY ARGUMENTS FAIL........ 16

*1. Defendant's Arguments about IP Addresses Have no Basis in the SAC .. 16*

*2. Defendant Inaccurately Describes the Recent Ninth Circuit's Decision in Gutierrez v. Converse Inc. ........ 17*

F. DEFENDANT SUFFERED NO PREJUDICE, INJURY, OR CONSEQUENCES FROM AND IS NOT ENTITLED TO TERMINATING SANCTIONS FOR A BRIEF DELAY ........ 18

G. PLAINTIFF HAS ALLEGED FACTS ESTABLISHING AN ARTICLE III INJURY....... 19

*1. Defendant's Factual Challenge Never Addresses Article III Standing.... 19*

*a. Capturing Personal Information Input By Plaintiff Cannot be part of a Claim Under § 638.51 ........ 20*

*b. Factual Disputes Over the SAC's Fingerprinting Allegations Must be Resolved in Summary Judgment ........ 21*

*2. Defendant's Facial Challenge Ignores the "Reasonably Likely" Standard 21*

*3. Defendant's Extraction of Personal Information Caused an Article III Injury ........ 22*

*4. Defendant and TikTok's Matching, Fingerprinting and De-Anonymization Caused an Article III Injury........ 24*

*5. Forcing Plaintiff to Share Information with TikTok Caused an Article III Injury ........ 28*

*6. Defendant Profiting by Stealing an Asset From Plaintiff Caused an Article III Injury........ 29*

*7. Defendant's Standing Analysis is Contrary to Ninth Circuit Precedent .. 29*

**IV. CONCLUSION ........ 30**

# TABLE OF AUTHORITIES

Cases

*Aviles v. Liveramp, Inc.*, 2025 WL 487196 .......... 14

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) .......... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 7

*Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) .......... 27

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016) .......... 7

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .......... 29

*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 7

*Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 14, 29

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 12

*D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 29

*E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018) .......... 28

*Eisenacher v. BMW of N. Am., LLC*, No. 217CV00984ODWJCX, 2017 WL 1423702 (C.D. Cal. Apr. 20, 2017) .......... 18

*Eurow & O'Reilly Corp. v. Superior Mfg. Grp., Inc.*, No. CV 14-6595-RSWL (VBKx), 2015 WL 1020116 (C.D. Cal. Mar. 6, 2015) .......... 8

*Florio v. Success Agency LLC*, No. 17-80557-CV, 2017 WL 8897130 (S.D. Fla. Oct. 30, 2017) .......... 18

*Frasco v. Flo Health*, Inc., No. 21-CV-00757-JD, 2025 WL 1433825 (N.D. Cal. May 19, 2025) .......... 25

*Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025*)* .......... 14

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. July 2023) .......... 14

*Gutierrez v. Converse Inc.*, 2025 WL 1895315 (9th Cir. July 9, 2025) .......... 16, 17

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 22

*Heiting v. FKA Distrib. Co.*, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 23

*Heiting v. Taro Pharms. USA*, Inc., 709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 12, 13

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 5, 21, 24, 28, 29

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............. 22

*In re: Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316 (3d Cir. 2019) ........................................................................................ 26

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023)....................... 25

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ........................................................................................................ 11

*Licea v. Cinmar*, LLC, 659 F. Supp. 3d 1096 (C.D. Cal. 2023)........................... 29

*Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Sup. Mar. 13, 2024)........ 14

*Lilley v. Charren*, 936 F. Supp. 708 (N.D. Cal. 1996) ........................................... 7

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021)............................ 29

*Mirmalek v. Los Angeles Times Communications LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709 ................................................................................................ 11

*Moody v. C2 Educ. Sys. Inc.*, 2024 WL 3561367 (C.D. Cal. July 25, 2024) ....11, 14

*Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017)................................. 26

*NetChoice, LLC v. Bonta*, 113 F.4th 1101 (9th Cir. 2024)................................... 27

*Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064 (N.D. Cal. 2016) ......................... 11

*Raffin v. Medicredit, Inc.*, No. CV154912GHKPJWX, 2016 WL 7743504 (C.D. Cal. Dec. 19, 2016)............................................................................................. 29

*Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824-JST, 2025 WL 2021802 (N.D. Cal. July 18, 2025)................................................................................ 14

*Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 65409 (C.D. Cal. Jan. 8, 2025) ............................................................................. 12

*Safe Air for Everyone*, 373 F.3d at 1039; *Flo Health*, 2025 WL 1433825 ............ 26

*Shah v. Fandom, Inc.*, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ................... 14

*Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017) .......................... 11

*Smith v. Maryland*, 442 U.S. 735 (1979)................................................................ 24

*Smith v. YETI Coolers, LLC*, No. 24-CV-01703-RFL, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) .................................................................................................. 12

*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)............................................................................. 12

*Tate v. VITAS Healthcare Corp.*, No. 2:24-CV-01327-DJC-CSK, 2025 WL 50447 (E.D. Cal. Jan. 8, 2025) ............................................................................... 12

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966 (9th Cir. 2019) ........ 11

*Vazquez v. Select Portfolio Servicing*, No. 13-CV-03789-JST, 2014 WL 117390 (N.D. Cal. Jan. 13, 2014) ........ 18

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) ........ 7

*Wooley v. Maynard*, 430 U.S. 705 (1977) ........ 27

*Xingen v. Inland Energy, Inc.*, No. SA CV19-01039 JAK (JEMx), 2020 WL 13211718 (C.D. Cal. Feb. 18, 2020) ........ 7

*Zarif v. Hwareh.com, Inc.*, No. 23-CV-0565-BAS-DEB, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........ 14

Rules

Fed. R. Civ. P. 12(f) ........ 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. BACKGROUND AND RELEVANT FACTUAL ALLEGATIONS

In its prior ruling the Court concluded that the FAC had not alleged facts establishing Plaintiff suffered an Article III injury. Order on MTD FAC at 8-9, dkt. 56. The opinion identified a number of other decisions the Court found relevant establishing Article III standing. *E.g.*, *id.* at 9 ("[A] right to privacy encompasses the individual's control of information concerning his or her person.") (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (cleaned up)); *see In re Facebook* at 599 ("A plaintiff adequately alleges harm to these privacy interests in the context of internet browsing by alleging tracking of 'browsing activities,' including 'an individual's likes, dislikes, interests, and habits over a significant amount of time."). But other less personalized information, like basic contact information, email address, or user names would not be sufficient to establish Article III standing. *Id.* The Court concluded that the FAC failed to establish Article III standing because it did not "identify what personal information of Plaintiff's, if any, was captured by the TikTok Cookie." *Id.* at 9. Plaintiff filed a Second Amended Complaint ("SAC") with detailed factual allegations specifically remediating the deficiencies identified by the Court as well as adding details other aspects of her claim including, for example:

- The date Plaintiff visited Defendant's website, which Defendant had repeatedly complained about not being provided while simultaneously refusing to ask for it in discovery. SAC ¶ 8.
- Plaintiff visited Defendant's website twice on that same day, once on her cellphone and again on her laptop. Both visits while she was located in Los Angeles, California. SAC ¶ 8.
- The timing of the TikTok Software and sequence of data transmissions. SAC ¶¶ 10, 15. It instantly sends data immediately after anyone visits the website and every time a user clicks on a page. "Because it happens automatically and

instantly on a user's first visit, it is impossible for a user like Plaintiff to know in advance that the TikTok Software on Defendant's Website will track them or even exists." SAC ¶ 14.

- This also means that consent banners or similar prompts asking about cookies are irrelevant to the TikTok Software unless the website owner chooses to, for example, only put it on pages that are accessed after someone has given knowing and informed consent which Defendant did not do because the "Talkspace website instantly sends communications to TikTok whenever a user lands on the Website and every time a user clicks on a page." SAC ¶ 14.
- The scope of the TikTok Software in terms of who it collects information about, which is everyone who visits regardless of whether they have a TikTok account. SAC ¶10.
- Detailed factual allegations directly from TikTok itself about what it says that the software does including its perceived purpose and benefits. SAC ¶ 9
- How TikTok engages in "matching" which is its term for "using the TikTok Software to identify individuals who visited Defendant's Website by connecting information collected about that visitor from that visit with other information collected by TikTok from other sources." SAC ¶ 19. This benefits companies who have installed the TikTok Software because "one of the reasons for this 'matching' is to reduce Defendant's costs to advertise to those individuals." SAC ¶ 19.
- Matching can only work if TikTok works with its partners like Talkspace to obtain enough information to collect enough information about the same individuals it had previously "matched" so that TikTok can de-anonymize them enough to retarget them in the future with appropriate ads. SAC ¶ 15.
- The value of the TikTok Software comes from being able to send specific ads to identifiable individuals, so "matching" only works if TikTok knows enough about individuals to be able to reliably send ads to matched individuals instead

of at random. TikTok itself describes feature of the software as being used to "measure and improve the performance of advertising campaigns and to personalize the customer experience (including ads) on TikTok." SAC ¶ 19.

## II. LEGAL STANDARD

### A. <u>Standard for 12(b)(6) Motion to Dismiss.</u>

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016).

### B. <u>Standard for 12(f) Motion to Strike</u>

District courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The analysis of a motion to strike begins with a determination of whether the material was "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010). "In reviewing a motion to strike, the challenged pleading must be read in the light most favorable to the non-moving party." *Xingen v. Inland Energy, Inc.*, No. SA CV19-01039 JAK (JEMx), 2020 WL 13211718, at *4 (C.D. Cal. Feb. 18, 2020); *see also Lilley v. Charren*, 936 F. Supp. 708, 713 (N.D. Cal. 1996) ("A motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation.").

## III. ARGUMENT

### A. Defendant's "Motion to Strike" is Frivolous

Defendant brings a frivolous motion to strike two sets of allegations in the SAC, the first set of allegations consist of screenshots taken of Defendant's own website that is at issue in this case, and the second set of allegations are those related to the fingerprinting and de-anonymization of visitors to its Website because Defendant says those allegations are not true because it has the report of an expert it paid to say that as part of its expert discovery in this case. The Court observed in its prior order that "a motion to strike is usually a waste of time and money without such a showing" and Defendant's Motion to Strike provides a perfect example. Order on MTD FAC at 6 (quoting Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Proc. Before Trial § 9:376 (The Rutter Group 2013)). Defendant never raised or identified these allegations as part of the required meet and confer process on its Motion to Strike under Local Rule 7-3 and now for the first time says these allegations are all "irrelevant, defamatory, highly prejudicial," without any meaningful explanation besides asserting that some of the allegations just aren't true. Defendant couldn't have thought that it could use Rule 12(f) to strike allegations because it disputes their accuracy. The Court's prior order on Defendant's own motion to strike in this very case even explained "**[t]he basis for a motion to strike must appear on the face of the challenged pleading**. Order on MTD FAC at 10 (citing *Eurow & O'Reilly Corp. v. Superior Mfg. Grp., Inc.*, No. CV 14-6595-RSWL (VBKx), 2015 WL 1020116, at *2 (C.D. Cal. Mar. 6, 2015)) (emphasis added).

It is impossible for Defendant to honestly assert that the allegations it seeks to strike are irrelevant, particularly those it *disputes with expert testimony*. Using expert discovery is self-evident proof that the allegations are relevant, and Defendant seems to agree because it later omits relevance and instead argues those allegations "lack any basis in fact and should be stricken." Mot. at 25. Moreover, the SAC's allegations regarding fingerprinting and how TikTok uses the extracted data are

unquestionably relevant because they are one way to prove that the illegally collected information is "reasonably likely" to identify the source of the communication which is required under § 638.50(c).

The other set of allegations Defendant seeks to strike are screenshots of Defendant's own website. Defendant's purported basis for seeking to strike them is "because these screenshots were not taken by Plaintiff nor do they show pages on the website that Plaintiff has ever visited." Mot. at 24. If Defendant had raised this during the Local Rule 7-3 meet and confer the response would have been: So what? The SAC never says she took them or personally visited that page, she didn't need to, and Defendant makes no attempt to explain its position or *why Defendant seeks to strike screenshots of its own website*. The first screenshot demonstrates that the offending code runs on any device that visits Defendant's website and shows that "[i]nformation like this is automatically collected from everyone who visits the Website, including Plaintiff, and regardless of whether an individual has a TikTok account." SAC ¶ 11. The second screenshot shows the various TikTok software scripts Defendant's website is running on the devices of visitors as well as the corresponding electronic impulses the TikTok software transmits from a visitor's device directly to TikTok to be added to the collection of user behavior and data." SAC ¶ 14.

Defendant ignored the rules of civil procedure and the Court's prior order to file a meritless Motion to Strike for a reason and that reason must be improper because otherwise there's no reason for a Motion to Strike screenshots of your own website and purportedly incorrect allegations. One such reason is to conjure up ways to file an irrelevant expert report to falsely accuse Plaintiff of violating the Court's Scheduling Order by not serving an expert report not once, but twice. Ahmadian Decl. ¶ 6; Mot. at 7 n.2. Defendant had no legitimate reason to talk about expert reports in its Motion to Dismiss so many times, particularly because it only cites it two times, once in its Motion to Strike, and again in its Article III "factual

challenge," when it is entirely irrelevant both times. Defendant was clearly looking for opportunities bring it up regardless of what it's allowed to do on a motion to dismiss. Defendant even brags about how it complied with deadlines even though the parties had a pending joint stipulation requesting an extension, twice, although it's not clear why. Mot. at 7 n.2, 13 n.3. It's unclear why Defendant has chosen to air irrelevant and dirty laundry from in its glass house, but it certainly isn't because of the strength of its surrounding legal arguments in its Motion.

**B. <u>In this Case Consent is Factually and Legally Irrelevant</u>**

Defendant argues that it cannot be held liable for violating Plaintiff's privacy because Plaintiff's discovery responses purportedly show she consented to its violation of her privacy, but the cited discovery responses are irrelevant because legally Defendant is not entitled to assert the statutory consent defense in § 638.51(b)(5), the consent it identifies was factually too late, and none of its evidence or arguments are cognizable or sufficient on a Motion to Dismiss where Defendant introduces the evidence because it is relevant to its factual Article III standing challenge but then abandons that argument.

First, consent is categorically unavailable to Defendant under the plain terms of the statutory affirmative defense of consent in § 638.51(b)(5). Under § 638.51(b) a "provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes" which includes under § 638.51(b)(5) "[i]f the consent of the user of that service has been obtained." But there is simply no basis to conclude that Defendant is a "provider" of an "electronic communication service" within the meaning of § 638.51(b), much less Defendant simultaneously also being the "user of the service" who can consent to the provider's trap and trace device under § 638.51(b)(5). The SAC also clearly alleges that Plaintiff was the user and that Plaintiff is the only one who can consent to violations of her privacy. SAC ¶ 20. Defendant states "Plaintiff's affirmative consent defeats any claim that her privacy was violated under California law" but that holding cannot

be found in either of the cases it cites, neither of which even involve consent under § 638.51(b)(5) to a trap and trace device. Mot. at 12 (citing *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) and *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017). It would make no sense for a privacy-protection statute to allow Defendant to avoid liability by simply consenting to its own invasion of Plaintiff's privacy. *See Moody*, 2024 WL 3561367, at *4 (rejecting argument at the motion to dismiss stage that website operators are also the website users the trap and trace law was designed to protect).

Second, Defendant identifies no cognizable facts or relevant allegations that might satisfy its burden of proving its defense in its Motion, much less how it can do so from allegations in the SAC. "Ordinarily, affirmative defenses . . . may not be raised on a motion to dismiss." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) ("dismissal based on an affirmative defense is permitted when the complaint establishes the defense."). *Id.* 972-73 (cleaned up). Defendant instead submits and tries to use discovery responses in a Motion to Dismiss under Rule 12(b)(6) without any plausible or good faith basis.

Third, Defendant also cannot show as a factual matter it ever received valid consent. This is because Defendant's trap and trace device violated Plaintiff's privacy the instant she landed on the website, and the Ninth Circuit's logic in concluding that § 631(a) does not permit retroactive consent is equally applicable to § 638.51. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022); *see also* SAC ¶ 14 ("The Talkspace website instantly sends communications to TikTok whenever a user lands on the Website.").

As Judge Bryer succinctly explained, "Defendant argues that Section 638.51(b)(1) and/or Section 638.51(b)(5) preclude Plaintiff from asserting her claim. Neither exception applies." *Mirmalek v. Los Angeles Times Communications LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709 at *5; *see also Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 65409, at *6 (C.D.

Cal. Jan. 8, 2025) (concluding website operating could not provide consent to a trap and trace device it installed on other people's devices to track them).

**C. Defendant's Made-up Scienter Standard Lacks Any Basis in Law**

Defendant's scienter argument is based on a standard for mental states and pleadings that are entirely of Defendant's own creation and directly contrary to the plain terms of Rule 9(b). Defendant seeks to impose as a pleading requirement that "Plaintiff must allege that Talkspace installed the TikTok Cookie with knowledge and intent collect information [sic] about Plaintiff using an illegal trap and trace device." Mot. at 23 (citing to *Heiting v. Taro Pharms. USA*, Inc., 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (Garnett, J.)). But Defendant never explains how that squares with the plain text of Rule 9(b) stating "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Defendant's briefing also still makes no attempt to address any of the deficiencies in its reliance on *Taro*, including: (1) *Taro* addressed the specific mental state required by the fourth clause of Section 631(a) imposing liability on anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" violations in the prior three clauses, and *Taro* adopted California's civil common law standard for aiding and abetting liability which many courts have rejected[1]; (2) Defendant does not even apply *Taro*'s standard and makes up its own; (3) the cited *Taro* decision gave leave to amend and Defendant neglects to mention the court ultimately concluded the second amended complaint stated a valid claim for relief that lacks any of the allegations Defendant said the court required. *Taro*,

---

[1] *E.g.*, *Tate v. VITAS Healthcare Corp.*, No. 2:24-CV-01327-DJC-CSK, 2025 WL 50447, at *7 (E.D. Cal. Jan. 8, 2025) ("It does not require that a party aid and abet."); *see also Smith v. YETI Coolers, LLC*, No. 24-CV-01703-RFL, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (citation omitted) (concluding the aiding and abetting standard cannot apply just because § 631(a) has the word aid in it); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-CV-00667-JST, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024) ("The statute as worded does not include an intent standard.").

2024 WL 3738055, at *1 (C.D. Cal. July 31, 2024).

**D. Defendant Fails to Cite or Discuss the Relevant Statutory Text**

Notably, despite walking the Court through countless pages of briefing on § 638.51's statutory history and drafts of bills, entirely unrelated provisions regarding court orders, and discussions of an older version of the equivalent federal law, Defendant spends shockingly little time addressing any of the relevant statutory sections and never once cites to or discusses the statutory language which courts have found clear, unambiguous, and directly contrary to Defendant's preferred interpretation. Defendant instead raises a hodgepodge of largely unrelated cases and arguments, all of which are either entirely irrelevant, have already been roundly rejected by the courts, or simply ignore the relevant authorities.

Plaintiff asserts that Defendant violated California's Trap and Trace Law. California Penal Code § 638.51 provides, in pertinent part, as follows: "(a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." Thus, to state a claim under § 638.51, a plaintiff must allege, at most, that a defendant installed and used a pen register or trap and trace device without first obtaining a court order. California law defines a "trap and trace device" as:

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information ["DRAS"] reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

*Id.* § 638.50(c). And § 638.50(a) instructs that the terms "'Wire communication' and 'electronic communication' have the meanings set forth in subdivision (a) of Section 629.51" where the definition for "electronic communication" in § 629.51(a)(2) is: "Electronic communication" means "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio,

electromagnetic, photoelectric, or photo-optical system." There is simply no way to read the expansive language of the statutory definition of trap and trace devices and conclude that the California Legislature meant to cover telephone communications and nothing else.

Defendant's arguments have no basis in any of the statutory language discussed above and have faced seemingly universal rejection."[2] The chorus of opinions rejecting Defendant's exact arguments was overwhelming enough for one court to conclude that "Defendant's contention is not well-taken." *Zarif v. Hwareh.com, Inc.*, No. 23-CV-0565-BAS-DEB, 2025 WL 486317, at *12 (S.D. Cal. Feb. 13, 2025). Defendant says that courts have "limited a trap and trace device to its more traditional definition and refused to apply § 638.51 to website-use technologies like the TikTok Cookie" but Defendant can only find two decisions to cite applying § 638.51 and neither supports Defendant because in both cases the court held the opposite. Mot. at 16. In *Aviles v. Liveramp, Inc*, the court noted that the plaintiff argued the issue at length, "[b]ut Defendant does not argue that software cannot be a pen register or trap and trace device." 2025 WL 487196, at *3 (Cal. Sup. Jan. 28, 2025). And in *Licea v. Hickory Farms LLC* the court agreed that software on the internet could be equivalent to a pen register because of the plaintiff's conclusive pleading but found that only collecting IP addresses was insufficient. 2024 WL 1698147, at *4 (Cal. Sup. Mar. 13, 2024).

In short, Penal Code § 638.51 unambiguously applies to internet communications the SAC properly states a claim under § 638.51.

[2] *E.g.*, *Shah v. Fandom, Inc.*, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024); *Moody v. C2 Educ. Sys. Inc.*, 2024 WL 3561367 (C.D. Cal. July 25, 2024); *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *11 (N.D. Cal. July 14, 2025); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. July 2023); *Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824-JST, 2025 WL 2021802, at *11 (N.D. Cal. July 18, 2025).

### E. Defendant's Additional Statutory Arguments Fail

Defendant makes an additional hodgepodge of statutory arguments in passing but only two of them merit any meaningful explanation and are discussed below. Defendant devotes considerable space to trying to find any plausible support for its arguments based on the language in Sections 638.52 and 638.53 relating to court orders as well as the statute's legislative history, but the support it looks for does not exist.

#### ***1. Defendant's Arguments about IP Addresses Have no Basis in the SAC***

Defendant argues that it would violate public policy and break the internet to interpret § 638.51 as applying to the collection of IP addresses and so "the mere collection of an IP address cannot be a violation of Section 638.51," but Plaintiff's claim is not based on the mere collection of IP addresses. Mot. at 20-21. But Plaintiff frankly has no idea why Defendant again devotes pages to IP addresses and cases about IP addresses and making it impossible to operate a website and shut down the global economy. IP addresses aren't even mentioned once in the SAC.

Plaintiff is confident that Defendant is misunderstanding her claim and that the SAC cannot reasonably be read that way for two reasons. The first reason is that the SAC identifies many other types of information that Defendant caused to be collected that are part of Plaintiff's claim that Defendant never mentions in its motion. *E.g.*, SAC ¶¶ 9-10, 13-15, 18-19, 34. The second reason is that **the SAC never once uses the term IP address**. If all Talkspace did was collect an IP addresses Plaintiff wouldn't be bringing a claim against it for illegally using a trap and trace device, and Defendant doesn't even find the space to explain how "the mere collection of an IP address" could ever be "reasonably likely to identify the source of a wire or electronic communication." Section § 638.50(c). There are simply no allegations in the SAC Defendant could use to conclude that collecting an IP address alone might be enough information to be reasonably likely to identify an

individual. Defendant quotes from allegations in SAC ¶ 17 which "merely suggest that Talkspace obtains IP addresses from visitors," Mot. at 20, but the language it quotes *cannot possibly suggest that* because it comes directly from the definition of a trap and trace device in Section § 638.50(c).[3]

### ***2. Defendant Inaccurately Describes the Recent Ninth Circuit's Decision in* Gutierrez v. Converse Inc.**

Defendant's final statutory arguments are based on three clearly erroneous representations it makes about the Ninth Circuit's recent unpublished opinion in *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025). The first is that "the Ninth Circuit acknowledged that CIPA applies only to communications conducted over telephone wires, and not the Internet." Mot. at 16. Defendant misrepresents the decision as addressing the scope of "CIPA" generally when it was instead based on the lack of evidence and specific language in § 631(a) that is absent from § 638.51. *Id.* at 1 ("*The record is devoid of evidence* . . . .").

Next, Defendant incorrectly states that "Judge Bybee's concurrence makes clear that *the entire statute was not intended to apply to Internet communications.* [*Gutierrez*], at *2 n.2 (Bybee, J., concurring)) (discussing legislative history and preamble of statute)." Mot. at 16 (emphasis added). But there is nothing in the concurrence supporting this and even the footnote cited by Defendant was limited to § 631(a) and not about "entire statute." *Id.* ("[f]or what it is worth, CIPA's legislative history suggests that §631(a) only criminalizes eavesdropping or wiretapping on telephone conversations.") Judge Bybee is clearly skeptical about the use of legislative history in general, so it is particularly ironic that Defendant says his

[3] *Compare* SAC ¶ 17 ("The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users") *with* Penal Code § 638.50(c) ("Trap and trace device" means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.").

discussion about the meaning of § 631(a) based the legislative history from the statute's enactment in 1967 "makes clear" that in almost half a century the legislature will intend that § 638.51 to not apply to the internet.

Defendant closes out its analysis of *Gutierrez* with a very creatively edited quote from the concurrence that Defendant presents in its brief as:

> If the California Legislature wanted to apply [CIPA] to the Internet, it could do so by amending … or adding to CIPA's statutory scheme[].

Mot. at 16 (quoting *Gutierrez*, 2025 WL 1895315 at *3). Unfortunately for Defendant's argument, what Judge Bybee actually wrote was:

> If the California legislature wanted to apply **§ 631(a)** to the internet, it could do so by **amending that provision** or adding to CIPA's statutory scheme.

*Id.* (alterations emphasized). Defendant cannot justify using brackets and ellipses to rewrite judicial opinions to say something more helpful for its own arguments. Defendant goes so far as to pat itself on its back in its own brief for adhering to deadlines. Mot. at 7 n.2. But it's hard to see how judicial integrity is better served by a timely filed brief drafted by a half dozen or more lawyers that has so many citations, quotations, and arguments of questionable accuracy when compared one that takes a few extra minutes for the sake of ensuring the quotes in the brief accurately represent the quoted language.

### F. <u>Defendant Suffered No Prejudice, Injury, or Consequences from and is not Entitled to Terminating Sanctions for a Brief Delay</u>

The SAC was apparently filed 26 minutes late, but Defendant clearly spent far, far longer than that drafting its demand for terminating sanctions over those few minutes, despite the absence of consequence, prejudice, or anything of substance. None of Defendant's cases are remotely similar factual situations, as emphasized by

the bolded language.[4] Most cannot afford to spend nearly as many hours on any case as Defendant has on this case, such as the 119 attorney hours Defendant seeks to be directly paid on its Rule 11 motion when the combined motion and reply briefing, including duplicative sections came out to roughly 20 pages. And this brief, just like that one, again failed to even correctly describe the correct standard for the *terminating sanctions* it seeks. If Defendant can't even be bothered to cite to the correct standard for the relief it seeks then it clearly isn't entitled to it.

### G. Plaintiff has Alleged Facts Establishing an Article III Injury

The SAC added many factual details to explain what exactly happened each time Plaintiff visited Defendant's website and establish four distinct types of privacy violations which are all independently cognizable Article III injuries. Defendant purports to bring two distinct Article III challenges, a facial challenge based on the sufficiency of the allegations in the SAC, and a factual challenge based on evidence it submits disproving essential an essential jurisdictional fact. Plaintiff will address both of Defendant's arguments and then go through the various Article III injuries plausibly alleged in the SAC.

#### *1. Defendant's Factual Challenge Never Addresses Article III Standing*

Defendant said it will raise a factual challenge to Plaintiff's Article III standing but that was false. Defendant instead submitted facts and evidence on three topics unrelated to Article III standing and now asks the Court for what would be, in

[4] *Vazquez v. Select Portfolio Servicing*, No. 13-CV-03789-JST, 2014 WL 117390, at *4 (N.D. Cal. Jan. 13, 2014) ("Plaintiff filed his Amended Complaint more than **twenty-one days** after Defendants filed their motions to dismiss, without seeking leave of court."). *Eisenacher v. BMW of N. Am., LLC*, No. 217CV00984ODWJCX, 2017 WL 1423702, at *3 (C.D. Cal. Apr. 20, 2017) ("there is no support for the idea that a plaintiff automatically has **21 days** after the date of removal in which to file an amended pleading."); *Florio v. Success Agency LLC*, No. 17-80557-CV, 2017 WL 8897130, at *7 (S.D. Fla. Oct. 30, 2017) ("Plaintiff did not file either of its Amended Complaints within 21 days of the Motion to Quash, by **September 18**, 2017. Plaintiff filed her first Amended Complaint on **October 3 without leave of court** under Rule 15(a)(2).").

effect, a decision on the merits and grant judgment in its favor. Defendant is not entitled to just skip the messy bits of litigation by simply ignoring all the rules, and even on the merits Defendant's arguments fail. One of those topics is consent which has already been addressed above. The other two addressed below.

*a.* ***<u>Capturing Personal Information Input By Plaintiff Cannot be part of a Claim Under § 638.51</u>***

Defendant's first factual challenge is based on a single fact which is that Plaintiff only visited its main home page www.talkspace.com. Mot. at 12. Defendant says that only visiting the home page means Plaintiff never had the opportunity to input personal information that the TikTok software could have collected, and the absence of that "conclusively confirms" that Defendant prevails on the merits of the entire case. Mot. at 12:7-12. But the only evidence Defendant provides is a discovery response from Plaintiff stating she only went to Defendant's main web page twice on the same day. All other facts Defendant relies on were never disclosed during discovery and their only source is Defendant's brief which does not constitute evidence. Even if any of the facts found in Defendant's brief were true and properly before the Court, Defendant does not explain the significance of an opportunity to capture "input personal information," how it connects to Plaintiff's Article III standing, or why it is dispositive, particularly when it is irrelevant to Plaintiff's § 638.51 claim because it is the "contents of a communication" excluded from the definition of trap and trace devices under § 638.51(c).[5]

---

[5] Defendant's factual concession also shows that its Rule 11 Motion was based on specious and misleading factual assertions. Here Defendant specifies that it is Talkspace's main page that "does not collect any information" from visitors and lacks a place "where Plaintiff could have input personal information that could have possibly been collected by the TikTok Cookie." Mot. at 12. The unmistakable concession is that **other pages besides Talkspace's main page** do allow for inputting personal information that could be collected by the TikTok Cookie, which is why Defendant required evidence that Plaintiff had only visited the main page to make this argument. Except Defendant's Rule 11 Motion asserted it was "patently false" that "**when the website asks for information**, such as name, date of birth, and address, **the information is sent simultaneously to TikTok**, so that TikTok can

*b.* ***Factual Disputes Over the SAC's Fingerprinting Allegations Must be Resolved in Summary Judgment***

Defendant submits an expert report disputing the SAC's allegations regarding fingerprinting, but it is unclear why. Defendant does not assert the report is relevant to Plaintiff's Article III standing or identify any other purpose for it, all Defendant says is that "it rebuts many of Plaintiff's general allegations regarding how the TikTok Cookie operates on Talkspace's website" and contains "the competent testimony from Talkspace's expert." Mot. at 13. Regardless of whether it has any purpose, on its face it has no connection to the elements of Plaintiff's claim under § 638.51(c).

**2. *Defendant's Facial Challenge Ignores the "Reasonably Likely" Standard***

The analysis in the following sections will discuss the specifics of each of Plaintiff's cognizable Article III injuries and why Defendant incorrectly weighs their severity, but one point worth noting at the outset is that Defendant does not dispute the allegations in the SAC or evidence from TikTok about the purpose or functionality of the TikTok software which can be established if, and when Defendant begins to follow the rules of civil discovery. The statute only requires that a device be "reasonably likely" to identify an individual, so the fact that a device is used solely for that single purpose should means as a factual matter that it is reasonably likely that the device does what TikTok says, and it and Defendant have used it to do for years. Whether a trap and trace device is "reasonably likely to identify" the individual under § 638.51, whether there is value provided by TikTok software, and whether there is an Article III injury all ask the same question – is a single person's activity across the internet reasonably likely to be identified by the

isolate with certainty the individual to be targeted." Def. Rule 11 Mot. at 4, dkt. 30 (emphasis added). Defendant provides no factual citation to its assertion regarding how its website works that could be used against it, but its representations nonetheless contradict and require reconsideration of the Court's earlier ruling.

TikTok software. This is also consistent with the Court's prior analysis which quoted and relied on *In re Facebook Inc*. Order at 9.

### *3. Defendant's Extraction of Personal Information Caused an Article III Injury*

The SAC alleges sufficient facts to establish Article III standing under the standard the Court previously articulated. The Court held that extracted or collected personal information that is unpersonalized and akin to basic contact information like a phone number was insufficient, while more detailed information that can share personal information about a person's preferences implicates "the individual's control of information concerning his or her person." Order on MTD FAC at 9 (citation omitted). The SAC alleges that the code Defendant installed tracked "**personally identifiable** data including **device** and **browser information**, **geographic information**, **referral tracking**, and **url tracking** by **running code or "scripts"** on the Website to send user details to TikTok." SAC ¶ 10 (emphasis added). None of these are basic identifiers like "email address, phone number, or Facebook or Zynga username" and each item instead points specifically to the Plaintiff or her device. Order at 9. And the sum of the SAC's cognizable injuries is at least twice that of the FAC because the SAC alleges Plaintiff visited the website twice using her cellphone and laptop, meaning the above information was collected from both devices making it much easier to use this information to fingerprint, de-anonymize, and match Plaintiff and her data across devices. SAC ¶ 8.

Defendant tries to counter this by making numerous baseless or outright false assertions of fact and making its own unreasonable inferences. Defendant falsely asserts that from the allegations regarding browser and url tracking "the only plausible inference from these allegations is that, at most, Plaintiff's IP address and other general header information (device and browser type) were collected." Mot. at 9 (emphasis omitted). But Defendant is simply trying to rewrite the SAC with its own false factual assertions that Defendant only collected "Plaintiff's IP address"

and "other general header information." The SAC is clear in alleging that the TikTok software gathered "personally identifiable data including device and browser information, geographic information, referral tracking, and url tracking" about Plaintiff and her devices and sent it to TikTok. SAC ¶ 10. Defendant also argues that to allege its referral or url tracking violated Plaintiff's privacy she must "allege how she arrived at the site" and the "specific url for a page visit," but Defendant provides no reason or authority for why, and such allegations are not necessary to plausibly allege that Defendant's tracking violated her privacy, particularly because Plaintiff's harm comes from what Defendant and TikTok could do with information in the aggregate and not individually.

The analogy to alleging continuous physical tracking would be Defendant also demanding Plaintiff allege her exact location while being tracked. But courts have not required such allegations because Article III recognizes the obvious and intuitive privacy violation from simply being tracked separate and apart from the locations the tracking disclosed, i.e., Article III recognizes an injury from physically tracking both where extroverts go and introverts staying home. *See e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1055 (N.D. Cal. 2012) (concluding Article III standing existing for tracking of "Plaintiffs' home and workplace locations, gender, age, zip code, terms searched, Plaintiff's app ID and password for specific app accounts, etc., through each of the downloaded apps."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1192 (N.D. Cal. 2020) (collection of geographic location sufficient for Article III standing where it exceeded mere collection of an IP address).

Defendant cites almost exclusively to irrelevant cases on IP addresses. Defendant incorrectly asserts that the SAC's allegations "about what the TikTok Cookie ***may be capable of*** collecting do not sufficiently establish what the TikTok Cookie ***actually collected*** from Plaintiff (if anything)." Mot. at 10 (emphasis in original). The information the SAC alleges was gathered (personally identifiable

data including device and browser information, geographic information, referral tracking, and url tracking) is not alleged as a hypothetical capability and "**is automatically collected from everyone who visits the Website, including Plaintiff**, and regardless of whether an individual has a TikTok account. That is the entire purpose of the TikTok Software." SAC ¶ 10 (emphasis added). There is nothing hypothetical about the allegation that the TikTok software automatically collects the same information about everyone including Plaintiff.

When faced with allegations quite similar to the FAC, Judge Vera also ruled that the plaintiff had not alleged facts sufficient to establish an Article III injury. *Heiting v. FKA Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025). Defendant even cites to that opinion in its brief. Mot. at 10. Defendant however failed to recognize that decision gave leave to amend and that upon review of the additional allegations in the SAC Judge Vera concluded that plaintiff had established Article III standing. *Id.*, 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025). He explained that "Plaintiff's SAC now alleges that the software effectively de-anonymizes the website user and has collected tracking information on her irrespective of her lack of a TikTok account. Accepting Plaintiff's plausible allegations as true—as the Court must at this stage—Plaintiff's allegations suffice to establish a concrete injury." *Id.* (citation omitted). Substantially similar factual allegations were also added to the SAC in this case, and so the Court should reach the same conclusion.

**4. *<u>Defendant and TikTok's Matching, Fingerprinting and De-Anonymization Caused an Article III Injury</u>***

Plaintiff also suffered an Article III injury from the matching, fingerprinting, and de-anonymization collectively which is distinct from the injury described above which is based on the privacy violation associated with each piece or type of data that was illegally extracted. This measures the privacy violation arising from having many individual pieces of "less personalized information" akin to basic contact

information repeatedly extracted and combined for TikTok to do its matching, fingerprinting, and de-anonymization and turn basic information into highly personalized information that allows for pervasive and invasive tracking. This isn't a hypothetical concern because it is "the entire purpose of the TikTok Software." SAC ¶ 10. There is no other plausible reason alleged or identified to install or use the TikTok Software besides trying to engage in its matching to enhance advertising. And the only way to do that necessarily requires enough highly personalized information sufficient to establish an Article III violation. Stated another way – TikTok's massive matching, fingerprinting, and de-anonymization scheme *must* cause an Article III injury because, as TikTok repeatedly explains on its own website, matching and benefits of its software are based entirely on highly targeted advertising that can happen only if "tracking of browsing activities, including an individual's likes, dislikes, interests, and habits over a significant amount of time" sufficient to establish an Article III injury. Order at 9 (quoting *In re Facebook*, 956 F. 3d at 599); SAC ¶¶ 18- 20. The direct correlation between the information's value and an Article III injury is no accident. The privacy harms from combining lots of "less personalized" data are the exact privacy harm that motivated the creation of trap and trace laws, as Justice Stewart presciently noted in his dissent in *Smith v. Maryland*, 442 U.S. 735 (1979). He noted that most people had no problem sharing their own phone number in the phone book, "but I doubt there are any who would be happy to have broadcast to the world a list of the local or long distance numbers they have called" because even though it wouldn't be incriminating "it easily could reveal the identities of the persons and the places called, and thus reveal the most intimate details of a person's life. *Id.* at 748 (Stewart, J., dissenting).

Defendant's arguments on Article III standing are improperly divorced from Plaintiff's claim and the specific privacy harms associated with a trap and trace device. Trap and trace devices are limited to DRAS (dialing, routing, addressing, and signaling) data which by definition excludes content, so they are in obvious

tension with her actual claim and demonstrate why Defendant's focus on individual pieces of information collected has been repeatedly rejected by courts as necessary for Article III standing. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) ("the Court rejects Disney's argument that Plaintiffs must show that any interception of information was highly offensive in order to have standing."); *Frasco v. Flo Health*, Inc., No. 21-CV-00757-JD, 2025 WL 1433825, at *11 (N.D. Cal. May 19, 2025) (concluding theft of anonymized data is just as much an Article III injury for intruding upon seclusion because "[t]he fact that misappropriated information might be laundered in some way to hide the owner's identity is of no moment to the commission of the tort.").

Even worse, applying Defendant's own interpretation of the statute as limited to phone calls to its argument that phone calls are "basic information" insufficient for Article III standing means *there can never be Article III standing based on the use of a trap and trace device*. But Defendant ignores the very nature of the privacy invasion from trap and trace devices which are concerned with the aggregation of otherwise innocuous information described by the Ninth Circuit as sufficient to allege Article III standing in *In re Facebook* on very similar allegations and wrongdoing:

> Plaintiffs alleged that Facebook continued to collect their data after they had logged off the social media platform, in order to receive and compile their personally identifiable browsing history. As alleged in the complaint, this tracking occurred "no matter how sensitive" or personal users' browsing histories were. Facebook allegedly constantly compiled and updated its database with its users' browsing activities, including what they did when they were not using Facebook. According to Plaintiffs, by correlating users' browsing history with users' personal Facebook profiles—profiles that could include a user's employment history and political and religious affiliations—Facebook gained a

cradle-to-grave profile without users' consent.

956 F.3d at 598–99. The Ninth Circuit's description is almost interchangeable with the allegations Plaintiff has added in the SAC that describe TikTok's matching. SAC ¶¶ 18-20. Multiple other courts have also found Article III standing where defendants installed trackers on plaintiffs' computers that allowed them to monitor their web browsing across multiple websites and build detailed profiles based on their internet activity. *In re: Google Inc. Cookie Placement Consumer Privacy Litigation*, 934 F.3d 316 (3d Cir. 2019); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017). This is why Defendant's demands for the exact specific pieces of data extracted that day are a distraction - Plaintiff's injury wasn't caused by just the content extracted but also the matching, fingerprinting and de-anonymization that would be done with it based on the countless other entities besides Defendant who had the TikTok software on their websites and shared data subject to § 638.51 with TikTok. SAC ¶¶ 14, 15, 19, 9 ("Put simply, the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans.").

Moreover, this is the key merits question of the case – whether the collective information is "reasonably likely" to identify an individual, and when "the [standing] issue and substantive issues are so intertwined," which makes the resolution of "genuinely disputed facts is inappropriate." *See Safe Air for Everyone*, 373 F.3d at 1039; *Flo Health*, 2025 WL 1433825, at *11 ("If anything, this tactic simply underscored that defendants' standing arguments are inextricably intertwined with the merits for determination later in the case."). But to obtain the judgement Defendant seeks based on the evidence it provides going to the merits of disputed factual issues the Court "must assess Defendants motion as we would a motion for summary judgment, and leave the resolution of material factual disputes regarding Article III standing to the trier of fact." *Bowen v. Energizer Holdings, Inc.*, 118 F.4th

1134, 1145–46 (9th Cir. 2024) (cleaned up).

In short, Plaintiff has alleged a concrete Article III injury because the facts alleged show that the TikTok software allows for the matching, fingerprinting, and de-anonymization that allow for Plaintiff to be individually tracked across the internet and have her browsing habits and personal interests pervasively captured and used by Defendant, TikTok, and others used for highly targeted advertising. The Court need not take Plaintiff's word for it either – that's exactly what TikTok says it does and why people like Defendant should use it.

#### 5. ***Forcing Plaintiff to Share Information with TikTok Caused an Article III Injury***

Defendant caused Article III injury when it effectively forced Plaintiff to unknowingly give her personal information to TikTok without her consent because Defendant took away Plaintiff's right to choose for herself whether to do business or share her personal information with TikTok. SAC ¶ 13, 17, 22, 29. In numerous analogous circumstances to the SAC where individuals are prevented choosing for themselves who they will and will not do business with or share their personal information undisputedly suffer a cognizable Article III injury when the conduct is done by a government actor. For example, "[i]t is also well-established that the forced disclosure of information, even purely commercial information, triggers First Amendment scrutiny." *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1117 (9th Cir. 2024). Similarly, "[i]t is well-established that the First Amendment protects 'the right to refrain from speaking at all.'" *Id.* (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). It stands to reason that when a private business does the same thing that injury, while not a constitutional violation, *is at least constitutionally cognizable.* This is particularly true in the context of companies like TikTok and its perceived potential for collaboration with foreign governments, other highly controversial and very political social media companies like Truth Social or X, or boycotting a company for political reasons like the BDS movement or Target's

rollback of DEI policies.

Defendant clearly has no concerns with TikTok's privacy practices because it fully participates and is actively benefiting from them, but Defendant cannot secretly force its choice of business partners onto Plaintiff or anyone else.

### ***6. Defendant Profiting by Stealing an Asset From Plaintiff Caused an Article III Injury***

The SAC also alleges that the personal information on her devices had "a quantifiable market value" which Defendant stole when it secretly and illegally extracted that data and shared it with TikTok. SAC ¶ 29. "The detailed digital profile that Defendant assembled possesses a quantifiable market value, with estimates ranging from $0.10 to $0.50 for a basic consumer profile and exceeding $5.00 for a B2B prospect interested in high-value professional services." SAC ¶ 29. As the Ninth Circuit explained, "[b]ecause California law recognizes a legal interest in unjustly earned profits, Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing. Plaintiffs allege that their browsing histories carry financial value." *In re Facebook*, 956 F.3d at 600 (identifying studies and research panels paying for browsing history). These are detailed nonconclusory factual allegations establishing that the information taken from Plaintiff has a quantified and concrete monetary value that therefore must give rise to a cognizable Article III injury. "For standing purposes, a loss of even a small amount of money is ordinarily an injury." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 767 (9th Cir. 2018) (citation omitted).

### ***7. Defendant's Standing Analysis is Contrary to Ninth Circuit Precedent***

Federal district courts have also consistently found that "violations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact because instead of a bare technical violation of a statute, a CIPA violation involves a violation of privacy rights." *Licea v. Cinmar*, LLC, 659 F. Supp. 3d 1096, 1103

(C.D. Cal. 2023) (citation omitted); *accord Keskinen*, 2025 WL 851074, at *5 (collecting cases). *Raffin v. Medicredit, Inc.*, No. CV154912GHKPJWX, 2016 WL 7743504, at *3 (C.D. Cal. Dec. 19, 2016) ("[D]istrict courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statute."). Accordingly, "a violation of a privacy right protected by California law is sufficient injury for standing purposes." *Keskinen*, 2025 WL 851074, at *5; *see also Rad Power Bikes v. Conahan*, 2:25-cv-00106-PVC dkt. 17 (April 3, 2025).

Defendant's analysis also bears no resemblance to that from *In re Facebook*, 956 F.3d at 598, and other Ninth Circuit determining whether a statutory violation involved a bare procedural right or a "*substantive* right that is infringed any time it is violated [and] a plaintiff bringing a claim under that provision "need not allege any further harm to have standing." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (quotation omitted). Defendant's analysis simply cannot be reconciled with the Ninth Circuit's conclusion that CIPA's "statutory provisions codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook*, 956 F.3d at 598; *see also D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1193 (S.D. Cal. 2024); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1138 (E.D. Cal. 2021) (concluding no additional harm needed to be alleged for privacy violations, unlike defamation claims like in *TransUnion* because harm is an element of defamation). "Tellingly, privacy torts do not always require additional consequences to be actionable." *Eichenberger*, 876 F.3d at 983 (citing Restatement (Second) of Torts § 652B cmt. b. (Am. Law Inst. 1977)). The intrusion into privacy itself is what makes a defendant liable. *Id.*

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the SAC deficient.

DATED: August 19, 2025

**TAULER SMITH LLP**

By: */s/ Narain Kumar*

Narain Kumar, Esq.
Attorney for Plaintiff
Courtey Mitchener

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Courtney Mitchener, certifies that this brief does not exceed twenty-five pages, which complies with the page limit of the Court's Standing Order § 9(d).

DATED: August 19, 2025

**TAULER SMITH LLP**

By: */s/ Narain Kumar*
Narain Kumar, Esq.
Attorney for Plaintiff
Courtney Mitchener