**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
Kamran B. Ahmadian (SBN 314566)
1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4508
Telephone: 310.820.8800
Facsimile: 310.820.8859
*blukitsch@bakerlaw.com*
*kahmadian@bakerlaw.com*

*Attorneys for Defendant*
TALKSPACE, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

COURTNEY MITCHENER, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

TALKSPACE NETWORK LLC, a New York Limited Liability Company; and DOES 1 through 25, inclusive,

Defendants.

CASE NO. 2:24-cv-07067-JAK-BFM

*[Hon. John A. Kronstadt]*

**REPLY IN SUPPORT OF DEFENDANT TALKSPACE, INC.'S MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)**

*[Filed concurrently with Response to Plaintiff's Evidentiary Objections]*

| | |
|---|---|
| **Date:** | September 15, 2025 |
| **Time:** | 8:30 a.m. |
| **Crt. Rm.:** | 10C |
| Action Filed: | August 20, 2024 |

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. THE UNTIMELY SAC AND OPPOSITION SHOULD BE STRICKEN ..... 1

III. PLAINTIFF HAS NO ARTICLE III INJURY ........ 2

A. Plaintiff Fails to Rebut Talkspace's Factual Standing Challenge.......... 3

B. Plaintiff Has Still Not Alleged a Concrete Injury ........ 5

IV. THE TIKTOK COOKIE IS NOT A "TRAP AND TRACE" DEVICE UNDER SECTION 638.57 AS A MATTER OF LAW........ 8

V. PLAINTIFF FAILS TO ALLEGE THE REQUIRED SCIENTER........ 9

VI. ALL IRRELEVANT ALLEGATIONS SHOULD BE STRICKEN ............ 10

VII. CONCLUSION ........ 10


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arroyo v. Harb*,
2020 WL 1070447 (C.D. Cal. Jan. 2, 2020) (Bernal, J.) .......... 2

*Auer v. Trans Union, LLC*,
902 F.3d 873 (8th Cir. 2018) .......... 5

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .......... 3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 3, 8

*Foster v. Essex Prop., Inc.*,
2017 WL 264390 (N.D. Cal. Jan. 20, 2017) .......... 4

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......... 3

*Goad v. Reyes*,
2022 WL 2079331 (C.D. Cal. Feb. 18, 2022) (Carter, J.) .......... 2

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 9

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 8

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 4, 6

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) .......... 8

*Lakes v. Ubisoft, Inc.*,
2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) .......... 5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 7

*Manhattan Cmty. Access Corp. v. Halleck*,
587 U.S. 802 (2019) .......... 7

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ........................................ 4, 6

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........................................ 3

*Snyder v. G6 Hosp. LLC*,
2025 WL 1254382 (C.D. Cal. Apr. 14, 2025) ........................................ 5

*Thornhill Publ'g Co. v. Gen. Tel. Elecs.*,
594 F.2d 730 (9th Cir. 1979) ........................................ 3

*TransUnion LLC v. Ramirez*,
594 U.S. 413, 414 (2021) ........................................ 5

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........................................ 8

**California Cases**

*In re Jennings*,
34 Cal. 4th 254 (2004) ........................................ 9

**California Statutes**

Cal. Penal Code § 20 ........................................ 9

Cal. Penal Code § 638.51 ........................................ *passim*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

This Court has already dismissed Plaintiff's CIPA trap and trace claim under § 638.51 once for failing to allege sufficient facts to establish Article III standing. Plaintiff's latest attempt fares no better. Her *untimely* Opposition only reinforces that the SAC, like its predecessors, rests on vague, generalized assertions untethered to any facts. While Plaintiff claims she has a right to control information about herself, she has repeatedly failed to identify ***any specific personal information*** that has allegedly been taken out of her control. The Court was clear: Plaintiff needed to allege facts about ***her*** visit to the Talkspace website and identify what "personal information" was purportedly captured by the TikTok Cookie. Instead, Plaintiff provided the date of her visit, the devices used, and her physical location when she visited the Talkspace website—none of which establish a concrete injury.

More tellingly, Talkspace has submitted evidence in connection with its factual challenge—including Plaintiff's own discovery responses—confirming that she only visited the Talkspace home page and she consented to Talkspace's use of tracking technologies ("cookies") including the TikTok Cookie. Talkspace also provided an expert report verifying that any data Plaintiff may have transmitted to TikTok could not be used to objectively identify her. ***Plaintiff offers no evidence to dispute these facts***. Ultimately, the truth fatally undermines both Plaintiff's Article III standing and her ability to state a claim under § 638.51. For these reasons, and as further discussed below, the Court should dismiss—or strike—the SAC, and this time *with prejudice*.[1]

## II. THE UNTIMELY SAC AND OPPOSITION SHOULD BE STRICKEN

Plaintiff does not dispute that the SAC was filed after the Court's deadline, nor does she offer any explanation for the delay. *See* Opp. at 18:23–19:7. Instead, she pivots to arguing that Talkspace suffered no prejudice. *Id.* This argument misses the mark entirely. As a threshold matter, Plaintiff fails to address Rule 15, which requires

[1] For any issue raised in Plaintiff's Opposition and not addressed in this Reply, Talkspace stands on the arguments raised in its Motion.

either the Court's leave or Talkspace's consent to file an amended complaint. Fed. R. Civ. P. 15. Once the Court-imposed deadline passed, Plaintiff had neither. On this basis alone, the SAC should be stricken, and Plaintiff should be required to seek leave of Court to file an amended pleading. Throughout this case Plaintiff has demonstrated a cavalier approach to her litigation responsibilities and a general pattern of disregard for the Court's directives. This should not be allowed to continue. Compliance with the Court's orders and Local Rules ***is not optional***—when the Court sets a deadline, it must be followed. This principle ensures fairness and procedural integrity for both parties, and prevents unnecessary cost, delay, and prejudice.

Even if the SAC is accepted (it should not), the Court can (and should) strike Plaintiff's untimely opposition given Plaintiff's Counsel's failure to demonstrate the "excusable neglect" required by Rule 6(b)(1)(B) to obtain an extension of time for a missed deadline. *See Arroyo v. Harb*, 2020 WL 1070447, at *2 (C.D. Cal. Jan. 2, 2020) (Bernal, J.) (cit. omitted) ("The Ninth Circuit has made clear that the party seeking reprieve from a late filing has a high threshold to meet."). Here, Plaintiff's counsel attributes the delay to "acute medical issues and medication," which allegedly caused severe insomnia and impaired his ability to work. *See* Dkt. No. 66. While Talkspace empathizes with medical challenges, this explanation does not constitute excusable neglect. The declaration fails to explain why other attorneys of record—particularly those named on the pleadings—could not timely file the Opposition, nor does it address why counsel did not proactively seek an extension from either opposing counsel or the Court. *See id*. Absent such efforts, counsel's acute medical condition alone is insufficient. *See e.g., Goad v. Reyes*, 2022 WL 2079331, at *2 (C.D. Cal. Feb. 18, 2022) (Carter, J.) (Plaintiff's serious medical issues did not constitute excusable neglect where "Plaintiff failed to seek relief with the Court[.]").

## III. <u>PLAINTIFF HAS NO ARTICLE III INJURY</u>

Plaintiff wrongly asserts that a bare technical violation of § 638.51 is sufficient to establish Article III standing. *See* Opp. at 29:25-30:24. It is not. While courts have

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

held that a statutory violation *may* confer standing, that only occurs where the statute protects a substantive privacy right closely tied to traditionally recognized harms. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–18 (9th Cir. 2020). The cases Plaintiff cites involve wiretapping provisions (§§ 631 and 632 of CIPA), which courts have found to codify such rights by targeting harms like intrusion upon seclusion and disclosure of private facts. As one court aptly explained, however, § 638.51 is not a wiretapping statute and does not codify a substantive privacy right:

> Unlike §§ 631 and 632 which prohibit persons from intercepting the contents of a message, report, or communication while in transit, § 638.51 merely limits the manner in which [a party] can collect [plaintiff's] information. [] **Indeed, § 638.51 does not codify the right for [plaintiff] to control his information, but instead requires that [a party] obtain a court order before using certain statutorily defined mechanisms to collect [plaintiff's] voluntarily provided information**. [] This kind of statutory violation is "a bare procedural violation, divorced from any concrete harm." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

*Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *8 (S.D.N.Y. Feb. 18, 2025) (emph. added). Accordingly, Plaintiff cannot rely on a procedural violation and must allege a concrete injury resulting from Talkspace's alleged conduct. As confirmed by her Opposition, Plaintiff cannot do so.

### A. <u>Plaintiff Fails to Rebut Talkspace's Factual Standing Challenge</u>.

In connection with its factual challenge, Talkspace presented evidence through Plaintiff's own discovery responses and the expert report of James Vint to establish that: (1) Plaintiff's interactions with the Talkspace website were minimal—she ***only visited the main home page***; (2) Plaintiff ***consented*** to Talkspace's use of cookies on its Website (including the TikTok Cookie); and (3) Plaintiff ***could not have been "identified"*** by any information collected by the TikTok Cookie. *See* Mot. 12:1-13:13; Vint Report, at ¶ 48. As the party asserting jurisdiction, ***Plaintiff was required to submit evidence***—not rely on vague allegations in the SAC—to establish standing. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Thornhill Publ'g*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Co. v. Gen. Tel. Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979) ("No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."). Yet, Plaintiff failed to provide ***any evidence*** to rebut Talkspace's factual challenge to Article III standing. Talkspace's Motion should be granted on this basis alone. *See Foster v. Essex Prop., Inc.*, 2017 WL 264390, at *3 (N.D. Cal. Jan. 20, 2017) ("Since Plaintiffs did not respond with evidence … they have not satisfied their burden to make a prima facie showing of standing.").

Additionally, the Opposition improperly conflates the issue of standing with the merits, arguing that Plaintiff's failure to allege the collection of personal information is irrelevant because such collection is not required to state a trap and trace claim under § 638.51. *See* Opp. at 20:5–21:10. This argument, however, puts the cart before the horse—Article III injury in fact must be established *as a threshold matter*. As this Court and others have consistently held, to sufficiently allege an injury in fact, Plaintiff must identify the "specific personal information" disclosed that implicates a "protectable privacy interest." *See* Dkt. No. 56 at 9; *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *3 (N.D. Cal. Aug. 6, 2025); *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024).

Moreover, contrary to Plaintiff's assertion, the SAC's vague "allegations regarding fingerprinting" do not need to be resolved in summary judgment. *See* Opp. at 21:1-10. As an initial matter, there is ***no factual dispute*** because only Talkspace (and not Plaintiff) submitted evidence demonstrating that Plaintiff's allegations regarding the TikTok Cookie's fingerprinting capabilities have no merit. But even if there was, because the jurisdictional standing inquiry is not intertwined with the merits of the case the Court "may consider the evidence presented … and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Safe Air for Everyone*, 373 F.3d at 1039 (the merits of an action and subject matter jurisdiction are intertwined where "a statute provides the basis for both the subject matter

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

jurisdiction of the federal court and the plaintiff's substantive claim for relief."). Here, there is no intertwinement because Plaintiff's federal jurisdiction is not based on CIPA. Moreover, whatever Plaintiff's concrete injury is (e.g., unwanted advertisements following the alleged fingerprinting), it must be independently established and cannot simply derive from the asserted statutory violation. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) ("An injury in law is not an injury in fact.")

Lastly, Plaintiff's contention that her "consent" is factually and legally irrelevant is incorrect. *See* Opp. at 11:8–13:2. Because Plaintiff expressly consented to Talkspace's use of cookies when she visited the website, she cannot establish an Article III injury in fact. *See e.g., Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018) ("Because Auer consented to the City's background check, she failed to plead an intangible injury to her privacy that is sufficient to confer Article III standing."). Moreover, consent defeats Plaintiff's CIPA claim. Even if the Court were to conclude that the issue of consent is intertwined with the merits—which it is not—courts routinely resolve consent at the pleading stage. *See, e.g., Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *8 (N.D. Cal. Apr. 2, 2025) (dismissing CIPA claims based on plaintiffs' consent through privacy disclosures); *Snyder v. G6 Hosp. LLC*, 2025 WL 1254382, at *5 (C.D. Cal. Apr. 14, 2025). Accordingly, the Court may—and should—resolve the jurisdictional issue now and dismiss the case with prejudice for lack of standing.



### B. Plaintiff Has Still Not Alleged a Concrete Injury.

To establish standing Plaintiff relies solely upon the vague, conclusory, and insufficient allegations in the SAC that yet again fail to include ***any specific facts about Plaintiff's visits to the Talkspace website***—let alone facts suggesting she suffered any actual harm. The only "new" facts related to Plaintiff's visit to the Talkspace website are the date, type of devices used, and where she was located during her visits. SAC, ¶ 8. These allegations still fail to address the central factual issue—

what Plaintiff ***actually did*** during her visits and what, if anything, the TikTok Cookie ***collected***. Instead, the Opposition attempts to manufacture concrete harm from the SAC's deficient allegations in a number of ways—***all of which fail***.

*First*, Plaintiff contends that her generalized allegation regarding the TikTok Cookie's extraction of "device and browser information, geographic information, referral tracking, and URL tracking" is sufficient to establish an Article III injury. *See* Opp. at 22–24 (citing SAC, ¶ 10). But this is the *same theory* advanced in the FAC—one that this Court, along with numerous others, has already found inadequate. *Compare* Dkt. No. 17 (FAC), ¶¶ 9–11; *see also* Dkt. No. 56 at 9; *CuriosityStream*, 2025 WL 2272413, at *4; *Vivint*, 2024 WL 5179916, at *4 ("Plaintiff does not sufficiently explain what routing information was collected, and whether that routing information is of such a kind that it implicates a protectable privacy interest."). Just as before, Plaintiff fails to allege that she was referred to the Talkspace website from another URL—an omission that undermines any claim that the TikTok Cookie captured referral or URL tracking data. *See generally* SAC; Dkt. No. 56 at 9. Plaintiff's conclusory assertion that this data constitutes "personally identifiable information" is directly contradicted by both the Vint Report and the case law cited in Talkspace's Motion—neither of which Plaintiff addresses.[2] *See* Vint Report, ¶¶ 47-48, 51-57; Mot. at 9–11.

*Second*, Plaintiff asserts that she suffered an Article III injury due to TikTok's alleged "matching, fingerprinting, and de-anonymization" techniques, which she claims can transform basic data "into highly personalized information." *See* Opp. at

---

[2] And the cases Plaintiff relies upon include distinguishable allegations that identify the sensitive personal information collected. *See* Opp. at 23 (citing *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1055 (N.D. Cal. 2012) (Plaintiffs alleged "the specific type of personal information collected, such as [] home and workplace locations, gender, age, zip code, terms searched, [] app ID and password for specific app accounts, etc."); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1192 (N.D. Cal. 2020) (alleging that Facebook collected plaintiff's "enhanced geocoordinate location information.")). Moreover, the recent ruling in *Heiting v. FKA Distrib. Co. LLC* relied upon by Plaintiff is inapposite because that case (unlike here) did not involve a factual challenge to standing. 2025 WL 1430663, at *2 (C.D. Cal. May 15, 2025).

24:22–28:8. However, Plaintiff has sued only Talkspace—***not TikTok or the "countless other entities" that may use the TikTok Cookie***. *See* Opp. at 27:9–17. Plaintiff cannot establish an Article III injury by aggregating harm allegedly caused by the "independent action of some third part[ies] not before the court." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[T]he injury has to be fairly ... trace[able] to the challenged action of the defendant."). For this reason alone, the cases Plaintiff relies on are inapposite. *See* Opp. at 26–27 (citing *In re Facebook*, 956 F.3d at 598–99 [plaintiffs sued Facebook for data collected by Facebook]; *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 321 (3d Cir. 2019) [plaintiffs sued Google for data collected by Google]).[3] Plaintiff's reliance on the conduct of non-parties only underscores the weakness of her allegations against Talkspace—Plaintiff's interactions with Talkspace were limited to two fleeting visits to its homepage, and no personally identifiable information was collected during those visits. *See* Vint Report, ¶ 48.

*Third*, Plaintiff claims she suffered an Article III injury "when [Talkspace] effectively forced Plaintiff to unknowingly give her personal information to TikTok without her consent." *See* Opp. at 28:9–29:4. Plaintiff's attempt to associate this case to a First Amendment violation—an analogy that is both legally and factually flawed—should be quickly rejected. *See e.g., Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019) (Free Speech Clause "prohibits only *governmental* abridgement of speech … [it does] not prohibit *private* abridgment of speech.") (emph. in original). More fundamentally, Plaintiff conveniently overlooks a key fact: she ***voluntarily visited*** Talkspace's website twice, saw Talkspace's cookie banner and,

[3] Contrary to Plaintiff's assertions, the allegations in this case ***are not "similar"*** to the facts alleged in *In re Facebook*. *See* Opp. at 26:11-27:17. Unlike here, the *In re Facebook* plaintiffs alleged that Facebook obtained "an ***enormous amount of individualized data***" constituting an individual's "comprehensive browsing history" by collecting "URLs of third-party websites … operating outside of Facebook's platform." 956 F.3d at 603, 605 (emph. added) Additionally, the Ninth Circuit emphasized that some of the alleged data collected ***was sensitive***, such as information about plaintiff's visits to sensitive websites. *Id.* That is nowhere near the nature or scope of the allegations in Plaintiff's SAC.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

on at least one visit, ***affirmatively accepted the use of cookies***, including the TikTok Cookie. *See* Ahmadian Decl., ¶ 5, Exh. A, Plaintiff's Rogg. Responses, 8:13-19. Plaintiff's consent not only defeats any claim of involuntary disclosure but also negates any alleged injury purportedly arising from that disclosure. Moreover, as confirmed by Mr. Vint, had Plaintiff opted to reject all but "Strictly Necessary" cookies, the TikTok Cookie *would not* have been transmitted. *See* Vint Report, ¶ 69. In short, Talkspace did not "force" Plaintiff to do anything.

*Fourth*, Plaintiff seems to argue that she suffered economic harm sufficient to establish standing because Talkspace unjustly profited from the use of her data. *See* Opp. at 29:5–22. While some courts have recognized standing under an unjust enrichment theory, they require plaintiffs to allege facts showing that "(1) Defendant's actions were unjust, and (2) as a result, Defendant was enriched." *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1044 (N.D. Cal. 2021) (cit. omitted). Here, Plaintiff fails to allege any facts demonstrating that Talkspace's use of the TikTok Cookie was unjust, particularly given her inability to identify any personal or sensitive information that was actually collected, nor does she allege that Talkspace was enriched. *See Heeger v. Facebook*, 509 F. Supp. 3d 1182, 1191 (N.D. Cal. 2020). While Plaintiff speculates about a "market value" for her data, she provides no factual support for that claim. Unlike in *In re Facebook*, where it was alleged that Facebook ***sold*** user data to advertisers ***for profit***, Plaintiff does not allege that Talkspace monetized her data in any way. 956 F.3d at 600. Accordingly, Plaintiff has no economic injury sufficient to establish Article III standing. *See, e.g., Khamooshi v. Politico LLC*, 2025 WL 1408896, at *5 (N.D. Cal. May 13, 2025).

## IV. THE TIKTOK COOKIE IS NOT A "TRAP AND TRACE" DEVICE UNDER SECTION 638.57 AS A MATTER OF LAW

Yet again, Plaintiff fails to meaningfully address the statute's "court order" requirement or the cross-referenced provisions—§§ 638.52 and 638.53—which outline the procedural steps law enforcement ***must follow*** before deploying a trap and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

trace device. *See* Opp. at 14:2–15:22. Plaintiff also disregards the statute's repeated references to telephones and telephone numbers, which make clear that a court order—the only lawful means of using such a device—requires identification of a specific telephone line or number. *See id.* When read in full, § 638.51 does not categorically prohibit the use of trap and trace devices; rather, it prohibits their use "without first obtaining a court order pursuant to Section 638.52 or 638.53." Cal. Penal Code § 638.51. This language reflects a deliberate legislative choice to limit the statute's scope to devices that can be authorized by court order—i.e., those used on telephone lines. Plaintiff offers no explanation for why the Legislature would prohibit trap and trace devices on non-telephone technologies while simultaneously requiring telephone-specific information to obtain a court order. That interpretation is illogical, renders compliance with the statute impossible, and would nullify half of the Legislature's carefully crafted language. The cases cited by Plaintiff suffer from this same flawed reasoning. *See* Opp. at 15 n.2 (collecting cases). For example, in each of these cases, the courts simply relied upon CIPA's "expansive" definitions of "trap and trace device" and "electronic communication" in holding that website technology could apply to § 638.51. Even more concerning, none of these courts conducted a thorough review of § 638.51's legislative history to verify whether their interpretations aligned with the legislative intent. *See id.* For these reasons, the Court should disregard these decisions as both non-binding and unpersuasive.[4]

## V. PLAINTIFF FAILS TO ALLEGE THE REQUIRED SCIENTER

Contrary to Plaintiff's Opposition, Talkspace's scienter argument is not based solely on *Heiting v. Toro*, but on California's general *mens rea* statute. *See* Cal. Penal Code § 20; *see also In re Jennings*, 34 Cal. 4th 254, 267 (2004) (Generally, "[t]he

[4] Plaintiff also mischaracterizes Talkspace's arguments regarding Judge Bybee's concurrence in *Gutierrez v. Converse Inc.* *See* Opp. at 17:5-18:20. Judge Bybee not only uses "§ 630(a)" and "CIPA" interchangeably throughout his concurrence, but his reasoning applies squarely to the statute as a whole—if the Legislature wanted to expand the scope of CIPA they should explicitly do so, and the courts should not expand it on their own.



BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

existence of a *mens rea* is the rule of, rather than the exception[.]"). In other words, a penal code violation (such as § 638.51) "requires proof of ***some mental state*** where the statute does not evidence the Legislature's intent to impose strict liability." *Id.* (emph. added). Plaintiff does not address the general *mens rea* statute nor identify any explicit language in § 638.51 (nor can she) that dispenses with the built-in criminal intent requirement. *See* Opp. at 13:3-14:1. Nor does Plaintiff identify *any* allegations in the SAC that demonstrate Talkspace's criminal intent to install an illegal trap and trace device. *See id.*

## VI. ALL IRRELEVANT ALLEGATIONS SHOULD BE STRICKEN

Contrary to Plaintiff's Opposition, Talkspace's Motion plainly provides its basis by which it seeks to strike certain paragraphs from the SAC: they are "neither responsive nor relevant to the issues involved in the action" and "could not be put in issue or given in evidence between the parties." Specifically, Talkspace moves to strike the screenshots in paragraphs 12 and 14 of the SAC because they depict pages Plaintiff never visited. SAC ¶¶ 12, 14. Including screenshots of unrelated webpages is akin to submitting photographs in a grocery store slip-and-fall that depict places in the store where the plaintiff never went—they are irrelevant and confusing. Moreover, Plaintiff mischaracterizes Talkspace's reliance on Mr. Vint's expert report. Talkspace is not using the report to ***dispute*** the functionality of the TikTok Cookie; rather, the Vint Report confirms that ***there is no dispute***—the allegations are factually incorrect. *See* Vint Report, ¶¶ 47–48, 51–57. Accordingly, the screenshots and Plaintiff's conclusory claims about TikTok's alleged ability to identify Plaintiff through "fingerprinting" lack any factual basis and should be stricken.

## VII. CONCLUSION

For all of the foregoing reasons, Talkspace respectfully requests that the Court dismiss Plaintiff's SAC in its entirety with prejudice.

\\

\\

Dated: August 26, 2025

**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
Bethany G. Lukitsch
Kamran B. Ahmadian

*Attorneys for Defendant*
TALKSPACE, INC.

## L.R. 11-6.2. Certificate of Compliance

The undersigned, counsel of record for Defendant Talkspace, Inc., hereby certifies that this brief does not exceed ten (10) pages, which complies with this Court's Civil Standing Order § 9(d).

*/s/Kamran B. Ahmadian*
Kamran B. Ahmadian